1  DAVID B. GOLUBCHIK (SBN 185520)
   JULIET Y. OH (SBN 211414)
2  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
   10250 Constellation Blvd., Suite 1700
3  Los Angeles, California 90067
   Telephone:  (310) 229-1234
4  Facsimile:  (310) 229-1244
5  Email:  DBG@LNBYB.COM, JYO@LNBYB.COM

6  Attorneys for Chapter 11 Debtor
   and Debtor in Possession
7

8
                    UNITED STATES BANKRUPTCY COURT
9
                    CENTRAL DISTRICT OF CALIFORNIA
10
                    SAN FERNANDO VALLEY DIVISION
11

12                                          ) Case No.: 1:20-bk-11006-VK
                                            )
13  In re:                                  ) Chapter 11 Case
                                            ) Subchapter V
14  LEV INVESTMENTS, LLC,                   )
                                            )
15                                          )
            Debtor and Debtor in Possession. ) **DEBTOR'S      CHAPTER      11,**
16                                          ) **SUBCHAPTER   V   PLAN,   DATED**
                                            ) **AUGUST 28, 2020**
17                                          )
                                            )
18                                          ) <u>Hearing on Plan Confirmation:</u>
                                            ) Date:   [To be set]
19                                          ) Time:   [To be set]
                                            ) Place:  Courtroom "301"
20                                          )            21041 Burbank Boulevard
                                            )            Woodland Hills, California 91367
21                                          )
                                            )
22                                          )
                                            )
23                                          )
                                            )
24                                          )
                                            )
25                                          )
                                            )
26  _____)

27

28

                                    1

Case 1:20-bk-11006-VK    Doc 156    Filed 08/28/20    Entered 08/28/20 15:15:45    Desc
Main Document    Page 2 of 35

## I.    **INTRODUCTION**

Lev Investments, LLC (the "<u>Debtor</u>") is the debtor and debtor in possession in the above-captioned chapter 11, subchapter V, bankruptcy case (the "<u>Bankruptcy Case</u>") bearing case number 1:20-bk-11006-VK.  The Debtor filed a voluntary petition under chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "<u>Bankruptcy Code</u>") and elected subchapter V on June 1, 2020 (the "<u>Petition Date</u>").  The Debtor is operating its business, managing its affairs, and administering its estate as a debtor in possession pursuant to sections 1182(2) and 1184 of the Bankruptcy Code . The United States Trustee (the "<u>UST</u>") appointed Caroline R. Djang as the subchapter V trustee (the "<u>Trustee</u>") pursuant to 11 U.S.C. § 1183(a).

Chapter 11 subchapter V allows the Debtor (and only the Debtor) to propose a plan. This Plan is a reorganization plan proposed by the Debtor.  **This document is the Plan**.  It includes (i) a brief history of the business operations of the Debtor; (ii) a liquidation analysis; and (iii) projections with respect to the ability of the Debtor to make payments under the Plan. This information is provided to help you understand the Plan and to decide whether to vote to accept or reject the Plan or otherwise file objections.

The effective date of the Plan (the "<u>Effective Date</u>") will be the first business day of the first quarter which is at least fifteen days following the date of entry of the Court order confirming the Plan (the "<u>Plan Confirmation Order</u>") and the satisfaction or waiver by the Debtor of all of the following conditions to the effectiveness of the Plan: (a) there shall not be any stay in effect with respect to the Plan Confirmation Order; (b) the Plan Confirmation Order shall not be subject to any appeal or rehearing; and (c) the Plan and all documents, instruments and agreements to be executed in connection with the Plan shall have been executed and delivered by all parties to such documents, instruments and agreements.  The Debtor, following the Effective Date, shall be referred to as the "Reorganized Debtor."

2

## II.   STATUTORY PLAN DISCLOSURES

Bankruptcy Code Section 1190(1) requires that a subchapter (V) plan include: (i) a brief history of the business operations of the Debtor; (ii) a liquidation analysis; and (iii) projections with respect to the ability of the Debtor to make payments under the Plan.  11 U.S.C. § 1190(1).

### A. Brief History of the Business Operations of the Debtor

1.      The Debtor is a hard money lender whose debts are secured by real properties. When necessary, the Debtor proceeds with foreclosures and sale of properties which serve as collateral for its loans.

2.      The Debtor is the holder and beneficiary of a deed of trust (the "Coachella Deed") recorded against real property (vacant land) located in Coachella, California [APN 697-330-002-4] (the "Coachella Property"), which is owned by Coachella Vineyard Luxury RV Park, LLC ("Coachella Vineyard").   The Coachella Deed secures Coachella Vineyard's obligations to repay a loan provided by the Debtor in the principal sum of $2,000,000.   The current balance of the loan secured by the Coachella Property is in excess of $2,500,000.

3.      Pre-petition, the Debtor foreclosed on the Coachella Property.  Learning that the foreclosure by the foreclosure trustee was effectuated improperly, the Debtor rescinded its trustee's deed upon foreclosure and has renewed its foreclosure efforts.  The Debtor believes that the Coachella Property has a value in excess of the debt owed to the Debtor and the obligation will either be repaid in full at the foreclosure sale or the Debtor will foreclose on the Coachella Property and, thereafter, sell it.

4.      In addition to the Coachella Deed, the Debtor's primary asset is the residential real property located at 13854 Albers Street, Sherman Oaks, California 91401-5811 [APN 2247-013-001] (the "Albers Property").

5.      In December 2018, the Debtor, on the one hand, and Ruvin Feygenberg ("Feygenberg") and Michael Leizerovitz or his assignee, Sensible Consulting & Management, LLC ("Leizerovitz," and together with Feygenberg, the "Lenders"), on the other hand, entered into an agreement (the "Debt Purchase Agreement") to purchase debt secured by the Albers

1   Property, and then to proceed to foreclose on, and ultimately obtain ownership of, the Albers

2   Property.

3       6.      The Debt Purchase Agreement contemplated that the Debtor would contribute the

4   sum of $1,022,500 and that the Lenders would contribute the sum of $1,257,675 (of which

5   approximately $235,000 would be immediately refunded to the Lenders), such that the amounts

6   contributed by the Debtor and the Lenders to purchase the debt secured by the Albers Property

7   would be equal. The Debtor Purchase Agreement also provided that, upon the foreclosure of the

8   Albers Property, title to the Albers Property would be vested solely in the Debtor's name, and

9   the Lenders would hold a first priority security interest and lien against the Albers Property in

10  the sum of $1,257,675. Notwithstanding the express terms of the Debt Purchase Agreement,

11  which required that title to the Albers Property be vested solely in the Debtor's name following

12  foreclosure, the attorney handling the transaction for the Debtor and the Lenders, Yevgeniya

13  "Gina" Lisitsa, recorded a Trust Deed in the joint names of the Debtor and the Lenders. In an

14  attempt to correct this error, Ms. Lisitsa then had the Lenders quitclaim their interest in the

15  Albers Property to the Debtor.

16      7.      However, the Debtor learned that Feygenberg had an outstanding judgment

17  which was subject to a recorded Abstract of Judgment in favor of Ming Zhu, LLC ("Ming

18  Zhu"). Because title to the Albers Property was (erroneously) in the name of Feygenberg, upon

19  transfer of title to the Debtor, Ming Zhu has asserted a security interest in the amount of

20  approximately $300,000. Since this is an obligation of Feygenberg and not the Debtor, this

21  amount is in dispute and subject to pending litigation. The Debtor is also in settlement

22  discussions with Ming Zhu with respect to the treatment of its asserted claim.

23      8.      On October 24, 2019, an individual named Mariya Ayzenberg ("Ayzenberg")

24  filed a complaint against the Debtor and others in the Superior Court of the State of California

25  for the County of Los Angeles (the "Superior Court") alleging financial abuse of elder, and

26  conversion and seeking declaratory relief, thereby commencing the case titled *Ayzenberg v. Lev*

27  *Investments, LLC, et al.*, Case Number 19STCV38222 (the "Ayzenberg Action").

28

Case 1:20-bk-11006-VK    Doc 156    Filed 08/28/20    Entered 08/28/20 15:15:45    Desc
Main Document    Page 5 of 35

9.     On October 25, 2019, Ayzenberg recorded a notice of pendency of the Ayzenberg Action against the Albers Property, as Instrument Number 20191150330 (the "Ayzenberg Lis Pendens").

10.     Thereafter, the parties to the Ayzenberg Action entered into a settlement agreement, which provided for a full and final resolution of the parties' disputes and the dismissal of the Ayzenberg Action.

11.     On January 13, 2020, Ayzenberg filed a Request for Dismissal of the Ayzenberg Action, with prejudice, as to all parties.

12.     Given the settlement reached by the parties to the Ayzenberg Action, and the full consummation of such settlement, the Debtor contends that Ayzenberg was required to take steps to have the Ayzenberg Lis Pendens released or expunged.

13.     As of the Petition Date, the Ayzenberg Lis Pendens remained recorded against the Albers Property.  Multiple requests by the Debtor to Ayzenberg's counsel of record to release or expunge the Ayzenberg Lis Pendens were rejected or ignored.

14.     As a result, on June 12, 2020, the Debtor filed a notice to remove the Ayzenberg Action in its entirety to this Court, thereby commencing the adversary proceeding titled *Ayzenberg v. Lev Investments, LLC, et al.,* Adversary Proceeding Number 1:20-ap-01062-VK (the "Ayzenberg Adversary Action"), solely for the purpose of filing a motion (if necessary) to expunge the Ayzenberg Lis Pendens.

15.     On July 9, 2020, Ayzenberg and others filed a pleading in the Debtor's chapter 11 bankruptcy case[1] which, for the first time, reflected that a notice of withdrawal of the Ayzenberg Lis Pendens had been recorded on June 19, 2020, as Instrument Number 20200673430 (the "Withdrawal of Ayzenberg Lis Pendens").  Prior to seeing such pleading on July 9, 2020, neither the Debtor nor its counsel was aware of the filing and recordation of the Withdrawal of Ayzenberg Lis Pendens, since no notice was ever provided by Ayzenberg, her counsel, or any other party, notwithstanding repeated requests by the Debtor.

---

[1] *See*, Doc. No. 92.

16.     After receiving notice of the Withdrawal of Ayzenberg Lis Pendens, the Debtor agreed to the remand of the Ayzenberg Adversary Action to the Superior Court.  The Court entered an order accordingly on August 4, 2020.[2]

17.     Based on the foregoing events, Ayzenberg has filed a proof of claim in the Debtor's bankruptcy case, which proof of claim is denominated as Claim Number 9 in the Claims Register for the Debtor's case, pursuant to which Ayzenberg asserts a general unsecured claim in the sum of $35,000.  The Debtor has filed a motion seeking to disallow the foregoing claim [Doc. No. 132], which motion is currently pending.  This claim is therefore disputed.

18.     Prior to the Petition Date, on December 13, 2019, an entity called FR LLC filed a complaint against the Debtor and others in the Superior Court, alleging conversion, negligent bailment, unjust enrichment, and quiet title, thereby commencing the case titled *FR LLC v. Lev Investments, LLC, et. Al*, Case Number 19STCV45132 (The "FR Action").  Pursuant to the FR Action, FR LLC alleged that the Debtor had obtained a loan in the sum of $119,000 from FR LLC's "assignor", which loan was secured by a lien against the Albers Property, although no loan documents exist.  However, the Debtor has never obtained a loan from FR LLC or its assignor, does not know who FR LLC or its assignor (whose identity FR LLC has refused to disclose to date) is, and strongly disputes all of the allegations made by FR LLC in the FR Action.

19.     On December 31, 2019, FR LLC recorded a notice of pendency of the FR Action against the Albers Property, as Instrument Number 20191465878 (the "FR Lis Pendens").  The Debtor contends that the recordation of the FR Lis Pendens was unwarranted and improper.

20.     On June 5, 2020, the Debtor filed a notice to remove the FR Action in its entirety to this Court, thereby commencing the adversary proceeding titled *FR LLC v. Lev Investments, LLC, et al.*, Adversary Proceeding Number 1:20-ap-01060-VK (the "FR Adversary Action").

21.     Although FR LLC opposed the Debtor's removal of the FR Action and sought to remand the FR Adversary Action to Superior Court, the Court denied FR LLC's request.  The

---

[2] *See*, Doc. No. 14, Adversary Proceeding No. 1:20-ap-01062-VK.

6

1   bases for the Court's decision not to remand the FR Adversary Action is set forth in the Court's

2   ruling filed as Docket Number 11 in the FR Adversary Action (Adversary Proceeding No. 1:20-

3   ap-01060-VK).

4       22.    The Debtor intends to file a motion in the FR Adversary Action to expunge the

5   FR Lis Pendens and will seek payment of its legal fees and costs in connection therewith.

6       23.    As of the Petition Date, the Debtor was also involved in litigation with the

7   Lenders.  On September 27, 2019, the Debtor filed its first amended verified complaint against

8   the Lenders in the Superior Court, alleging breach of implied covenant against encumbrances,

9   usury, and quiet title, and seeking declaratory relief, thereby commencing the case titled *Lev*

10  *Investments, LLC v. Feygenberg, et al.*, Case Number 19VECV00878 (The "Lenders Action").

11      24.    On March 20, 2020, the Lenders filed a cross-complaint against the Debtor and

12  others (the "Cross-Defendants"), alleging, among other causes of action, breach of contract,

13  breach of fiduciary duty, indemnity, quiet title, and seeking declaratory and injunctive relief (the

14  "Cross-Complaint").

15      25.    On June 26, 2020, the Lenders removed the Lenders Action, including the Cross-

16  Complaint, to this Court, thereby commending the adversary proceeding bearing the Adversary

17  Proceeding Number 1:20-ap-01065-VK (the "Lenders Adversary Action").  The Cross-

18  Defendants other than the Debtor have opposed the removal of the Lenders Action and are

19  seeking to remand the Lenders Action (including the Cross-Complaint) to Superior Court.

20      26.    Prior to the Petition Date, while the Lenders Action was pending in Superior

21  Court, the Lenders recorded a notice of default against the Albers Property and then a notice of

22  trustee's sale, pursuant which the Lenders scheduled a foreclosure sale for the Albers Property

23  on June 2, 2020.

24      27.    The Debtor determined in its reasonable judgment that it was in the best interest

25  of its estate to file a chapter 11 bankruptcy case to prevent the foreclosure of the Albers Property

26  (the Debtor's primary asset) and to preserve the equity in the Albers Property for the benefit of

27  all creditors (not just the Lenders), and to obtain resolution of the various litigation matters in

28

1    which the Debtor was involved in an orderly and coordinated manner.  The Debtor has proposed

2    this Plan to repay its creditors in full in accordance with the terms set forth herein.

3        B.  **Liquidation Analysis**

4        One confirmation requirement is the "Best Interest Test," which requires a liquidation

5    analysis.  Under the Best Interest Test, if a claimant or interest holder is in an impaired class

6    and that claimant or interest holder does not vote to accept the Plan, then that claimant or

7    interest holder must receive or retain under the Plan property of a value not less than the

8    amount that such holder would receive or retain if the Debtor were liquidated under chapter 7

9    of the Bankruptcy Code.

10        In a chapter 7 case, the debtor's assets are usually sold by a chapter 7 trustee.  Secured

11    creditors are paid first from the sales proceeds of properties on which the secured creditor has a

12    lien.   Administrative claims are paid next.   Next, unsecured creditors are paid from any

13    remaining sales proceeds, according to their rights to priority.  Unsecured creditors with the

14    same priority share in proportion to the amount of their allowed claim in relationship to the

15    amount of total allowed unsecured claims.  Finally, interest holders receive the balance that

16    remains after all creditors are paid, if any.

17        For the Court to be able to confirm the Plan, the Court must find that all creditors and

18    interest holders who do not accept the Plan will receive at least as much under the Plan as such

19    holders would receive under a chapter 7 liquidation of the Debtor.  The Debtor maintains that

20    this requirement is clearly met.

21        The impaired classes under the Plan consist of classes 1, 2, 3, 5 and 5a, and to the extent

22    determined to have allowed claims, class 4.  The Debtor must therefore satisfy the "best interest

23    of creditors test" with respect to members of such classes that do not vote to accept the Plan.

24        Attached as **Exhibit 1** hereto, in balance sheet format, is a demonstration of the

25    liquidation analysis in a hypothetical chapter 7 case as of September 1, 2020, if the case were to

26    be converted to chapter 7 instead of the chapter 11 plan being confirmed.  As shown in **Exhibit**

27    **1**, all creditors and interest holders will receive as much or more under the Plan as they would

28

Case 1:20-bk-11006-VK    Doc 156    Filed 08/28/20    Entered 08/28/20 15:15:45    Desc
Contact PDF    Page 9 of 35

receive under a Chapter 7 liquidation of the Debtor. *See*, **Exhibit 1**. As reflected in the liquidation analysis set forth in **Exhibit 1**, the Plan provides at least as much – and more – to creditors, and therefore meets the requirements of the Best Interest Test.

### C. Plan Payment Projections

The Plan will be composed of several components to ensure maximum payment on account of allowed claims:

1. On the Effective Date, LDI Ventures, LLC ("LDI"), an insider of the Debtor, will provide a cash loan in the sum of $700,000 to the Debtor and its estate, which funds will be used to pay $722,675 to Sensible on account of the undisputed portion of the secured claim, which is calculated as follows:

| | | |
|---|---|---|
| Asserted Principal Amount | - | $1,257,675 |
| Less Refund To Sensible | - | <$235,000> |
| Less Ming Zhu secured claim | - | <$300,000> |
| Amount to be paid | | $722,675 |

LDI's $700,000 loan and lien will be junior in priority to existing liens and will bear interest at 8% per annum, which is substantially less than the current interest rate asserted by Sensible, thereby benefitting the Debtor's estate and creditors.

2. LDI will agree to subordinate its general unsecured claim against the Debtor, in the amount of $2,800,000, to all other allowed general unsecured claims against the Debtor and its estate. Based on the foregoing, the total allowed amount of general unsecured claims is estimated by the Debtor to be less than $500,000.

3. The Debtor will continue with its efforts to sell the Albers Property, which the Debtor believes has a market value of approximately $3,000,000. Based on the equity in the Albers Property, which is estimated to be approximately $1,500,000, and without taking into account the Coachella Property, the Debtor believes that there will be sufficient funds to pay all allowed claims in full. While the amount of asserted claims is substantially higher, the Debtor believes that certain of the asserted claims will be reduced or eliminated in their entirety. Nevertheless, the Plan provides for payment of all such claims up to the value of estate assets.

4.     The Debtor is also proceeding with foreclosure of the Coachella Property and will use the proceeds of the sale of the Coachella Property to pay allowed claims, to the extent they remain unpaid.

5.     The Debtor shall also proceed with pending estate claims and will pursue such additional estate claims and causes of action as are appropriate.

### III.     TREATMENT OF CREDITORS' CLAIMS UNDER THE PLAN

#### A.  What Creditors Will Receive Under the Plan

As required by the Bankruptcy Code, the Plan classifies certain claims and interests in various "classes" according to their right to priority and leaves other types of claims unclassified.  Also, as required by the Bankruptcy Code, the Plan states whether each class of claims or interests is impaired or unimpaired and describes the treatment each class will receive.

#### 1.  Unclassified Claims

Certain types of claims are not placed into voting classes; instead they are unclassified. The Bankruptcy Code predetermines what type of treatment these claims will receive.  They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Debtor has not placed the following claims in a class.

#### a.  Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the Debtor's Bankruptcy Case that are allowed under Bankruptcy Code Section 507(a)(2). Although Bankruptcy Code Section 1129(a)(9)(A) requires that all administrative claims be paid on the Plan Effective Date unless a particular claimant agrees to a different treatment, Bankruptcy Code Section 1191(e) provides an exception by permitting confirmation of a subchapter V plan that provides for the payment of administrative claims "through the plan[.]"

The following chart lists all of the Debtor's § 507(a)(2) administrative claims and their treatment under the Plan.

| Name | Amount Owed | Treatment |
|---|---|---|
| Clerk's Office Fees | $0 | Paid in full on the Effective Date |
| Levene, Neale, Bender, Yoo & Brill L.L.P. ("LNBYB"), bankruptcy counsel to the Debtor | $200,000 (est.) | Paid in full out of the Debtor's cash on hand on the later of (i) the date that the Court enters an order allowing such fees and expenses and (ii) the date of closing of the sale of the Albers Property |
| Caroline R. Djang, Subchapter V Trustee | $50,000 (est.) | Paid in full out of the Debtor's cash on hand on the later of (i) the date that the Court enters an order allowing such fees and expenses and (ii) the date of closing of the sale of the Albers Property |
| Accountant [To be determined] | $10,000 (est.) | Paid in full out of the Debtor's cash on hand on the later of (i) the date that the Court enters an order allowing such fees and expenses and (ii) the date of closing of the sale of the Albers Property |
| **TOTAL** | **$260,000 (est.)** | |

The Court must approve all professional fees and expenses listed in this chart before they may be paid. For all professional fees and expenses (except fees owing to the Clerk of the Bankruptcy Court), the professional in question must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees and expenses allowed by the Bankruptcy Court will be required to be paid under the Plan. The administrative claim amounts set forth above simply represent the Debtor's best estimates as to the amount of allowed administrative claims in the Bankruptcy Case. The actual administrative claims may be higher or lower. Much of whether the actual administrative claims described above for professionals will be dependent upon whether the Debtor is required to engage in any substantial litigation regarding the confirmation of the Plan and/or objecting to claims. To the

extent the Debtor is required to engage in any such substantial litigation, the Debtor is likely to incur professional fees and expenses in excess (and possibly substantially in excess) of the figures set forth above. By voting to accept the Plan, creditors are not acknowledging the validity of, or consenting to the amount of, any of these administrative claims, and creditors are not waiving any of their rights to object to the allowance of any of these administrative claims. By including the figures described above, the Debtor is not acknowledging the validity of, or consenting to the amount of, any of these administrative claims, and the Debtor is not waiving any of its rights to object to the allowance of any of these administrative claims. Similarly, professionals who have been employed in the Bankruptcy Case are not being deemed to have agreed that the figures contained herein represent any ceiling on the amount of fees and expenses that they have incurred or are entitled to seek to be paid pursuant to Bankruptcy Court order as such fees and expenses are just estimates provided at the time of the preparation of this Plan.

To the extent administrative claims are allowed prior to the Effective Date, such allowed administrative claims may be paid by the Debtor out of the Debtor's funds provided the Debtor has sufficient funds to pay them. To the extent administrative claims are allowed after the Effective Date, such allowed administrative claims will be paid by the Reorganized Debtor.

**b. Priority Tax Claims**

Prepetition priority tax claims include certain unsecured income, employment and other taxes described by Section 507(a)(8) of the Bankruptcy Code. Section 1129(a)(9)(C) of the Bankruptcy Code requires that each holder of such a Section 507(a)(8) priority tax claim receive regular installment payments of a total value, as of the Plan Effective Date, equal to the allowed amount of such allowed tax claims, over a period ending not later than five years after the Petition Date, and not less favorable than other creditors paid under the Plan. Interest rates on these claims are conclusively determined by applicable non-bankruptcy law as of the month that the Plan is confirmed. 11 U.S.C. § 511.

Under the Plan, all allowed Section 507(a)(8) priority tax claims will be paid in full on the Effective Date or as soon thereafter as is practicable.

A failure by the Debtor to make a payment on the priority tax claims pursuant to the terms of the Plan will be an event of default. If the event of default is not cured within thirty (30) days after service of written notice of default from the taxing authority, then the taxing authority may enforce its applicable remedies exclusively by application to the Bankruptcy Court and with jurisdiction maintained exclusively by the Bankruptcy Court. The chart below indicates all priority tax claims which were either scheduled by the Debtor or asserted by the taxing agencies in timely filed proofs of claim. The inclusion of the claims in the chart below is intended simply to reflect the claims that have been scheduled and/or asserted in timely filed proofs of claim as priority tax claims, and is not intended to be a concession by the Debtor regarding the validity of the amount of any such claims or the classification of such claims as priority tax claims under Section 507(a)(8) of the Bankruptcy Code.

| Claimant | Proof of Claim No. | Claim Amount |
|---|---|---|
| Franchise Tax Board | 1 | $800.00 |

## 2. Classified Claims and Interests

### a. Non-Tax Pre-Petition Priority Claims

Certain prepetition priority claims that are referred to in Bankruptcy Code Sections 507(a)(4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment under the Bankruptcy Code as each holder of such an allowed claim must receive cash on the Effective Date equal to the allowed amount of such claim. However, the holder of such an unsecured priority claim may agree to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claim. The Debtor's schedules reflect no creditors as holding priority unsecured claims. No creditors filed proofs of claim asserting non-tax priority unsecured claims. The below chart summarizes the priority non-tax claims and whether the Debtor is considering an objection at this time:

| Name | Claim No. | Objection | Claim Amount |
|---|---|---|---|
| None | N/A | N/A | $0.00 |

**b. Class 1 – Allowed Secured Claim of Sensible Consulting & Management, LLC**

The following chart identifies the Plan's treatment of Class 1 comprised of the allowed secured claim of Sensible Consulting & Management, LLC ("Sensible").

| CLASS # | DESCRIPTION | IMPAIRED VOTING | TREATMENT |
|---|---|---|---|
| 1 | Claimant: Sensible Consulting & Management, LLC<br><br>Type of Claim: Allowed Secured Claim<br><br>Claim amount: To be determined (Proof of claim amount is $1,586,286.14)<br><br>Collateral: Albers Property<br><br>**This claim is disputed and subject to litigation** | Impaired<br><br>Entitled to vote. | Class 1 shall have an allowed secured claim an amount to be determined by the Court upon entry of a final non-appealable order allowing such claim.<br><br>First priority lien on the Albers Property<br><br>On the Effective Date, Class 1 shall receive a payment of $722,675 on account of the undisputed portion of its secured claim. With respect to the balance of its allowed claim, upon the entry of a final and nonappealable order allowing such claim, Class 1 shall receive full payment of its allowed secured claim from the net proceeds of the sale of the Albers Property, after costs of sale and brokers' commissions (the "Albers Property Sale Proceeds") upon the later of (i) the closing date of the sale of the Albers Property, and (ii) the date of entry of a final and non-appealable Court order determining the allowed amount of the Class 1 claim. |

Case 1:20-bk-11006-VK    Doc 156    Filed 08/28/20    Entered 08/28/20 15:15:45    Desc
Main Document    Page 15 of 35

### c.  Class 2 – Allowed Secured Claim of Ming Zhu, LLC

The following chart identifies the Plan's treatment of Class 2 comprised of the allowed secured claim of Ming Zhu, LLC.

| CLASS # | DESCRIPTION | IMPAIRED VOTING | TREATMENT |
|---|---|---|---|
| 2 | Claimant: Ming Zhu, LLC <br><br> Type of Claim: Allowed Secured Claim <br><br> Claim amount: To be determined (Proof of claim amount is $286,291.67) <br><br> Collateral: Albers Property <br><br> **This claim is disputed and subject to litigation** | Impaired <br><br> Entitled to vote. | Class 2 shall have an allowed secured claim an amount to be determined by the Court upon entry of a final non-appealable order allowing such claim. <br><br> Junior secured judgment lien on the Albers Property <br><br> Class 2 shall receive full payment of its allowed secured claim from the Albers Property Sale Proceeds upon the later of (i) the closing date of the sale of the Albers Property, and (ii) the date of entry of a final and non-appealable Court order determining the allowed amount of the Class 2 claim. |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

15

Case 1:20-bk-11006-VK   Doc 156   Filed 08/28/20   Entered 08/28/20 15:15:45   Desc
Main Document   Page 16 of 35

### d. Class 3 – Allowed Secured Claim of Los Angeles County Tax Collector

The following chart identifies the Plan's treatment of Class 3 comprised of the allowed secured claim of the Los Angeles County Tax Collector (the "County").

| CLASS # | DESCRIPTION | IMPAIRED VOTING | TREATMENT |
|---|---|---|---|
| 3 | Claimant: Los Angeles County Tax Collector<br><br>Type of Claim: Allowed Secured Claim<br><br>Allowed Claim amount: $58,203.26<br><br>Collateral: Albers Property | Impaired<br><br>Entitled to vote. | Class 3 shall have an allowed secured claim in the sum of $58,203.26, plus any unpaid interest accrued thereon.<br><br>Secured tax lien on the Albers Property<br><br>Class 3 shall receive full payment of its allowed secured claim from the Albers Property Sale Proceeds on or before the closing date of the sale of the Albers Property. |

///

///

///

///

///

///

///

///

///

///

///

///

Case 1:20-bk-11006-VK   Doc 156   Filed 08/28/20   Entered 08/28/20 15:15:45   Desc
Main Document   Page 17 of 35

#### e.  Class 4 – Disputed Secured Claims of FR LLC

The following chart identifies the Plan's treatment of Class 4, comprised of the disputed secured claim of FR LLC.

| CLASS # | DESCRIPTION | IMPAIRED VOTING | TREATMENT |
|---|---|---|---|
| 4 | Claimant: FR LLC<br><br>Type of Claim: Disputed Secured Claim<br><br>Claim amount: To be determined (Proof of claim amount for FR LLC is $195,621.39)<br><br>Collateral: Albers Property | Impaired (if Claim is allowed)<br><br>Not entitled to vote unless claim is allowed | Class 4 shall have an allowed secured claim, if any, in an amount to be determined by the Court upon entry of a final non-appealable order allowing such claim.<br><br>Junior secured lien on the Albers Property if secured claim is allowed<br><br>Class 4 shall receive full payment of its allowed secured claim, if any, from the Albers Property Sale Proceeds upon the later of (i) the closing date of the sale of the Albers Property, and (ii) the date of entry of a final and non-appealable Court order determining the allowed amount of the Class 4 claim. |

#### f.  Classes 5a and 5b – Allowed General Unsecured Claims and Subordinated General Unsecured Claim of LDI

General unsecured claims are unsecured claims not entitled to priority under Bankruptcy Code Section 507(a).  The following chart identifies the Plan's treatment of the class containing all of the Debtor's non-priority general unsecured claims (see the Claims Chart for detailed information about each general unsecured claim):

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 5a | All general unsecured claims of the Debtor not included in any other class.<br><br>Total amount of Class 5a claims is estimated to range from $334,453.04 – $6,929,675.70, depending on the results of the Debtor's objections to certain claims.<br><br>The Claims Chart attached as **Exhibit 2** to the Plan shows all claims which were scheduled by the Debtor and all proofs of claim which have been filed against the Debtor that are in Class 5a and Class 5b. | Yes.<br><br>Entitled to vote | In full and final satisfaction of each, any, and all of their claims against the Debtor, each holder of a Class 5a allowed claim will receive a cash payment equal to its prorated share of the Albers Property Sale Proceeds remaining after payment of all allowed administrative claims and all Allowed Class 1, Class 2, Class 3, and Class 4 secured claims (the "Remaining Albers Property Sale Proceeds") as well as proceeds from the sale of the Coachella Property, to the extent any claims remain unpaid.<br><br>Class 5a will not receive interest on their claims. |
| 5b | All general unsecured claims of LDI.<br><br>Total amount of Class 5b claims is estimated to be $2,800,000 | Yes.<br><br>Entitled to vote | In full and final satisfaction of its Class 5b Claim, LDI shall receive any remaining proceeds from the sales of the Albers Property and Coachella Property after payment of all other allowed claims against the Debtor.<br><br>Class 5b will not receive interest on their claims. |

### g. Class of Interest Holders

Interest holders are the parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor.

In compliance with 11 U.S.C. § 1123(a)(6), the Debtor's charter, bylaws, and/or operating agreement will be amended to provide for the inclusion of a provision prohibiting the issuance of nonvoting equity securities.

The following chart identifies the Plan's treatment of the class of interest holders:

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 6 | Equity interests in Debtor (100% held by Ekaterina Lyudkovskaya) | Unimpaired<br><br>The Class 6 interest holder is conclusively presumed to have voted to accept the Plan by operation of law | The Class 6 interest holder will retain rights and interests without impairment.<br><br>Class 6 will not receive any payments on account of her equity interests during the life of the Plan. |

## B. Means of Effectuating and Implementing the Plan

### 1. Funding for the Plan

The Plan will be funded with the following:

    a.    Cash on hand in the approximate amount of $200,000;

    b.    $700,000 junior secured loan from LDI on the Effective Date;

    c.    Proceeds from the sale of the Albers Property, which is estimated to be sold for a purchase price of approximately $3,000,000;

    d.    Proceeds from the sale of the Coachella Property, which is estimated to be sold for a purchase price of at least $2,500,000; and

    e.    Pursuit of other estate claims and causes of action.

### 2. Composition of the Debtor After the Effective Date

After the Effective Date, the Debtor shall be known as the "Reorganized Debtor." The sole member of the Debtor, Ekaterina Lyudkovskaya, will remain as the sole member of the Reorganized Debtor.

### 3. Post-Confirmation Management and Compensation

The current Manager of the Debtor, Dmitri Lioudkouski, will remain as the Manager of the Reorganized Debtor and will be responsible for the management and operation of the Debtor's business. Mr. Lioudkouski will not receive compensation for his services as Manager of the Reorganized Debtor.

### 4. Disbursing Agent

If the Plan is confirmed pursuant to 11 U.S.C. § 1191(a), the Reorganized Debtor will act as the disbursing agent under the Plan. If the Plan is confirmed pursuant to 11 U.S.C. § 1191(b), the Reorganized Debtor will act as the disbursing agent under the Plan and submit a quarterly report to the Trustee, within 45 days after the end of each quarter, detailing the payees and amounts of payment to creditors under the Plan with bank statements as proof of payment. The Reorganized Debtor will not charge any fee for acting as the disbursing agent and for making the Plan distributions.

### 5. Objections to Claims

The Debtor or the Reorganized Debtor, as the case may be, will file objections to all claims that are inconsistent with the Debtor's books and records or are otherwise objectionable to the Debtor unless the Debtor deems the inconsistency to be insignificant. With respect to disputed claims that are not resolved prior to the Plan Effective Date, the Reorganized Debtor will have the authority, in its sole discretion, and in the reasonable exercise of its business judgment, to settle or compromise any disputed claim without further notice or Court approval. As provided by Section 502(c) of the Bankruptcy Code, the Bankruptcy Court may estimate any contingent or unliquidated disputed claim for purposes of confirmation of the Plan. As of the Effective Date, the Reorganized Debtor shall have the sole authority and standing to file any objections to claims following the confirmation of the Plan, and the Court shall retain

jurisdiction over the Debtor, the Reorganized Debtor, and the Bankruptcy Case to resolve such objections to claims following the confirmation of the Plan. Nothing contained in the Plan shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any rights of setoff or recoupment, or of any defense, the Debtor or the Reorganized Debtor may have with respect to any claim. The deadline for filing claims objections shall be 180 days after the Plan Effective Date.

### 6. Avoidance Actions, Strong Arm Powers, and Causes of Action

All avoidance actions and strong-arm powers of a trustee under chapter 5 of the Bankruptcy Code, shall irrevocably vest in the Debtor and be transferred in total to the Reorganized Debtor upon confirmation of the Plan. The deadline for filing avoidance actions under chapter 5 of the Bankruptcy Code shall be the Plan Effective Date. The deadline for the Debtor or Reorganized Debtor to file any non-avoidance action shall be the later of (i) the statute of limitations for such cause of action and (ii) two years after the Petition Date. Regardless of whether they are listed on the Debtor's bankruptcy schedules of assets or specified in the Plan, all causes of action owned by the Debtor shall vest in the Reorganized Debtor unless specifically settled with such settlement approved by order of the Bankruptcy Court prior to confirmation of the Plan.

### 7. Employment of Professionals by the Reorganized Debtor and Payment of Professional Fees and Expenses After the Effective Date

On and after the Effective Date, the Reorganized Debtor shall have the right to employ and compensate professionals as the Reorganized Debtor determines is appropriate and to compensate any such professionals without the need for any notice or further order of the Bankruptcy Court.

### 8. Exemption from Transfer Taxes

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of the Bankruptcy Code, may not be taxed under any law imposing a stamp tax or similar tax. Transfers under the Plan that are exempt from taxes under section 1146(c) of

1   the Bankruptcy Code include all transfers by the Debtor after the commencement of the

2   Bankruptcy Case in contemplation of the Plan but prior to the Effective Date. The taxes from

3   which such transfers are exempt include stamp taxes, recording taxes, sales and use taxes,

4   transfer taxes, and other similar taxes.

5   **9. Distributions to Be Made Pursuant to the Plan**

6   Except as otherwise agreed to by the Reorganized Debtor in writing, distributions to be

7   made to holders of allowed claims pursuant to the Plan may be delivered by regular mail,

8   postage prepaid, to the address shown in the Debtor's schedules, as they may from time to time

9   be amended in accordance with Bankruptcy Rule 1009, or, if a different address is stated in a

10  proof of claim duly filed with the Bankruptcy Court, to such address. Checks issued to pay

11  allowed claims shall be null and void if not negotiated within sixty (60) days after the date of

12  issuance thereof.

13  **10. Exculpations and Releases**

14  To the maximum extent permitted by law, neither the Debtor, the Reorganized Debtor,

15  their management, nor any of their professionals employed or retained by any of them, whether

16  or not by Bankruptcy Court order, shall have or incur any liability to any person or entity for

17  any act taken or omission made in good faith in connection with or related to the formulation

18  and implementation of the Plan, or a contract, instrument, release, or other agreement or

19  document created in connection therewith, the solicitation of acceptances for or confirmation of

20  the Plan, or the consummation and implementation of the Plan and the transactions

21  contemplated therein, including the distribution of estate funds.

22  **11. Injunctions**

23  The Plan Confirmation Order shall enjoin the prosecution, whether directly, derivatively

24  or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of

25  action, equitable remedy, liability or interest released, discharged, stayed, or terminated

26  pursuant to the Plan. Except as provided in the Plan or the Plan Confirmation Order, as of the

27  Plan Effective Date, all entities that have held, currently hold or may hold a claim or other debt

28  or liability or equitable remedy that was stayed or is discharged or an interest or other right of

an equity security holder that is extinguished pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against: (I) (a) the Debtor, (b) the Reorganized Debtor, or (c) the officers, directors, managers, and equity holders of the Debtor as their alleged alter egos, or (II) their property; on account of any such discharged claims, debts or liabilities or extinguished interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; and (v) commencing or continuing any action in any manner, in any place, that does not comply with or is inconsistent with the provisions of the Plan. By accepting distributions pursuant to the Plan, each holder of an allowed claim receiving distributions pursuant to the Plan shall be deemed to have specifically consented to the injunctions set forth in this Section. The injunction described in this paragraph (the "Injunction") is applicable to *all* creditors and parties in interest with respect to claims or causes of action arising or existing prior to the Plan Effective Date.

All creditors and parties in interest who are presented with a copy of the Plan Confirmation Order are charged with actual knowledge of the Injunction and with actual knowledge that the Injunction is applicable to said creditor and/or party in interest ("Actual Knowledge"), such that it is impossible for said creditor and/or party in interest to have a good faith belief that the Injunction does not apply to said creditor's and/or party in interest's claim or cause of action. Accordingly, any creditor and/or party in interest charged with such Actual Knowledge may be held in contempt for violating the Injunction, which contempt proceeding shall include the Reorganized Debtor's reasonable attorneys' fees and costs for enforcing the Injunction.

## 12. Executory Contracts and Unexpired Leases

The Debtor does not believe it is a party to any executory contracts or unexpired leases. However, as of the Effective Date, any executory contract and/or unexpired lease to which the Debtor is a party shall be deemed to be rejected by the Debtor effective as of 11:59 PST on the

1    Plan Effective Date. **THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON**

2    **A CLAIM ARISING FROM THE REJECTION OF AN UNEXPIRED LEASE OR**

3    **EXECUTORY CONTRACT WHICH IS REJECTED ON THE PLAN EFFECTIVE**

4    **DATE WILL BE THIRTY DAYS AFTER THE PLAN EFFECTIVE DATE.** Any claim

5    resulting from the Debtor's rejection of an unexpired lease or executory contract will be barred

6    if the proof of claim is not timely filed, unless the Court orders otherwise. Any allowed claim

7    resulting from the Debtor's rejection of an unexpired lease or executory contract will constitute

8    a Class 5 allowed claim, subject to the limitations set forth in 11 U.S.C. § 502(b) and other

9    applicable sections of the Bankruptcy Code.

10            **13. Changes in Rates Subject to Regulatory Commission Approval**

11         The Debtor is not subject to governmental regulatory commission approval of its rates.

12              **14. Retention of Jurisdiction**

13         After confirmation of the Plan and occurrence of the Plan Effective Date, in addition to

14    jurisdiction which exists in any other court, the Bankruptcy Court will retain such jurisdiction

15    as is legally permissible including for the following purposes:

16              i.      To resolve any and all disputes regarding the operation and interpretation

17    of the Plan and the Plan Confirmation Order;

18              ii.     To determine the allowability, classification, or priority of claims and

19    interests upon objection by the Debtor or the Reorganized Debtor and to consider any objection

20    to claim or interest whether such objection is filed before or after the Effective Date;

21              iii.    To determine the extent, validity and priority of any lien asserted against

22    property of the Debtor and property of the Debtor's estate;

23              iv.    To construe and take any action to enforce the Plan, the Plan

24    Confirmation Order, and any other order of the Bankruptcy Court, issue such orders as may be

25    necessary for the implementation, execution, performance, and consummation of the Plan, the

26    Plan Confirmation Order, and all matters referred to in the Plan and the Plan Confirmation

27    Order, and to determine all matters that may be pending before this Bankruptcy Court in this

28

Bankruptcy Case on or before the Effective Date with respect to any person or entity related thereto;

    v.    To determine any and all applications for allowance of compensation and reimbursement of expenses of professionals for the period on or before the Effective Date;

    vi.    To determine any request for payment of administrative expenses;

    vii.    To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases filed before the Effective Date and the allowance of any claims resulting therefrom;

    viii.    To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the pendency of the Bankruptcy Case whether before, on, or after the Effective Date;

    ix.    To determine such other matters and for such other purposes as may be provided in the Plan Confirmation Order;

    x.    To modify the Plan under Section 1193 of the Bankruptcy Code in order to remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan so as to carry out its intent and purpose upon motion by the Reorganized Debtor;

    xi.    Except as otherwise provided in the Plan and the Plan Confirmation Order, to issue injunctions, to take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or the Plan Confirmation Order, or the execution or implementation by any person or entity of the Plan or the Plan Confirmation Order;

    xii.    To issue such orders in aid of consummation of the Plan and the Plan Confirmation Order, notwithstanding any otherwise applicable nonbankruptcy law, with respect to any person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules;

    xiii;    To enter a discharge, under 11 U.S.C. §§ 1192 and 1141(d), if applicable; and

    xiv.    To enter a final decree closing the Bankruptcy Case.

## IV.    EFFECT OF CONFIRMATION OF THE PLAN

### A. Discharge.

If the Plan is confirmed pursuant to 11 U.S.C. § 1191(a), the Debtor shall receive a discharge of its debts pursuant to 11 U.S.C. § 1141(d) on the Effective Date.  If the Plan is confirmed pursuant to 11 U.S.C. § 1191(b), the Debtor shall receive a discharge pursuant to 11 U.S.C. §§ 1192 and 1141(d), as soon as practicable after the Debtor has completed payment to the Classes for which the Plan was confirmed pursuant to 11 U.S.C. § 1191(b).

### B. Modification of the Plan.

The Debtor may modify the Plan at any time before confirmation.  However, the Bankruptcy Court may require re-voting on the Plan if the Debtor modifies the Plan before confirmation in a manner that materially and adversely affects a creditor or interest holder that had voted in favor of the Plan.  If the Plan is confirmed pursuant to 11 U.S.C. § 1191(a), the Reorganized Debtor may seek to modify the Plan at any time after confirmation of the Plan so long as (1) the Plan has not been substantially consummated, (2) circumstances warrant the modification, and (3) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed pursuant to 11 U.S.C. § 1191(b), the Reorganized Debtor may seek to modify the Plan during the life of the Plan as fixed by the Court, so long as (1) the modified plan still meets the requirements of 11 U.S.C. § 1191(b), (2) circumstances warrant the modification, and (3) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

### C. Post-Confirmation Status Reports.

Until a final decree closing the Bankruptcy Case is entered, the Reorganized Debtor will file quarterly post-confirmation status reports with the Bankruptcy Court explaining what progress has been made toward consummation of the confirmed Plan.

Case 1:20-bk-11006-VK   Doc 156   Filed 08/28/20   Entered 08/28/20 15:15:45   Desc

2    A creditor or any party in interest may bring a motion to convert or dismiss the

3  Bankruptcy Case under Section 1112(b) of the Bankruptcy Code after the Plan is confirmed,

4  but before the final decree is entered, if there is a default in performing the Plan.   If the

5  Bankruptcy Court orders the Bankruptcy Case converted to chapter 7 after the Plan is

6  confirmed, then all property that had been property of the Debtor's chapter 11 estate that has

7  not been disbursed pursuant to the Plan will revest in the chapter 7 estate, and the automatic

8  stay will be reimposed upon the revested property, but only to the extent that relief from stay

9  was not previously authorized by the Bankruptcy Court during the Bankruptcy Case.   The Plan

10  Confirmation Order may also be revoked under very limited circumstances.   The Bankruptcy

11  Court may revoke the Plan Confirmation Order if it was procured by fraud and if a party in

12  interest brings an adversary proceeding to revoke confirmation within 180 days after the entry

13  of the Plan Confirmation Order.

14         **E.   Final Decree.**

15         Once this estate has been fully administered as referred to in Bankruptcy Rule 3022, the

16  Reorganized Debtor will file a motion with the Bankruptcy Court to obtain a final decree to

17  close the Bankruptcy Case.   The Reorganized Debtor will be responsible for the timely payment

18  of all fees incurred pursuant to 28 U.S.C. § 1930(a)(6).

19  Presented By:

20  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.

21  By:   /s/ David B. Golubchik

22        DAVID B. GOLUBCHIK
        JULIET Y. OH

23        Attorneys for Chapter 11
        Debtor and Plan Proponent

24

25  Lev Investments, LLC

26

27  By:

28        Dmitri Lioudkouski
        Manager

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **EXHIBIT 1**

[Liquidation Analysis]

**Lev Investments, LLC**

**<u>Liquidation Analysis</u>:**

| | | |
|---|---|---|
| Albers Property | $ | 3,000,000[1] |
| Cash | $ | 0 |
| <u>Coachella Property</u> | $ | 2,500,000[2] |
| Total Assets | $ | 5,500,000 |

**<u>Less</u>:**

Secured Claims:

| | | |
|---|---|---|
| Sensible Consulting & Mgmt LLC* | $ | 1,586,287 |
| Ming Zhu, LLC* | $ | 286,292 |
| Los Angeles County Tax Collector | $ | 58,204 |
| Mariya Ayzenberg* | $ | 35,000 |
| FR LLC* | $ | 195,622 |

Administrative Claims:

| | | |
|---|---|---|
| Chapter 7 Trustee Fees and the Fees/Expenses of the Professionals Employed By the Trustee | $ | 150,000 |
| Broker commissions (5%) and sale closing costs for real properties | $ | 385,000 |
| Professionals Fees/Expenses Incurred During Chapter 11 | $ | 260,000 |

| | | |
|---|---|---|
| Pre-Petition Priority Tax Claims: | $ | 800 |
| Balance Available to be Paid To Pre-Petition General Unsecured Creditors | $ | 2,542,795 |

---

[1] This figure assumes that the Albers Property is sold at fair market value, which is estimated by the Debtor to be $3,000,000.

[2] This figure assumes that the Coachella Property is successfully foreclosed on by the Debtor and sold at fair market value, which is estimated by the Debtor to be $2,500,000.

* Disputed claim

Case 1:20-bk-11006-VK  Doc 156  Filed 08/28/20  Entered 08/28/20 15:15:45  Desc
Main Document  Page 30 of 35

**% OF THEIR CLAIMS WHICH GENERAL UNSECURED CREDITORS OF THE DEBTOR (HOLDERS OF CLASS 5a AND CLASS 5b ALLOWED CLAIMS) WOULD RECEIVE OR RETAIN IN A CH. 7 LIQUIDATION, BASED UPON ALLOWED GENERAL UNSECURED CLAIMS TOTALING $3,134,453 – $9,729,676 = 26–81%.**

**% OF THEIR CLAIMS WHICH GENERAL UNSECURED CREDITORS OF THE DEBTOR (HOLDERS OF CLASS 5a ALLOWED CLAIMS, EXCLUDING SUBORDINATED CLASS 5b ALLOWED CLAIMS) WILL RECEIVE OR RETAIN UNDER THE PLAN, BASED UPON ALLOWED GENERAL UNSECURED CLAIMS TOTALING $334,453 – $6,929,676 = 37–100%.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **EXHIBIT 2**

[Claims Chart]

| Name | Claim No. | Date Claim Filed | Secured | Priority | Unsecured | C/U/D | Sch. D (Secured) | Sch. E (Priority) | Sch. F (Unsecured) | Obj? | Secured | Priority |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Maria Ayzenberg | 9 | 8/6/2020 | 35,000.00 | | | | | | | Yes | 35,000.00 | |
| Los Angeles County Tax Collecto | 3 | 6/25/2020 | 58,203.26 | | | | 18,000.00 | | | | 58,203.26 | |
| FR, LLC | 5 | 7/18/2020 | 195,621.39 | | | U/D | | | Unk | Yes | 195,621.39 | |
| Ming Zhou | 4 | 7/3/2020 | 286,291.67 | | | C/U/D | 0.00 | | | Yes | 286,291.67 | |
| Sensible Consulting & Mgmt Inc | 12 | 8/10/2020 | 1,586,286.14 | | | U/D | 1,047,675.00 | | | Yes | 1,586,286.14 | |
| Franchise Tax Board | 1 | 6/12/2020 | | 800.00 | 4,017.12 | | | 0.00 | | | | 800.00 |
| Coachella Vineyard Luxury RV Park LLC | 16 | 8/10/2020 | | | 3,500,000.00 | | | | | Yes | | |
| G&B Law, LLP | 6 | 7/28/2020 | | | 23,535.81 | | | | Unk | | | |
| GA&TV Inc. | 15 | 8/10/2020 | | | 500,000.00 | | | | | Yes | | |
| Greenday Capital LLC | | | | | | | | | 300,000.00 | | | |
| Internal Revenue Service | | | | | | | | 0.00 | | | | |
| Jeff Nodd, Esq. | | | | | | U | | | Unk | | | |
| Kevin Moda | 11 | 8/7/2020 | | | 13,314.40 | | | | | Yes | | |
| Landmark Land, LLC* | | | | | | U | | 50,000.00 | | | | |
| LDI Ventures, LLC* | | | | | | | | | 2,800,000.00 | | | |
| Lisitsa Law, Inc. | 7 | 8/4/2020 | | | 139,266.89 | | | | | Yes | | |
| MGF Developing, Inc. | | | | | | | | | 6,900.11 | | | |
| Michael Leizerovitz | 13 | 8/10/2020 | | | 1,316,441.36 | | | | | Yes | | |
| Michael Masinovsky | 10 | 8/7/2020 | | | 661,200.00 | U | | | 228,860.00 | Yes | | |
| Mike Kemel | 8 | 8/4/2020 | | | 24,500.00 | | | | | Yes | | |
| Real Property Trustee, Inc. | | | | | | D | | | Unk | | | |
| Ruvin Feygenberg | 14 | 8/10/2020 | | | 430,000.00 | | | | | Yes | | |
| The Sands Law Group, APLC | 2 | 6/12/2020 | | | 10,500.01 | | | | | Yes | | |
| | | | | | | | | | | | | |
| **TOTAL:** | | | 2,161,402.46 | 800.00 | 6,622,775.59 | | 1,065,675.00 | 0.00 | 3,385,760.11 | | 2,161,402.46 | 800.00 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **DEBTOR'S CHAPTER 11, SUBCHAPTER V PLAN, DATED AUGUST 28, 2020** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **August 28, 2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Lisa D Angelo**    langelo@murchisonlaw.com, cthomas@murchisonlaw.com
- **Richard T Baum**    rickbaum@hotmail.com, rickbaum@ecf.inforuptcy.com
- **Katherine Bunker**    kate.bunker@usdoj.gov
- **John Burgee**    jburgee@bandalaw.net
- **Caroline Renee Djang (TR)**    caroline.djang@bbklaw.com, C190@ecfcbis.com;sansanee.wells@bbklaw.com;wilma.escalante@bbklaw.com
- **James R Felton**    jfelton@gblawllp.com, nknadjian@gblawllp.com
- **David B Golubchik**    dbg@lnbyb.com, stephanie@lnbyb.com
- **Juliet Y Oh**    jyo@lnbrb.com, jyo@lnbrb.com
- **Thomas D Sands**    thomas@thesandslawgroup.com, thomas@thesandslawgroup.com
- **Michael Shemtoub**    michael@lexingtonlg.com
- **David A Tilem**    davidtilem@tilemlaw.com, DavidTilem@ecf.inforuptcy.com;joanfidelson@tilemlaw.com;JoanFidelson@ecf.inforuptcy.com;DianaChau@tilemlaw.com
- **United States Trustee (SV)**    ustpregion16.wh.ecf@usdoj.gov

**2. SERVED BY UNITED STATES MAIL**: On **August 28, 2020**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ *Service information continued on attached page*

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **August 28, 2020**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

***Served by Overnight Mail***
Hon. Victoria S. Kaufman
United States Bankruptcy Court
21041 Burbank Boulevard, Suite 354 / Courtroom 301
Woodland Hills, CA 91367

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 28, 2020 | Stephanie Reichert | /s/ Stephanie Reichert |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                          **F 9013-3.1.PROOF.SERVICE**

Label Matrix for local noticing
0973-1
Case 1:20-bk-11006-VK
Central District of California
San Fernando Valley
Fri Aug 28 12:17:49 PDT 2020

Lev Investments, LLC
13854 Albers Street
Sherman Oaks, CA 91401-5811

Lisitsa Law, Inc.
Lisitsa Law, Inc.
5455 Wilshire Blvd., Suite 901
Los Angeles, CA 90036-4276

Coachella Vineyard Luxury RV Park LLC
18325 Domino Street
Tarzana, CA 91335-7021

FR, LLC
c/o Michael Shemtoub, Esq.
4929 Wilshire Blvd., suite 702
Los Angeles, CA 90010-3824

Franchise Tax Board
Special Procedures
POB 2952
Sacramento, CA 95812-2952

G&B Law, LLP
Attn: James R. Felton
16000 Ventura Blvd., suite 1000
Encino, CA 91436-2762

GA&TV Inc.
18325 Domino Street
Tarzana, CA 91335-7021

Greenday Capital LLC
1616 W 218th St
Torrance, CA 90501-3861

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

Jeff Nodd, Esq.
15250 Ventura Blvd
Encino, CA 91403-3201

LDI Ventures, LLC
423 N Palm dr
Beverly Hills, CA 90210-3974

(p)LOS ANGELES COUNTY TREASURER AND TAX COLLE
ATTN BANKRUPTCY UNIT
PO BOX 54110
LOS ANGELES CA 90054-0110

Landmark Land, LLC
Attn Alex Polovinchik
860 Via De La Paz, suite E-1
Pacific Palisades, CA 90272-3668

Lisitsa Law, Inc.
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210-5535

MGF Developing, Inc.
23679 Calabasas Rd. #774
Calabasas, CA 91302-1502

Maria Ayzenberg
C/O Michael Shemtoub, Esq.
4929 Wilshire Blvd. Suite 702
Los Angeles, CA 90010-3824

Michael Leizerovitz
15 Via Monarca St.
Dana Point, CA 92629-4082

Michael Masinovsky
21810 Eaton Place
Cupertino, CA 95014-1182

Michael Masinovsky
c/o Matthew A. Lesnick
Lesnick Prince & Pappas LLP
315 W. Ninth St., Suite 705
Los Angeles, CA 90015-4212

Ming Zhou
Thomas Krantz, Esq.
2082 Michelson Drive, Suite 212
Irvine, CA 92612-1213

Ming Zhu, LLC
c/o Timothy Krantz, Esq.
2082 Michelson Drive, #212
Irvine, CA 92612-1213

(p)REAL PROPERTY TRUSTEE  INC
ATTN MIKE KEMEL
PO BOX 17064
BEVERLY HILLS CA 90209-3064

Ruvin Feygenberg
17777 Ventura Boulevard, Suite 210
Encino, CA 91316-3748

Sensible Consulting & Mgmt Inc
c/o John Burgee Esq.
20501 Ventura Boulevard, Suite 262
Woodland Hills, CA 91364-6410

Thomas Sands, Esq.
The Sands Law Group, APLC
205 South Broadway, Suite 903
Los Angeles, CA 90012-3618

United States Trustee (SV)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017-3560

Caroline Renee Djang (TR)
18101 Von Karman Ave., Suite 1000
Irvine, CA 92612-0164

Gina Lisitsa
5455 Wilshire Blvd., Suite 901
Los Angeles, CA 90036-4276

Mariya Ayzenberg
4923 Lindley Avenue
Tarzana, CA 91356-4319