DAVID B. GOLUBCHIK (SBN 185520)
JULIET Y. OH (SBN 211414)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email:  DBG@LNBYB.COM; JYO@LNBYB.COM

Attorneys for Chapter 11 Debtor and
Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re: | Case No.: 1:20-bk-11006-VK |
| LEV INVESTMENTS, LC, | Chapter 11 |
| Debtor and Debtor in  Possession. | **DEBTOR'S MOTION FOR ENTRY OF AN ORDER: (A) AUTHORIZING SALE OF DEBTOR'S REAL PROPERTY LOCATED AT 13854 ALBERS STREET, SHERMAN OAKS, CALIFORNIA 91401 [APN 2247-013-001], FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (B) APPROVING OVERBID PROCEDURES; AND (C) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF DMITRI LIOUDKOUSKI AND ILYA TSIPIS IN SUPPORT THEREOF**<br><br>Hearing:<br>Date:  October 22, 2020<br>Time:  2:30 p.m.<br>Place:  Courtroom "301"<br>        21041 Burbank Boulevard<br>        Woodland Hills, California 91367 |

1

# TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES**..................................................... 5

**I.    STATEMENT OF FACTS** ............................................................................ 5

    **A.    Background**.................................................................................... 5

    **B.    Marketing Efforts And Proposed Sale Of The Property** ............................. 7

    **C.    Proposed Overbid Procedures For The Sale Of The Property** ................... 9

    **D.    Liens And Interests Against The Property** ....................................... 12

**II.    GOOD CAUSE EXISTS TO APPROVE THE PROPOSED OVERBID
PROCEDURES** ................................................................................... 14

**III.    THE PROPOSED SALE IS IN THE BEST INTEREST OF THE ESTATE** ........ 15

    **A.    The Debtor Has Complied With All Applicable Notice Requirements** ...... 15

    **B.    The Sale Of The Property Should Be Approved Because Good Business
Reasons Exist, The Proposed Purchase Price Is Fair And Reasonable,
And The Sale Is In The Best Interests Of The Estate And Creditors** ........ 16

        **a.    Sound Business Purpose** ....................................................... 17

        **b.    Fair and Reasonable Price** .................................................... 17

        **c.    Adequate Marketing** ............................................................ 18

        **d.    Good Faith** ........................................................................ 19

        **e.    Accurate and Reasonable Notice** ............................................ 20

    **C.    The Court Should Approve The Sale Of The Property, Free And Clear
Of Liens, Claims And Encumbrances** ............................................ 21

**IV.    CONCLUSION** .................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Abbotts Dairies*,
    788 F.2d at 149 .................................................................................................................19

*In re Alpha Industries, Inc.*,
    84 B.R. 703 (Bankr. Mont. 1988) ................................................................................18, 19

*In re Apex Oil Co.*,
    92 B.R. 847 (Bankr. E.D. Mo. 1988) .................................................................................19

*In re Atlanta Packaging Products, Inc.*,
    99 B.R. 124 (Bankr. N.D. Ga. 1988) ..................................................................................14

*Big Shanty Land Corp. v. Comer Properties, Inc.*,
    61 B.R. 272 (Bankr. N.D. Ga. 1985) ..................................................................................18

*In re Canyon Partnership*,
    55 B.R. 520 (Bankr. S.D. Cal. 1985) ............................................................................17, 18

*In re Filtercorp, Inc.*,
    163 F.3d 570 (9th Cir. 1998) ........................................................................................19, 20

*In re Industrial Valley Refrig. and Air Cond. Supplies, Inc.*,
    77 B.R. 15 (Bankr. E.D. Pa. 1987) .....................................................................................19

*In re Karpe*,
    84 B.R. 926 (Bankr. M.D.Pa. 1988) ...................................................................................20

*In re Lionel Corp.*,
    722 F.2d 1063 (2d Cir. 1983)..............................................................................................16

*re Mama's Original Foods, Inc.*,
    234 B.R. 500 (C.D. Cal. 1999) ...........................................................................................17

*In re Rock Indus. Mach. Corp.*,
    572 F.2d 1195 (7th Cir. 1978) ............................................................................................19

*In re The Landing*,
    156 B.R. 246 (Bankr. E.D. Mo. 1993) ................................................................................17

*Walter v. Sunwest Bank (In re Walter)*,
    83 B.R. 14 (9th Cir. B.A.P. 1988).......................................................................................17

*In re Whittemore*,
    37 B.R. 93 (Bankr. D. Or. 1984).........................................................................................21

*In re Wilde Horse Enterprises, Inc.*,
   136 B.R. 830 (Bankr. C.D. Cal. 1991)..............................................................17, 18, 19

**Other State Cases**

*FR LLC v. Lev Investments, LLC, et. Al*,
   Case Number 19STCV45132 ...............................................................................6

*Lev Investments, LLC v. Feygenberg, et al.*,
   Case Number 19VECV00878................................................................................5, 7

**Federal Statutes**

11 U.S.C. § 101(31) ....................................................................................................20

11 U.S.C. § 101 *et seq.*.......................................................................................... *passim*

11 U.S.C. § 102(1)(A)................................................................................................15

11 U.S.C. § 363 ...........................................................................................................3, 14

11 U.S.C. § 363(b)........................................................................................2, 16, 17, 18

11 U.S.C. § 363(b)(1) ................................................................................................15, 19

11 U.S.C. § 363(b)(2) ................................................................................................15

11 U.S.C. § 363(f).........................................................................................2, 21, 22

11 U.S.C. § 363(m).........................................................................................3, 20, 23

11 U.S.C. § 705 ...........................................................................................................15

11 U.S.C. § 1102 .........................................................................................................15

11 U.S.C. § 1107 .........................................................................................................5

11 U.S.C. § 1108 .........................................................................................................5

**Federal Rules**

Fed. R. Bankr. P. 2002 ...............................................................................................3, 14

Fed. R. Bankr. P. 2002(a)(2)......................................................................................15, 16

Fed. R. Bankr. P. 2002(c)(1)......................................................................................15, 16

Fed. R. Bankr. P. 2002(i) ...........................................................................................15, 16

Fed. R. Bankr. P. 2002(k) ..........................................................................................15, 16

Fed. R. Bankr. P. 6004 ........................................................................................................ 2, 3, 14

Fed. R. Bankr. P. 6004(a) ......................................................................................................... 15, 16

Fed. R. Bankr. P. 6004(c) ............................................................................................................... 16

Fed. R. Bankr. P. 6004(f) ............................................................................................................... 14

Fed. R. Bankr. P. 6004-1 ................................................................................................................ 16

Fed. R. Bankr. P. 9014 ............................................................................................................. 3, 16

Fed. R. Bankr. P. 9019 ............................................................................................................... 2, 3

Lev Investments, LLC, the debtor and debtor-in-possession in the above-captioned Chapter 11 bankruptcy case (the "Debtor"), hereby files this motion (the "Motion"), pursuant to 11 U.S.C. § 363(b) and (f) and Rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), seeking the entry of an order:  (A) authorizing the Debtor to sell the residential real property located at 13854 Albers Street, Sherman Oaks, California 91401 [APN 2247-013-001] (the "Property"), free and clear of all liens, claims, encumbrances, and interests, and in accordance with the terms and conditions set forth in the *California Residential Purchase Agreement And Joint Escrow Instructions* (the "Purchase Offer") and the *Seller Multiple Counter Offer No. 1*, *Addendum No. 1 and Addendum No. 2* to the Purchase Offer (collectively, the "Purchase Agreement"), true and correct copies of which are attached as **Exhibit "1"** to the Declaration of Dmitri Lioudkouski annexed to this Motion (the "Lioudkouski Declaration"); (B) approving the proposed overbid procedures for the sale of the Property, as described in the Motion (the "Overbid Procedures"); and (C) granting related relief.  The complete relief requested and the bases for this Motion are set forth in the annexed Memorandum of Points and Authorities and Lioudkouski Declaration.

As reflected in the Purchase Agreement, a third party buyer named Hagop Anserian (the "Purchaser") has offered to purchase the Property, which is one of the primary assets of the Debtor's bankruptcy estate, on an "as is, where is" basis with no representation or warranty as to the condition of the Property, for the purchase price of $2,950,000 (the "Purchase Price").  The Debtor believes, based upon its knowledge of the local real estate market, that the Purchase Price reflects the fair market value of the Property and that the proposed sale of the Property to the Purchaser (or a successful overbidder) is in the best interests of the Debtor's estate.

Accordingly, pursuant to this Motion, the Debtor seeks authority to sell the Property to the Purchaser, free and clear of liens, claims, encumbrances and interests, subject to overbid, and in accordance with the terms set forth in the Purchase Agreement attached as Exhibit "1" to the Lioudkouski Declaration.  The Debtor also seeks approval of the Overbid Procedures described in the Motion in connection with the proposed sale of the Property.

Pursuant to the Motion, the Debtor also seeks Court authority to pay from the Purchase Price, through escrow: (i) secured property taxes due on the Property as of the sale closing date, if any, (ii) brokers' commissions to the Debtor's Court-approved real estate brokers and any cooperating broker for the Purchaser, (iii) certain post-petition maintenance, repair and marketing/sale expenses for the Property totaling $21,517, which were paid for by the Debtor's affiliate, LDI Ventures, LLC (the "Property Expenses"), as described in **Exhibit "6"** to Lioudkouski Declaration, and (iv) typical escrow/closing costs, and directing the remaining net proceeds of the sale of the Property to be delivered to a segregated bank account maintained by counsel for the Debtor (the "LNBYB Account"), pending a further order of the Court.

This Motion is based upon 11 U.S.C. § 363, Bankruptcy Rules 2002, 6004, 9014 and 9019, the notice of the Motion filed and served concurrently herewith, the annexed Memorandum of Points and Authorities and Lioudkouski Declaration, the entire record of the Debtor's bankruptcy case, the statements, arguments and representations of counsel to be made at the hearing on the Motion, and any other evidence properly presented to the Court at, or prior to, the hearing on the Motion.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order:

1. finding that the notice given by the Debtor in connection with the sale of the Property and the hearing on the Motion is adequate, sufficient, and proper and complies with all applicable provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure;

2. granting the Motion in its entirety;

3. approving the Overbid Procedures;

4. authorizing the Debtor to sell the Property to the Purchaser, or to a successful overbidder, free and clear of all liens, claim, encumbrances and interests, and in accordance with the terms set forth in the Purchase Agreement and the Motion;

5. finding that the Purchaser (or a successful overbidder) is a good faith buyer entitled to all of the protections afforded by 11 U.S.C. § 363(m);

6. authorizing the Debtor to take all necessary and reasonable steps to consummate the sale of the Property to the Purchaser (or to a successful overbidder);

7.      authorizing the payment of secured property taxes due as of the closing date, brokers' commissions, the Property Expenses, and typical escrow/closing costs from the Purchase Price through escrow, and directing the remaining net proceeds of the sale of the Property to be delivered to the LNBYB Account, pending a further order of the Court; and

8.      granting such other and further relief as the Court deems just and proper.

Dated:  October 1, 2020                                     LEV INVESTMENTS, LLC

By: _____
                DAVID B. GOLUBCHIK
                JULIET Y. OH
                LEVENE, NEALE, BENDER, YOO
                  & BRILL L.L.P.
                Attorneys for Chapter 11 Debtor and
                Debtor-in-Possession

4

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

**A.    Background.**

1.    Lev Investments, LLC, the debtor and debtor- in-possession herein (the "Debtor"), filed a voluntary petition for relief under Chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") on June 1, 2020 (the "Petition Date").  The Debtor is managing its financial affairs and operating its bankruptcy estate as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2.    In December 2018, the Debtor, on the one hand, and Ruvin Feygenberg ("Feygenberg") and Michael Leizerovitz or his assignee, Sensible Consulting and Management, Inc. ("Leizerovitz," and together with Feygenberg, the "Lenders"), on the other hand, entered into an agreement (the "Debt Purchase Agreement") to purchase debt secured by the real property located at 13854 Albers Street, Sherman Oaks, California 91401 [APN 2247-013-001] (the "Property"), and then to proceed to foreclose on, and ultimately obtain ownership of, the Property.

3.    The Debt Purchase Agreement contemplated that the Debtor would contribute the sum of $1,022,500 and that the Lenders would contribute the sum of $1,257,675 (of which approximately $230,000 would be immediately refunded to the Lenders), such that the amounts contributed by the Debtor and the Lenders to purchase the debt secured by the Property would be equal.  The Debtor Purchase Agreement also provided that, upon the foreclosure of the Property, title to the Property would be vested solely in the Debtor's name, and the Lenders would hold a first priority security interest and lien against the Property in the sum of $1,257,675.

4.    Notwithstanding the express terms of the Debt Purchase Agreement, which required that title to the Property be vested solely in the Debtor's name following foreclosure, the attorney handling the transaction for the Debtor and the Lenders (Gina Lisitsa) recorded a Trust Deed in the joint names of the Debtor and the Lenders on February 1, 2019.  In an attempt to correct this error, Ms. Lisitsa then had the Lenders quitclaim their interest in the Property to the Debtor.

5.    On December 13, 2019, an entity called FR LLC filed a complaint against the Debtor and others in Superior Court of the State of California for the County of Los Angeles (the "Superior Court"), alleging conversion, negligent bailment, unjust enrichment, and quiet title, thereby commencing the case titled *FR LLC v. Lev Investments, LLC, et. Al*, Case Number 19STCV45132 (The "FR Action").  Pursuant to the FR Action, FR LLC alleged that the Debtor had obtained a loan in the sum of $119,000 from FR LLC's assignor, which loan was secured by a lien against the Property.  However, the Debtor has never obtained a loan from FR LLC or its assignor, does not know who FR LLC or its assignor (whose identity FR LLC has refused to disclose to date) is, and strongly disputes all of the allegations made by FR LLC in the FR Action.

6.    On December 31, 2019, FR LLC recorded a notice of pendency of the FR Action against the Debtor's Property, as Instrument Number 20191465878 (the "FR Lis Pendens").  The Debtor contends that the recordation of the FR Lis Pendens was unwarranted and improper.

7.    Concurrently with the commencement of its bankruptcy case, the Debtor received an offer to purchase the Property.  The Debtor contacted counsel for FR LLC and obtained a stipulation to sell the Property free and clear of the FR Lis Pendens, with the FR Lis Pendens to attach to the proceeds of the sale with the same validity, extent and priority as FR LLC was entitled to immediately prior to the sale (the "FR LLC Sale Stipulation").  A true and correct copy of the FR LLC Sale Stipulation is attached as **Exhibit "5"** to the Declaration of Dmitri Lioudkouski annexed hereto (the "Lioudkouski Declaration").

8.    On June 5, 2020, the Debtor filed a notice to remove the FR Action in its entirety to this Court, thereby commencing the adversary proceeding titled *FR LLC v. Lev Investments, LLC, et al.,* Adversary Proceeding Number 1:20-ap-01060-VK (the "FR Adversary Action").

9.    If necessary, the Debtor will file a motion in the FR Adversary Action to expunge the FR Lis Pendens and will seek payment of the Debtor's legal fees and costs in connection therewith.

10.    As of the Petition Date, the Debtor was also involved in litigation with the Lenders. On September 27, 2019, the Debtor filed its first amended verified complaint against the Lenders

in the Superior Court, alleging breach of implied covenant against encumbrances, usury, and quiet

title, and seeking declaratory relief, thereby commencing the case titled *Lev Investments, LLC v.*

*Feygenberg, et al.*, Case Number 19VECV00878 (The "Lenders Action").

11.    On March 20, 2020, Feygenberg and the other defendants named in the Lenders

Action filed a cross-complaint against the Debtor and others, alleging, among other causes of

action, breach of contract, breach of fiduciary duty, indemnity, quiet title, and seeking declaratory

and injunctive relief.

12.    The Lenders Action (but not the cross-complaint) has been removed to the

Bankruptcy Court and is currently pending as an adversary proceeding.

13.    While the Lenders Action was pending in Superior Court, the Lenders recorded a

notice of default against the Property and then a notice of trustee's sale, pursuant which the

Lenders scheduled a foreclosure sale for the Property on June 2, 2020.

14.    In order to prevent the foreclosure of the Property (the Debtor's primary asset) and

preserve the equity in the Property for the benefit of all creditors (not just the Lenders), and to

obtain resolution of the various litigation matters in which the Debtor is involved in an orderly and

coordinated manner, the Debtor commenced this Chapter 11 bankruptcy case.

**B.    Marketing Efforts And Proposed Sale Of The Property.**

15.    On September 17, 2020, the Court entered an order approving the Debtor's

employment of Central Realty Advisors and Fair Realty Inc. (together, the "Brokers") as the

Debtor's exclusive co-listing real estate brokers with respect to the marketing and potential sale of

the Property.

16.    With the assistance of the Brokers, the Property was listed on the Multiple Listing

Service (MLS) on July 1, 2020.

17.    As described in the Declaration of Ilya Tsipis annexed hereto, during a period of

approximately three (3) months, the Brokers spent a significant amount of time and resources

marketing the Property.  Among other things, the Brokers staged the Property (after interviewing

five different staging companies and selecting the most qualified one), had the Property

professionally photographed, prepared a "virtual" video tour of the Property, created and launched

a listing website for the Property, and implemented an e-mail marketing campaign to promote the Property to the Brokers' wide network of real estate brokers and clients. As a result of such efforts, the Brokers conducted fifteen (15) separate showings of the Property, which resulted in the receipt of three (3) written offers to purchase the Property.

18.    After countering the three written offers received for the Property, and investigating and negotiating such offers, the Debtor has elected to proceed, subject to the approval of the Court, with the offer received from an individual buyer named Hagop Anserian (the "Purchaser").

19.    The terms and conditions of the proposed sale of the Property to the Purchaser are set forth in the *California Residential Purchase Agreement And Joint Escrow Instructions* (the "Purchase Offer") and the *Seller Multiple Counter Offer No. 1*, *Addendum No. 1* and *Addendum No. 2* to the Purchase Offer (collectively, the "Purchase Agreement"), true and correct copies of which are attached as **Exhibit "1"** to the Lioudkouski Declaration.

20.    As reflected in the Purchase Agreement, the Property is proposed to be sold to the Purchaser on an "as is, where is" basis with no representation or warranty as to the condition of the Property, for the purchase price of $2,950,000 (the "Purchase Price"). As reflected in the Purchase Agreement, the Purchaser has agreed that his offer to purchase the Property shall be subject to overbid and the approval of this Court.

21.    As noted in the Purchase Agreement, the Purchaser was provided with the option to request from the Debtor carryback financing of up to $1,000,000 of the Purchase Price ("Carryback Financing"), which financing would be provided by the Debtor at an interest rate of 8% per annum with a maturity date no longer than one (1) year after the closing date for the sale of the Property. In the event that the Purchaser opted to obtain Carryback Financing from the Debtor, the Purchaser would be required to pay all loan fees, and the Debtor would hold a first priority security interest and lien against the Property in the sum of the Carryback Financing. The Purchaser has confirmed that he is not exercising the option to request Carryback Financing from the Debtor.

22.     The Purchaser has already provided a good faith deposit in the sum of $88,500, which is equal to three percent (3%) of the Purchase Price, which deposit is being maintained in an escrow account held by Glen Oaks Escrow (the "Escrow Company").

23.     As discussed below, the proposed Purchase Price significantly exceeds the total sum of the liens recorded or otherwise asserted against the Property (most of which liens are disputed by the Debtor), and will result in net sale proceeds in an amount sufficient to provide a recovery to the Debtor's general unsecured creditors.

24.     The Debtor also believes, based upon its knowledge of the local real estate market, that the Purchase Price reflects the fair market value of the Property and that the proposed sale of the Property to the Purchaser (or a successful overbidder) is in the best interests of the Debtor's estate.

25.     Based on the foregoing, by this Motion, the Debtor is seeking Court approval to sell the Property to the Purchaser for the Purchase Price, free and clear of all liens, claims, interests and encumbrances, and in accordance with the terms and conditions set forth in the Purchase Agreement, subject to overbid.

**C.      Proposed Overbid Procedures For The Sale Of The Property.**

26.     While the Debtor is prepared to consummate the proposed sale of the Property to the Purchaser, subject to Court approval, the Debtor is also interested in obtaining the maximum value for the Property.  Accordingly, the Debtor is seeking to have the proposed sale of the Property to the Purchaser be subject to better and higher bids.  However, to induce the Purchaser to act as the "stalking horse" buyer for the Property, the Debtor has proposed that certain overbid procedures be implemented in connection with the sale of the Property, as described below.

27.     The Debtor is seeking Court approval of the following overbid procedures in connection with the proposed sale of the Property (collectively, the "Overbid Procedures"):

a.     ***Overbid Requirements.***  Any party interested in submitting an overbid for the Property ("Overbid") must, not later than 4:00 p.m. (Pacific time) on Monday, October 19, 2020 (the "Overbid Deadline"), deliver such Overbid in writing via e-mail to proposed counsel for the Debtor (Juliet Y. Oh, Esq., Levene, Neale, Bender, Yoo & Brill L.L.P.

("LNBYB"), Email: JYO@LNBYB.com), in accordance with the requirements set forth below:

        i.      The purchase price for the Property in any Overbid must be in the sum of at least $3,000,000.  Any Overbid must otherwise be substantially on the same terms and conditions set forth in the Purchase Agreement and must not be subject to any contingencies whatsoever.

        ii.      Each party submitting an Overbid must, by the Overbid Deadline: (x) deliver a signed purchase offer together with the form Addendum (or a revised version thereof, with a redline comparing the revised Addendum to the original Addendum agreed to by the Purchaser), (y) deliver a deposit in a sum equal to three percent (3%) of the purchase price proposed to be paid pursuant to the Overbid (the "Deposit"), in the form of a wire transfer payment to a client trust account designated by LNBYB, so that such Deposit is actually received by LNBYB by the Overbid Deadline, and (z) deliver to LNBYB proof of committed funds available to the bidder sufficient to enable such bidder to consummate the sale of the Property, which proof shall be in the form of a bank account statement, letter of credit, loan commitment or other form acceptable to the Debtor in the Debtor's reasonable discretion.  In the event that the bidder fails to timely make the Deposit or timely provide proof of committed funds, or the Debtor determines, in its reasonable discretion, that the proof of funds delivered to LNBYB is unacceptable, the Debtor may disqualify such bidder from participating in the Auction (as that term is defined below).  In the event that the Debtor exercises its reasonable discretion and disqualifies a bidder from participating in the Auction, the Deposit made by such bidder (if any) shall be promptly returned to the bidder.

        b.    ***Auction.***  If one or more qualified Overbids are received in accordance with the Overbid Procedures described herein, an auction of the Property ("Auction") shall be conducted at the date and time of the hearing on this Motion.

c.     ***Bidding At Auction***.  If at least one qualified bidder who has submitted an Overbid appears at the Auction, the Debtor and LNBYB shall designate what they determine to be the best and highest Overbid(s) received for the Property to be the leading bid(s) at the Auction.  Thereafter, the Debtor and LNBYB shall solicit better and higher bids for the Property, in minimum bidding increments to be determined by the Debtor and LNBYB at the Auction, from the qualified bidders participating in the Auction (including the Purchaser, if they choose to participate) until the best and highest bid(s) for the Property has been determined by the Debtor and LNBYB.

d.     ***Backup Bidder.***  In the event that there is at least one qualified overbidder at the Auction, the qualified bidder who submits the second best/highest bid for the Property at the Auction shall be designated as the backup bidder (if such bidder agrees).  In the event that the successful bidder for the Property cannot timely complete the purchase of the Property, the Debtor shall be authorized to proceed with the sale of the Property to the backup bidder without further notice, hearing or order of the Court.

e.     ***Closing Of Sale And Forfeiture Of Deposits.***  The winning bidder shall have until the first business day that is fifteen (15) days after the date of entry of an order granting this Motion (the "Sale Order") to consummate the sale of the Property.  If the winning bidder fails to do so, the winning bidder will be deemed to have forfeited his/her/its Deposit unless the Court or the Debtor agrees to provide the winning bidder with an extension of time to close the sale.  If the winning bidder fails to close and forfeits his/her/its Deposit, the backup bidder will be notified and will then have until the first business day that is seven (7) days after the date of such notification to close his/her/its purchase of the Property or will be deemed to have forfeited his/her/its Deposit unless the Court or the Debtor agrees to provide such backup bidder with an extension of time to close the sale.  The Deposit(s) of the backup bidder(s) will be retained by LNBYB following the conclusion of the Auction and will be returned to the backup bidder(s) on the earlier to occur of (i) the closing by the winning bidder(s) of his/her/its purchase of the

Property, or (ii) November 30, 2020, unless the backup bidder(s) has forfeited his/her/its

Deposit(s) pursuant to the terms and conditions set forth in the Purchase Agreement.

**D.**    **Liens And Interests Against The Property.**

28.    Based upon a search on the website for the County of Los Angeles Treasurer-Tax

Collector, the Debtor is current on the payment of secured property taxes for the Property (until

December 10, 2020), and there appears to be no outstanding secured property taxes owed for the

Property.    A true and correct copy of the search report is attached as **Exhibit "2"** to the

Lioudkouski Declaration.

29.    Based upon a preliminary title report obtained for the Property as of September 3,

2020 (the "PTR"), a true and correct copy of which is attached as **Exhibit "3"** to the Lioudkouski

Declaration, the following are the only liens, claims, encumbrances and interests asserted against

the Property:

| Creditor Name | Lien Description | Lien Amount |
|---|---|---|
| Ruvin Feygenberg and Sensible Consulting and Management, Inc. | Deed of Trust recorded March 22, 2019 (Instrument No. 20190258568) | $1,586,286.14[1] (disputed) |
| FR LLC | Notice of pendency of action (lis pendens) recorded December 31, 2019 (Instrument No. 20191465878 | $195,621.39[2] (amount alleged in action) (disputed) |
| | TOTAL: | $1,781,907.53 |

[1] This figure reflects the loan balance amount claimed by the Lenders in the proof of claim filed by Sensible Consulting and Management, Inc. in the Debtor's bankruptcy case, which proof of claim is denominated as Claim No. 12 in the claims register for the Debtor's case. The Debtor disputes a portion of the Lenders' asserted secured claim, which is the subject of a pending adversary proceeding before this Court.  The undisputed portion of the Lenders' secured claim is $722,675.

[2] This figure reflects the amount claimed by FR LLC in its proof of claim filed in the Debtor's bankruptcy case, which proof of claim is denominated as Claim No. 5 in the claims register for the Debtor's case. FR LLC's secured claim is disputed by the Debtor and is the subject of a pending adversary proceeding before this Court.  However, as noted above, FR LLC has consented to the sale of the Property pursuant to the terms and conditions set forth in the FR LLC Sale Stipulation, a true and correct copy of which is attached as **Exhibit "5"** hereto.

12

30.     Notwithstanding the foregoing, the Debtor is aware that another lien against the Property has been asserted by an entity known as Ming Zhu, LLC ("Ming Zhu") in the amount of $286,291.67[3].  Ming Zhu has consented to the sale of the Property pursuant to the terms and conditions set forth in a stipulation entered into by Ming Zhu and the Debtor (the "Zhu Sale Stipulation"), a true and correct copy of which is attached as **Exhibit "4"** hereto.

31.     Finally, the Debtor is advised that an entity by the name of SBK Holdings USA, Inc. ("SBK") commenced an action against the prior owner of the Property (prior to the Debtor's foreclosure and acquisition of the Property) and recorded a lis pendens on March 27, 2018 based on litigation seeking an unspecified amount.  However, the foregoing is not included in the PTR likely because the Debtor's lien on the Property, which was foreclosed upon, thereby providing the Debtor with title thereto, pre-dated such filing, and because the Debtor's foreclosure of the Property in early 2019 extinguished such junior interest.  Nevertheless, counsel for the Debtor contacted counsel for SBK to advise SBK of the Debtor's bankruptcy case.  This information is provided for disclosure purposes only and the Debtor does not seek to pay any portion of such alleged interest which does not appear on the PTR and is not an obligation of the Debtor or its bankruptcy estate.

32.     On the Petition Date, the Debtor had sufficient unencumbered funds to pay for the maintenance and repair of the Property.  Due to an apparent misunderstanding, the Debtor did not understand that such estate funds could be used for the maintenance and repair of the Property and, as a result, the Debtor's affiliate, LDI Ventures, LLC ("LDI"), paid for certain critical repair, maintenance and marketing/sale expenses for the Property totaling $21,517.00 (the "Property Expenses").  A list of the Property Expenses is attached as **Exhibit "6"** to the Lioudkouski

---

[3] This figure reflects the amount claimed by Ming Zhu in its proof of claim filed in the Debtor's bankruptcy case, which proof of claim is denominated as Claim No. 4 in the claims register for the Debtor's case.  As noted in its Notice of Lien filed in the Debtor's case [Doc. No. 171], Ming Zhu contends that its claim, which is against Feygenberg (not the Debtor), attached to the Property when the Trust Deed for the Property was initially – and mistakenly – recorded in the joint names of the Debtor and the Lenders.  Ming Zhu asserts that its security interest remains with, and encumbers, the Property notwithstanding the subsequent transfer of Feygenberg's interest in the Property to the Debtor.

Declaration.  Pursuant to this Motion, the Debtor seeks to reimburse LDI for such Property Expenses, through escrow at the closing of the sale of the Property.  Although the Debtor believes that it may reimburse LDI from cash on hand (which are unrelated to sale proceeds), in an abundance of caution and to provide full disclosure, the Debtor is requesting authority to reimburse LDI for the Property Expenses from the proceeds of the sale of the Property, through escrow, at closing.

## II.

## <u>GOOD CAUSE EXISTS TO APPROVE THE PROPOSED</u>

## <u>OVERBID PROCEDURES</u>

Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") govern the scope of the notice to be provided in the event a debtor elects to sell property of the estate under 11 U.S.C. § 363; however, with respect to the procedures to be adopted in conducting a sale outside the ordinary course, Bankruptcy Rule 6004 provides only that such sale may be by private sale or public auction, and requires only that the trustee provide an itemized list of the property sold together with the prices received upon consummation of the sale. Fed. R. Bankr. Proc. 6004(f).

Neither the Bankruptcy Code nor the Bankruptcy Rules contain specific provisions with respect to the procedures to be employed by a trustee or a debtor in possession in conducting a public or private sale.  Nonetheless, as one Court has stated, "[i]t is a well-established principle of bankruptcy law that the objective of bankruptcy rules and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate."  *In re Atlanta Packaging Products, Inc.*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988).  Additionally, courts have long recognized the need for competitive bidding at hearings on private sales; "[c]ompetitive bidding yields higher offers and thus benefits the estate.  Therefore, the objective is 'to maximize bidding, not restrict it.'"  *Id.*

The Debtor believes that the proposed Overbid Procedures will maximize the price ultimately obtained for the Property and still protect the Debtor's estate from parties who may wish to bid on the Property but who are ultimately unable to consummate a purchase of the

Property.  The Overbid Procedures serve numerous legitimate purposes.  Among other things, the Overbid Procedures will (i) foster competitive bidding among any serious potential purchasers; (ii) eliminate from consideration purchasers who would waste the estate's time because they would not have the financial ability to timely consummate a purchase of the Property; and (iii) ensure that the highest possible price is obtained for the Property. Accordingly, the Debtor submits that approval of the proposed Overbid Procedures is in the best interests of the Debtor's bankruptcy estate and creditors.

**III.**

**THE PROPOSED SALE IS IN THE BEST INTEREST OF THE ESTATE**

**A.    The Debtor Has Complied With All Applicable Notice Requirements.**

Section 363(b)(1) provides that the Debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Section 102(1) defines "after notice and a hearing" as after such notice as is appropriate in the particular circumstances, and such opportunity for hearing as is appropriate in the particular circumstances.  11 U.S.C. § 102(1)(A).

Bankruptcy Rule 6004(a) provides, in pertinent part, that notice of a proposed sale not in the ordinary course of business must be given pursuant to Bankruptcy Rules 2002(a)(2), (c)(1), (i) and (k), and, if applicable, in accordance with section 363(b)(2) of the Bankruptcy Code. Fed. R. Bankr. P. 6004(a).  Bankruptcy Rule 2002(a)(2) requires at least 21 days' notice by mail of a proposed sale of property of the estate other than in the ordinary course of business, unless the Court for cause shown shortens the time or directs another method of giving notice.  Fed. R. Bankr. P. 2002(a)(2).  Bankruptcy Rule 2002(c)(1) requires that the notice of a proposed sale include the date, time and place of any public sale, the terms and conditions of any private sale, and the time fixed for filing objections.  It also provides that the notice of sale or property is sufficient if it generally describes the property.  Fed. R. Bankr. P. 2002(c)(1).  Bankruptcy Rule 2002(i) requires that the notice be mailed to committees elected pursuant to 11 U.S.C. § 705 or appointed pursuant to 11 U.S.C. § 1102.  Fed. R. Bankr. P. 2002(i).  Bankruptcy Rule 2002(k) requires that the notice be given to the United States Trustee.  Fed. R. Bankr. P. 2002(k).

15

Bankruptcy Rule 6004(c) provides that a motion for authority to sell property free and clear of liens or other interests must be made in accordance with Bankruptcy Rule 9014 and must be served on the parties who have liens or other interests in the property to be sold.  Fed. R. Bankr. P. 6004(c).

In addition, Local Bankruptcy Rule 6004-1 requires that any required notice of the Motion be submitted to the Clerk of the Bankruptcy Court together with a form Notice of Sale of Estate Property ("Form 6004-2") at the time of filing for purposes of publication.  L.B.R. 6004-1.

The Debtor respectfully submits that it has complied with all of the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules described above.  The Debtor has complied with Bankruptcy Rules 6004(a), 2002(a)(2), (c)(1), (i) and (k), and 6004(c) because notice of the Motion has been served on the United States Trustee, secured creditors (including all known parties who have alleged liens or interests in the Property), all creditors of the Debtor, and all parties requesting special notice in the Debtor's bankruptcy case.  The Debtor has also complied with the requirements of Local Bankruptcy Rule 6004-1 because the Debtor has filed the notice of the Motion, together with a Form 6004-2, with the Clerk of the Bankruptcy Court.

**B.**    **The Sale Of The Property Should Be Approved Because Good Business Reasons Exist, The Proposed Purchase Price Is Fair And Reasonable, And The Sale Is In The Best Interests Of The Estate And Creditors.**

As a general matter, a Court considering a motion to approve a sale under Section 363(b) of the Bankruptcy Code should determine from the evidence presented before it that a "good business reason" exists to grant such a motion.  *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983).  In addition, the Court must further find it is in the best interest of the estate.  To make this determination, a Court should consider whether:

(1)    the sale is fair and reasonable, *i.e.*, the price to be paid is adequate;

(2)    the property has been given adequate marketing;

(3)    the sale is in good faith, *i.e.*, there is an absence of any

lucrative deals with insiders, and

(4)    adequate notice has been provided to creditors.

*In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841-2 (Bankr. C.D. Cal. 1991); *In re The Landing*, 156 B.R. 246, 249 (Bankr. E.D. Mo. 1993); In *re Mama's Original Foods, Inc.,* 234 B.R. 500, 502-505 (C.D. Cal. 1999).  The Debtor submits that the proposed sale of the Property to the Purchaser (or a successful overbidder at the Auction), free and clear of liens, claims, and interests, and pursuant to the terms and conditions set forth in the Purchase Agreement, satisfies each of these requirements.

### a.    *Sound Business Purpose.*

The Ninth Circuit Bankruptcy Appellate Panel in *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19 (9th Cir. B.A.P. 1988) has adopted a flexible case-by-case test to determine whether the business purpose for a proposed sale justifies disposition of property of the estate under Section 363(b).  The facts pertaining to the proposed sale of the Property to the Purchaser (or a successful overbidder) amply substantiate the Debtor's business determination that the contemplated sale of such property, pursuant to the terms set forth in the Purchase Agreement, serves the best interests of the Debtor's estate and merits the approval of this Court.

The proposed sale of the Property to the Purchaser (subject to overbid) will generate what the Debtor believes is unencumbered cash of **at least $700,000** (and potentially substantially more if the Debtor prevails in its objections to the disputed interests).  Given the foregoing, and the Debtor's belief that the Purchase Price reflects the fair market value of the Property, the Debtor submits that the proposed sale of the Property to the Purchaser (or a successful overbidder) is amply justified by sound business purposes and is indisputably in the best interests of the Debtor's estate and creditors.

### b.    *Fair and Reasonable Price.*

In order for a sale to be approved under Section 363(b) of the Bankruptcy Code, the purchase price must be fair and reasonable.  *See generally, In re Canyon Partnership*, 55 B.R. 520 (Bankr. S.D. Cal. 1985).    The trustee (or debtor in possession) is given substantial

discretion in this regard.  *Id.*  In addition, Courts have broad discretion with respect to matters under section 363(b).  *See Big Shanty Land Corp. v. Comer Properties, Inc.*, 61 B.R. 272, 278 (Bankr. N.D. Ga. 1985).  In any sale of estate assets, the ultimate purpose is to obtain the highest price for the property sold.  *Wilde Horse Enterprises, Inc.*, 136 B.R. at 841 (*citing In re Chung King, Inc.*, 753 F.2d 547 (7th Cir. 1985)), *In re Alpha Industries, Inc.*, 84 B.R. 703, 705 (Bankr. Mont. 1988).

The Overbid Procedures and Auction process proposed to be implemented by the Debtor is specifically designed to ensure that the highest price possible is obtained for the Property.  Although the Debtor will not know the results of the Auction (if one is conducted) until the Auction has been completed, even if the Purchaser is the only bidder for, and therefore the ultimate buyer of, the Property, the Debtor submits that the Purchase Price proposed to be paid by the Purchaser under the Purchase Agreement reflects a fair and reasonable price. As noted above, the Debtor believes, based upon its knowledge of the local real estate market, that the Purchase Price reflects the fair market value of the Property.  In the event that there is a qualified Overbid for the Property, the Debtor submits that, since the Property will be sold in a public auction format, the final purchase price offered for the Property at the conclusion of the Auction will establish the fair market value for the Property.

### c.    *Adequate Marketing.*

As discussed above and in the Declaration of Ilya Tsipis annexed hereto, the Debtor, with the assistance of the Brokers, listed the Property on the open market via MLS, which listing is readily and easily accessible to prospective buyers in the local real estate market and to professional real estate brokers.  In addition, the Brokers implemented a comprehensive marketing campaign to promote the Property to the Brokers' wide network of real estate brokers and clients, which resulted in 15 separate showings of the Property and 3 written offers to purchase the Property.  Based on the foregoing, the Debtor submits that the Property has been adequately marketed to potential buyers.

d.    ___Good Faith.___

When a Bankruptcy Court authorizes a sale of assets pursuant to Section 363(b)(1) of the Bankruptcy Code, it is required to make a finding with respect to the "good faith" of the purchaser. *In re Abbotts Dairies,* 788 F.2d at 149.  Such a procedure ensures that Section 363(b)(1) will not be employed to circumvent the creditor protections of Chapter 11, and as such, it mirrors the requirement of Section 1129 that the Bankruptcy Court independently scrutinizes the debtor's reorganization plan and makes a finding that it has been proposed in good faith. *Id.* at 150.

"Good faith" encompasses fair value, and further speaks to the integrity of the transaction. *In re Wilde Horse Enterprises*, *supra,* 136 B.R. at 842.  With respect to the Debtor's conduct in conjunction with the sale, the good faith requirement "focuses principally on the element of special treatment of the Debtor's insiders in the sale transaction." *See In re Industrial Valley Refrig. and Air Cond. Supplies, Inc.*, 77 B.R. 15, 17 (Bankr. E.D. Pa. 1987).  With respect to the buyer's conduct, this Court should consider whether there is any evidence of "fraud, collusion between the purchaser and other bidders or the [debtor], or an attempt to take grossly unfair advantage of other bidders." *In re Abbotts Dairies,* 788 F.2d at 147, *In re Rock Indus. Mach. Corp.,* 572 F.2d 1195, 1198 (7th Cir. 1978); *In re Wilde Horse Enterprises, Inc.*, 136 B.R. at 842; *In re Alpha Industries, Inc.*, 84 B.R. 703, 706 (Bankr. D. Mont. 1988).  In short, "[l]ack of good faith is generally determined by fraudulent conduct during the sale proceedings." *In re Apex Oil Co.*, 92 B.R. 847, 869 (Bankr. E.D. Mo. 1988), citing *In re Exennium, Inc.*, 715 F.2d 1401, 1404-05 (9th Cir. 1983).

In *In re Filtercorp, Inc.*, 163 F.3d 570 (9th Cir. 1998), the Ninth Circuit set forth the following test for determining whether a buyer is a good faith purchaser:

> A good faith buyer "is one who buys 'in good faith' and 'for value.'"  [citations omitted.]  [L]ack of good faith is [typically] shown by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'"  [citations omitted.]

*Filtercorp*, 163 F.3d at 577.

1    The Ninth Circuit made clear in *Filtercorp* that this standard for determining good faith is

2    applicable even when the buyer is an insider.

3        Here, the Purchaser is a third party buyer who has no affiliation with the Debtor.  The

4    Purchaser is not an "insider" of the Debtor as that term is defined in 11 U.S.C. § 101(31) nor a

5    creditor of the Debtor's estate.  The Debtor and the Purchaser have negotiated the terms of the

6    proposed sale of the Property, as set forth in the Purchase Agreement, at arms' length and in

7    good faith.  The Debtor submits that there has been no fraud or collusion in connection with the

8    proposed sale of the Property and, to the best of the Debtor's knowledge, there has been no

9    evidence of any attempt by the Purchaser to take grossly unfair advantage of other bidders.  No

10   offer to purchase the Property received by the Debtor and/or the Broker has been ignored, and

11   the Debtor and the Broker have taken reasonable steps to try to obtain the highest price possible

12   for the Property.  In fact, the proposed Overbid Procedures for the sale of the Property, which

13   provide for overbidding on (and the auction of) the Property, are specifically aimed at

14   maximizing the purchase price ultimately paid for the Property.  Based on the foregoing, the

15   Debtor respectfully submits that the Court should find that the Purchaser (or a successful

16   overbidder following the Auction) is a good faith purchaser entitled to all of the protections

17   afforded by Section 363(m) of the Bankruptcy Code.

18              ***e.***    ***Accurate and Reasonable Notice.***

19        The purpose of the notice is to provide an opportunity for objections and hearing before

20   the Court if there are objections.  *In re Karpe*, 84 B.R. 926, 930 (Bankr. M.D.Pa. 1988).  A

21   notice is sufficient if it includes the terms and conditions of the sale and if it states the time for

22   filing objections.  *Id.*  As discussed in detail in Section III(A) above, the Debtor has complied

23   with all of the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the

24   Local Bankruptcy Rules.  Thus, the Debtor respectfully submits that notice of this Motion and

25   the proposed sale of the Property should be deemed adequate, accurate and reasonable by the

26   Court.

27

28

**C.      The Court Should Approve The Sale Of The Property, Free And Clear Of Liens,**
**Claims And Encumbrances.**

Section 363(f) of the Bankruptcy Code provides that a debtor may sell property of the estate "free and clear of any interest in such property" if:

(1)      applicable non-bankruptcy law permits the sale of such property free and clear of such interest;

(2)      such entity consents;

(3)      such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)      such interest is in bona fide dispute; or

(5)      such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. §363(f).  Because Section 363(f) is in the disjunctive, the Debtor only needs to meet one of the five subsections of Section 363(f) in order to sell the Property, free and clear of all liens, claims, interests and encumbrances.  *In re Whittemore*, 37 B.R. 93, 94 (Bankr. D. Or. 1984).

As noted above, pursuant to the PTR, the only parties that assert an interest against the Property are the Lenders and FR LLC, in the aggregate amount of approximately $1,781,907.53. In addition, based on the filed Notice of Lien and Proof of Claim by Ming Zhu, an additional $286,291.67 is asserted.  Although the Debtor disputes such claims and interests, and such claims and interests are subject to litigation, taking the worst case scenario for the Debtor, the proceeds of the proposed sale of the Property are more than sufficient to satisfy such disputed claims in full.

First, the Court may approve the sale of the Property, free and clear of all asserted liens and interests, pursuant to 11 U.S.C. §363(f)(4) since such asserted liens and interests are subject to bona fide dispute.  To the extent that the Court considers SBK's interest, which does not

appear in the PTR, SBK recorded its lis pendens against the Property, which was junior to the Debtor's pre-existing secured lien, on March 27, 2018.  The Debtor subsequently foreclosed on and obtained ownership of the Property in February, 2019.  The Debtor submits that, upon the foreclosure of the Property, all junior liens recorded against the Property were extinguished as a matter of law.  As also discussed above, the secured claims and liens asserted by the Lenders and FR LLC are the subject of pending adversary proceedings before this Court.  Finally, the secured claim asserted by Ming Zhu is disputed by the Debtor as such claim is against Feygenberg and not the Debtor, and the basis for Ming Zhu's asserted lien is the erroneous manner in which title to the Property was initially recorded.

Second, the Court may approve the sale of the Property, free and clear of the liens and interests asserted by Ming Zhu and FR LLC, pursuant to pursuant to 11 U.S.C. §363(f)(2) since both Ming Zhu and FR LLC have consented to the sale of the Property, pursuant to the terms and conditions set forth in the concurrently filed Zhu Sale Stipulation (attached as Exhibit "4" hereto) and FR LLC Sale Stipulation (attached as Exhibit "5" hereto).

Finally, the Court may also approve the sale of the Property, free and clear of all liens and interests asserted against the Property, pursuant to 11 U.S.C. §363(f)(3), since the Purchase Price proposed to be paid by the Purchaser (*i.e.*, $2,950,000) is substantially greater than the aggregate value of all of the liens asserted against the Property.  The Debtor respectfully requests that the Court approve the sale of the Property to the Purchaser (or a successful overbidder), free and clear of all liens, claims, interests and encumbrances, with the liens asserted against the Property to attach to the proceeds of the sale of the Property with the same validity, extent and priority as such liens attached to the Property immediately prior to the sale.

Based on all of the foregoing, the Debtor respectfully submits that the proposed sale of the Property to the Purchaser (or a successful overbidder), in accordance with the terms and conditions set forth in the Purchase Agreement, yields the best possible result for the Debtor's estate, is in the best interests of the Debtor's estate and creditors, and should be approved.

## IV.

## CONCLUSION

**WHEREFORE**, the Debtor respectfully requests that this Court enter an order:

1.      finding that the notice given by the Debtor in connection with the sale of the Property and the hearing on the Motion is adequate, sufficient, and proper and complies with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules;

2.      granting the Motion in its entirety;

3.      approving the Overbid Procedures;

4.      authorizing the Debtor to sell the Property to the Purchaser, or to a successful overbidder, free and clear of all liens, claim, encumbrances and interests, and in accordance with the terms set forth in the Purchase Agreement and the Motion;

5.      finding that the Purchaser (or a successful overbidder) is a good faith buyer entitled to all of the protections afforded by 11 U.S.C. § 363(m);

6.      authorizing the Debtor to take all necessary and reasonable steps to consummate the sale of the Property to the Purchaser (or to a successful overbidder);

7.      authorizing the payment of secured property taxes due as of the closing date, brokers' commissions, the Property Expenses, and typical escrow/closing costs from the Purchase Price through escrow, and directing the remaining net proceeds of the sale of the Property to be delivered to the LNBYB Account, pending a further order of the Court; and

8.      granting such other and further relief as the Court deems just and proper.

Dated:  October 1, 2020                    LEV INVESTMENTS, LLC


By:_____
                    DAVID B. GOLUBCHIK
                    JULIET Y. OH
                    LEVENE, NEALE, BENDER, YOO
                        & BRILL L.L.P.
                    Attorneys for Chapter 11 Debtor and
                    Debtor-in-Possession

# DECLARATION OF DMITRI LIOUDKOUSKI

I, Dmitri Lioudkouski, hereby declare as follows:

1.      I am the Manager of Lev Investments, LLC, the debtor and debtor-in-possession herein (the "Debtor"), and I am therefore familiar with the financial affairs of the Debtor.  I have personal knowledge of the facts set forth below and, if called to testify as a witness, I could and would competently testify thereto.

2.      I submit this declaration in support of the *Debtor's Motion For Entry Of An Order: (A) Authorizing Sale Of Debtor's Real Property Located At 13854 Albers Street, Sherman Oaks, California 91401 [APN 2247-013-001], Free And Clear Of Liens, Claims, Encumbrances And Interests; And (B) Approving Overbid Procedures* (the "Motion") to which this declaration is attached.  All capitalized terms not specifically defined herein shall have the meanings ascribed to them in the Motion.

3.      The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on June 1, 2020 (the "Petition Date").  The Debtor is managing its financial affairs and administering its bankruptcy estate as a debtor-in-possession.

4.      In December 2018, the Debtor, on the one hand, and Ruvin Feygenberg ("Feygenberg") and Michael Leizerovitz or his assignee, Sensible Consulting and Management, Inc. ("Leizerovitz," and together with Feygenberg, the "Lenders"), on the other hand, entered into an agreement (the "Debt Purchase Agreement") to purchase debt secured by the real property located at 13854 Albers Street, Sherman Oaks, California 91401 [APN 2247-013-001] (the "Property"), and then to proceed to foreclose on, and ultimately obtain ownership of, the Property

5.      The Debt Purchase Agreement contemplated that the Debtor would contribute the sum of $1,022,500 and that the Lenders would contribute the sum of $1,257,675 (of which approximately $230,000 would be immediately refunded to the Lenders), such that the amounts contributed by the Debtor and the Lenders to purchase the debt secured by the Property would be equal.  The Debtor Purchase Agreement also provided that, upon the foreclosure of the Property, title to the Property would be vested solely in the Debtor's name, and the Lenders would hold a first priority security interest and lien against the Property in the sum of $1,257,675.

6.     Notwithstanding the express terms of the Debt Purchase Agreement, which required that title to the Property be vested solely in the Debtor's name following foreclosure, the attorney handling the transaction for the Debtor and the Lenders (Gina Lisitsa) recorded a Trust Deed in the joint names of the Debtor and the Lenders on February 1, 2019.  In an attempt to correct this error, Ms. Lisitsa then had the Lenders quitclaim their interest in the Property to the Debtor.

7.     I am advised and believe that, on December 13, 2019, an entity called FR LLC filed a complaint against the Debtor and others in Superior Court of the State of California for the County of Los Angeles (the "Superior Court"), alleging conversion, negligent bailment, unjust enrichment, and quiet title, thereby commencing the case titled *FR LLC v. Lev Investments, LLC, et. Al*, Case Number 19STCV45132 (The "FR Action").  The Debtor has never been served with the foregoing complaint.  I am advised and believe that, pursuant to the FR Action, FR LLC alleges that the Debtor obtained a loan in the sum of $119,000 from FR LLC's assignor, which loan was secured by a lien against the Property.  However, to the best of my knowledge, the Debtor has never obtained a loan from FR LLC or its assignor, I do not know who FR LLC or its assignor (whose identity FR LLC has refused to disclose to date) is, and the Debtor and I strongly dispute all of the allegations made by FR LLC in the FR Action.

8.     I am advised and believe that, on December 31, 2019, FR LLC recorded a notice of pendency of the FR Action against the Debtor's Property, as Instrument Number 20191465878 (the "FR Lis Pendens").  The Debtor contends that the recordation of the FR Lis Pendens was unwarranted and improper.

9.     Concurrently with the commencement of its bankruptcy case, the Debtor received an offer to purchase the Property.  The Debtor contacted counsel for FR LLC and obtained a stipulation to sell the Property free and clear of the FR Lis Pendens, with the FR Lis Pendens to attach to the proceeds of the sale with the same validity, extent and priority as FR LLC was entitled to immediately prior to the sale (the "FR LLC Sale Stipulation").  A true and correct copy of the FR LLC Sale Stipulation is attached as **Exhibit "5"** hereto.

10.    On June 5, 2020, the Debtor filed a notice to remove the FR Action in its entirety to

this Court, thereby commencing the adversary proceeding titled *FR LLC v. Lev Investments, LLC, et al.,* Adversary Proceeding Number 1:20-ap-01060-VK (the "<u>FR Adversary Action</u>").

11.     If necessary, the Debtor will file a motion in the FR Adversary Action to expunge the FR Lis Pendens and will seek payment of the Debtor's legal fees and costs in connection therewith.

12.     As of the Petition Date, the Debtor was also involved in litigation with the Lenders. On September 27, 2019, the Debtor filed its first amended verified complaint against the Lenders in the Superior Court, alleging breach of implied covenant against encumbrances, usury, and quiet title, and seeking declaratory relief, thereby commencing the case titled *Lev Investments, LLC v. Feygenberg, et al.*, Case Number 19VECV00878 (The "<u>Lenders Action</u>").

13.     On March 20, 2020, Feygenberg and the other defendants named in the Lenders Action filed a cross-complaint against the Debtor and others, alleging, among other causes of action, breach of contract, breach of fiduciary duty, indemnity, quiet title, and seeking declaratory and injunctive relief.

14.     The Lenders Action (but not the cross-complaint) has been removed to the Bankruptcy Court and is currently pending as an adversary proceeding.

15.     While the Lenders Action was pending in Superior Court, the Lenders recorded a notice of default against the Property and then a notice of trustee's sale, pursuant which the Lenders scheduled a foreclosure sale for the Property on June 2, 2020.

16.     In order to prevent the foreclosure of the Property (the Debtor's primary asset) and preserve the equity in the Property for the benefit of all creditors (not just the Lenders), and to obtain resolution of the various litigation matters in which the Debtor is involved in an orderly and coordinated manner, the Debtor commenced this Chapter 11 bankruptcy case.

17.     I understand that, on September 17, 2020, the Court entered an order approving the Debtor's employment of Central Realty Advisors and Fair Realty Inc. (together, the "<u>Brokers</u>") as the Debtor's exclusive co-listing real estate brokers with respect to the marketing and potential sale of the Property.

18.     I am advised and believe that the Property was listed by the Brokers on the Multiple

1 Listing Service (MLS) on July 1, 2020.

2      19.    After the Property was listed on the MLS, the Brokers and I spent a significant

3 amount of time and resources marketing the Property.  Among other things, the Property was

4 staged (after interviewing five different staging companies and selecting the most qualified one)

5 and professionally photographed, a "virtual" video tour of the Property was prepared by the

6 Brokers, and a listing website for the Property was created and launched by the Brokers.

7      20.    Following the Petition Date, the Debtor's affiliate, LDI Ventures, LLC (of which I

8 am the principal), paid for certain critical repair, maintenance and marketing/sale expenses for the

9 Property totaling $21,517.00 (the "Property Expenses").  A list of the Property Expenses is

10 attached as **Exhibit "6"** hereto.  Pursuant to the Motion, the Debtor seeks to reimburse LDI

11 Ventures, LLC for such Property Expenses, through escrow at the closing of the sale of the

12 Property.

13      21.    I am advised that, as a result of the marketing and sale efforts made by the Debtor

14 and the Brokers, the Brokers conducted fifteen (15) separate showings of the Property, which

15 resulted in the receipt of three (3) written offers to purchase the Property.

16      22.    After countering the three written offers received for the Property, and investigating

17 and negotiating such offers, the Debtor has elected to proceed, subject to the approval of the Court,

18 with the offer received from an individual buyer named Hagop Anserian (the "Purchaser").

19      23.    The terms and conditions of the proposed sale of the Property to the Purchaser are

20 set forth in the *California Residential Purchase Agreement And Joint Escrow Instructions* (the

21 "Purchase Offer") and the *Seller Multiple Counter Offer No. 1*, *Addendum No. 1* and *Addendum*

22 *No. 2* to the Purchase Offer (collectively, the "Purchase Agreement"), true and correct copies of

23 which are attached as **Exhibit "1"** hereto.

24      24.    As reflected in the Purchase Agreement, the Property is proposed to be sold to the

25 Purchaser on an "as is, where is" basis with no representation or warranty as to the condition of the

26 Property, for the purchase price of $2,950,000 (the "Purchase Price").  As reflected in the Purchase

27 Agreement, the Purchaser has agreed that his offer to purchase the Property shall be subject to

28 overbid and the approval of this Court.

25.     As noted in the Purchase Agreement, the Purchaser was provided with the option to request from the Debtor carryback financing of up to $1,000,000 of the Purchase Price ("Carryback Financing"), which financing would be provided by the Debtor at an interest rate of 8% per annum with a maturity date no longer than one (1) year after the closing date for the sale of the Property.  In the event that the Purchaser opted to obtain Carryback Financing from the Debtor, the Purchaser would be required to pay all loan fees, and the Debtor would hold a first priority security interest and lien against the Property in the sum of the Carryback Financing.   The Purchaser has confirmed that he is not exercising the option to request Carryback Financing from the Debtor.

26.     The Purchaser has already provided a good faith deposit in the sum of $88,500, which is equal to three percent (3%) of the Purchase Price, which deposit I understand and believe is being maintained in an escrow account held by Glen Oaks Escrow (the "Escrow Company").

27.     The proposed Purchase Price significantly exceeds the total sum of the liens recorded or otherwise asserted against the Property (most of which liens are disputed by the Debtor), and will result in net sale proceeds in an amount sufficient to provide a recovery to the Debtor's general unsecured creditors.

28.     I believe, based upon my knowledge of the local real estate market, that the Purchase Price reflects the fair market value of the Property and that the proposed sale of the Property to the Purchaser (or a successful overbidder) is in the best interests of the Debtor's estate.

29.     While the Debtor is prepared to consummate the proposed sale of the Property to the Purchaser, subject to Court approval, the Debtor is also interested in obtaining the maximum value for the Property.   Accordingly, the Debtor is seeking to have the proposed sale of the Property to the Purchaser be subject to better and higher bids.  However, to induce the Purchaser to act as the "stalking horse" buyer for the Property, the Debtor has proposed that certain overbid procedures be implemented in connection with the sale of the Property, as described in the Motion (the "Overbid Procedures").

30.     I believe that the proposed Overbid Procedures will maximize the price ultimately obtained for the Property and still protect the Debtor's estate from parties who may wish to bid on

the Property but who are ultimately unable to consummate a purchase of the Property. Among other things, I believe that the Overbid Procedures will (i) foster competitive bidding among any serious potential purchasers; (ii) eliminate from consideration purchasers who would waste the estate's time because they would not have the financial ability to timely consummate a purchase of the Property; and (iii) ensure that the highest possible price is obtained for the Property.

31.    Based upon a search on the website for the County of Los Angeles Treasurer-Tax Collector, the Debtor is current on the payment of secured property taxes for the Property (until December 10, 2020), and there appears to be no outstanding secured property taxes owed for the Property. A true and correct copy of the search report is attached as **Exhibit "2"** hereto.

32.    Based upon a preliminary title report obtained for the Property as of September 3, 2020 (the "PTR"), a true and correct copy of which is attached as **Exhibit "3"** hereto, the following are the only liens, claims, encumbrances and interests asserted against the Property:

| Creditor Name | Lien Description | Lien Amount |
|---|---|---|
| Ruvin Feygenberg and Sensible Consulting and Management, Inc. | Deed of Trust recorded March 22, 2019 (Instrument No. 20190258568) | $1,586,286.14[4] (disputed) |
| FR LLC | Notice of pendency of action (lis pendens) recorded December 31, 2019 (Instrument No. 20191465878 | $195,621.39[5] (amount alleged in action) (disputed) |
| | TOTAL: | $1,781,907.53 |

[4] This figure reflects the loan balance amount claimed by the Lenders in the proof of claim filed by Sensible Consulting and Management, Inc. in the Debtor's bankruptcy case, which proof of claim is denominated as Claim No. 12 in the claims register for the Debtor's case. The Debtor disputes a portion of the Lenders' asserted secured claim, which is the subject of a pending adversary proceeding before this Court. The undisputed portion of the Lenders' secured claim is $722,675.

[5] This figure reflects the amount claimed by FR LLC in its proof of claim filed in the Debtor's bankruptcy case, which proof of claim is denominated as Claim No. 5 in the claims register for the Debtor's case. FR LLC's secured claim is disputed by the Debtor and is the subject of a pending adversary proceeding before this Court. However, as noted above, FR LLC has consented to the sale of the Property pursuant to the terms and conditions set forth in the FR LLC Sale Stipulation, a true and correct copy of which is attached as **Exhibit "5"** hereto.

33.    Notwithstanding the foregoing, the Debtor is aware that another lien against the Property has been asserted by an entity known as Ming Zhu, LLC ("Ming Zhu") in the amount of $286,291.67[6].  Ming Zhu has consented to the sale of the Property pursuant to the terms and conditions set forth in a stipulation entered into by Ming Zhu and the Debtor (the "Zhu Sale Stipulation"), a true and correct copy of which is attached as **Exhibit "4"** hereto.

34.    Finally, the Debtor is advised that an entity by the name of SBK Holdings USA, Inc. ("SBK") commenced an action against the prior owner of the Property (prior to the Debtor's foreclosure and acquisition of the Property) and recorded a lis pendens on March 27, 2018 based on litigation seeking an unspecified amount.  However, the foregoing is not included in the PTR likely because the Debtor's lien on the Property, which was foreclosed upon, thereby providing the Debtor with title thereto, pre-dated such filing, and because the Debtor's foreclosure of the Property in early 2019 extinguished such junior interest.  Nevertheless, counsel for the Debtor contacted counsel for SBK to advise SBK of the Debtor's bankruptcy case.  This information is provided for disclosure purposes only and the Debtor does not seek to pay any portion of such alleged interest which does not appear on the PTR and is not an obligation of the Debtor or its bankruptcy estate.

35.    On the Petition Date, the Debtor had sufficient unencumbered funds to pay for the maintenance and repair of the Property.  Due to an apparent misunderstanding on my part, I did not understand that such estate funds could be used for the maintenance and repair of the Property.  As a result, the Debtor's affiliate, LDI Ventures, LLC ("LDI"), of which I am a principal, paid for certain critical repair, maintenance and marketing/sale expenses for the Property totaling $21,517.00 (the "Property Expenses").  A list of the Property Expenses is attached as **Exhibit "6"**

---

[6] This figure reflects the amount claimed by Ming Zhu in its proof of claim filed in the Debtor's bankruptcy case, which proof of claim is denominated as Claim No. 4 in the claims register for the Debtor's case.  As noted in its Notice of Lien filed in the Debtor's case [Doc. No. 171], Ming Zhu contends that its claim, which is against Feygenberg (not the Debtor), attached to the Property when the Trust Deed for the Property was initially – and mistakenly – recorded in the joint names of the Debtor and the Lenders.  Ming Zhu asserts that its security interest remains with, and encumbers, the Property notwithstanding the subsequent transfer of Feygenberg's interest in the Property to the Debtor.

hereto.  Pursuant to the Motion, the Debtor seeks to reimburse LDI for such Property Expenses, through escrow at the closing of the sale of the Property.  Although the Debtor believes that it may reimburse LDI from cash on hand (which are unrelated to sale proceeds), in an abundance of caution and to provide full disclosure, the Debtor is requesting authority to reimburse LDI for the Property Expenses from the proceeds of the sale of the Property, through escrow, at closing.

36.    The Purchaser is a third party buyer who has no affiliation with the Debtor.  The Purchaser is not an "insider" of the Debtor as I understand that term is defined in the Bankruptcy Code nor a creditor of the Debtor's estate.  The Debtor and the Purchaser have negotiated the terms of the proposed sale of the Property, as set forth in the Purchase Agreement, at arms' length and in good faith.  There has been no fraud or collusion in connection with the proposed sale of the Property and, to the best of my knowledge, there has been no evidence of any attempt by the Purchaser to take grossly unfair advantage of other bidders.

37.    To the best of my knowledge, no offer to purchase the Property received by the Debtor and/or the Brokers has been ignored, and the Debtor and the Brokers have taken reasonable steps to try to obtain the highest price possible for the Property.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 1st day of October, 2020, at Los Angeles, California.


_____
(see signature attached)
DMITIRI LIOUDKOUSKI

hereto.  Pursuant to the Motion, the Debtor seeks to reimburse LDI for such Property Expenses, through escrow at the closing or the sale of the Property.  Although the Debtor believes that it may reimburse LDI from cash on hand (which are unrelated to sale proceeds), in an abundance of caution and to provide full disclosure, the Debtor is requesting authority to reimburse LDI for the Property Expenses from the proceeds of the sale of the Property, through escrow, at closing.

36.    The Purchaser is a third party buyer who has no affiliation with the Debtor.  The Purchaser is not an "insider" of the Debtor as I understand that term is defined in the Bankruptcy Code nor a creditor of the Debtor's estate.  The Debtor and the Purchaser have negotiated the terms of the proposed sale of the Property, as set forth in the Purchase Agreement, at arms' length and in good faith.  There has been no fraud or collusion in connection with the proposed sale of the Property and, to the best of my knowledge, there has been no evidence of any attempt by the Purchaser to take grossly unfair advantage of other bidders.

37.    To the best of my knowledge, no offer to purchase the Property received by the Debtor and/or the Brokers has been ignored, and the Debtor and the Brokers have taken reasonable steps to try to obtain the highest price possible for the Property.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 1st day of October, 2020, at Los Angeles, California.

DMITIRI LIOUDKOUSKI

31

# DECLARATION OF ILYA TSIPIS

I, ILYA TSIPIS, hereby declare as follows:

1.      I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.      I am a principal of Fair Realty Inc. ("Fair Realty"), which maintains an office located at 17337 Ventura Boulevard, Suite 100, Encino, California 91316.  Lev Investments, LLC, the debtor herein (the "Debtor"), has retained Fair Realty and Central Realty Advisors (together, the "Brokers") act as the Debtor's exclusive co-listing real estate brokers with respect to the marketing and sale of the residential real property owned by the Debtor located at 13854 Albers Street, Sherman Oaks, California 91401-5811 [APN 2247-013-001] (the "Property").

3.      I submit this declaration in support of the *Debtor's Motion For Entry Of An Order: (A) Authorizing Sale Of Debtor's Real Property Located At 13854 Albers Street, Sherman Oaks, California 91401 [APN 2247-013-001], Free And Clear Of Liens, Claims, Encumbrances And Interests; And (B) Approving Overbid Procedures* (the "Motion") to which this declaration is attached.  All capitalized terms not specifically defined herein shall have the meanings ascribed to them in the Motion.

4.      The Brokers listed the Property on the Multiple Listing Service (MLS) on July 1, 2020.

5.      During a period of approximately three (3) months, the Brokers spent a significant amount of time and resources marketing the Property.  Among other things, the Brokers staged the Property (after interviewing five different staging companies and selecting the most qualified one), had the Property professionally photographed, prepared a "virtual" video tour of the Property, created and launched a listing website for the Property, and implemented an e-mail marketing campaign to promote the Property to the Brokers' wide network of real estate brokers and clients.  As a result of such efforts, the Brokers conducted fifteen (15) separate showings of the Property, which resulted in the receipt of three (3) written offers to purchase the Property.

6.      To the best of my knowledge, no offer to purchase the Property received by the Debtor and/or the Brokers has been ignored, and the Debtor and the Brokers have taken reasonable steps to try to obtain the highest price possible for the Property.

I declare and verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed this 1st day of October, 2020, at _Los Angeles_____, California.

ILYA ASIPIS

# <u>EXHIBIT "1"</u>

[Purchase Offer, Counteroffer, and Addenda]

**CALIFORNIA
ASSOCIATION
OF REALTORS®**

## ADDENDUM

(C.A.R. Form ADM, Revised 12/15)

No. _TWO_

The following terms and conditions are hereby incorporated in and made a part of the: ☒ Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right to rescind), ☐ Other _____,
dated _____**September 18, 2020**_____, on property known as _____**13854 Albers Street**_____
_____**Sherman Oaks, CA 91401**_____
in which _____**Hagop  Anserian**_____ is referred to as ("Buyer/Tenant")
and _____**LEV Investments LLC  (Dmitri Lioudkovski)**_____ is referred to as ("Seller/Landlord").

*1. Sale of this property is subject to overbids and Bankruptcy Court approval.*
*2. Bankruptcy case #1-20-bk-11006-VK.*
*3. Buyer or Selling Agent to notify Listing Agents in writing whether Buyer will obtain carryback financing from the Seller, no later than 5:00 pm (PT) on Wednesday, September 30, 2020.*

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date _09/30/2020_

Buyer/Tenant _____
**Hagop  Anserian**

Buyer/Tenant _____

Date 09/25/2020 03:35 PM PDT

Seller/Landlord _____
**LEV Investments LLC  (Dmitri Lioudkovski)**

Seller/Landlord _____

© 1986-2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.


Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**ADM REVISED 12/15 (PAGE 1 OF 1)**

**ADDENDUM (ADM PAGE 1 OF 1)**



CALIFORNIA
ASSOCIATION
OF REALTORS®

## SELLER MULTIPLE COUNTER OFFER No. _ONE_
### (C.A.R. Form SMCO, Revised 12/18)

Date _09/17/2020_

This is a counter offer to the: Purchase Agreement, ☐ Other _____ ("Offer"),
dated _09/16/2020_, on property known as _13854 Albers Street, Sherman Oaks, CA 91401_ ("Property"),
between _Hagop Anserian_ ("Buyer")
and _LEV Investments LLC  (Dmitri Lioudkovski)_ ("Seller").

1. **TERMS:** The terms and conditions of the above referenced document are accepted subject to the following:
   A. **Paragraphs in the Offer that require initials by all parties, but are not initialed by all parties, are excluded from the final agreement unless specifically referenced for inclusion in paragraph 1C of this or another Counter Offer.**
   B. **Unless otherwise agreed in writing, down payment and loan amount(s) will be adjusted in the same proportion as in the original Offer, but deposit amount(s) shall remain unchanged from the original Offer.**
   C. OTHER TERMS:  _See Text Overflow Addendum (C.A.R. Form TOA) paragraph 1_ _____
   _____
   _____
   _____
   _____
   _____
   _____
   D. The following attached addenda are incorporated into this Multiple Counter Offer: ☐ Addendum No. _____
   ☐                                    ☐

2. **BINDING EFFECT:** Seller is making Multiple Counter Offers to other prospective Buyers on terms that may or may not be the same as in this Multiple Counter Offer. This Multiple Counter Offer does not bind Seller and Buyer unless _all_ of the following occur in the times specified below: Seller signs in paragraph 5, Buyer signs in paragraph 7, Seller signs in paragraph 8, and Buyer receives a copy of the Multiple Counter Offer with all of the signatures. (Note: Prior to the completion of _all_ of the foregoing, Buyer and Seller shall have no duties or obligations for the purchase or sale of the Property.)

3. **EXPIRATION OF SELLER MULTIPLE COUNTER OFFER:** This Multiple Counter Offer shall be deemed revoked and the deposits, if any, shall be returned to Buyer unless by 5:00PM on the third Day After the date Seller signs in paragraph 5 (if more than one Seller, then the last date) (or by _____ ☐ AM ☐ PM on _____ (Date)), **(i)** it is signed in paragraph 7 by Buyer, and **(ii)** a copy of the Multiple Counter Offer signed by Buyer is personally received by Seller or _Ekaterina Nagornaya, Ilya Tsipis_ , who is authorized to receive it;

4. **MARKETING TO OTHER BUYERS:** Seller has the right to continue to offer the Property for sale. Seller has the right to accept any other offer received, prior to Seller selection of this Multiple Counter Offer.

5. **SELLER MAKES THIS MULTIPLE COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY.** 09/18/2020 08:08
   _[signature]_                              _LEV Investments LLC  (Dmitri Lioudkovski)_ Date AM PDT

6. **ACCEPTANCE OF SELLER MULTIPLE COUNTER OFFER:** Buyer's acceptance of this Seller Multiple Counter Offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless by 5:00PM on the fourth Day After the date Seller signs in paragraph 5 (if more than one Seller, then the last date) (or by _____ ☐ AM ☐ PM on _____ (Date) **(i)** it is signed in paragraph 8 by Seller, and **(ii)** a copy of this Seller Multiple Counter Offer signed by Seller in paragraph 8 is personally received by Buyer or _____ who is authorized to receive it.

7. **ACCEPTANCE:** Buyer accepts the above Multiple Counter Offer (If checked ☐ SUBJECT TO THE ATTACHED COUNTER OFFER # _____ ) and acknowledges receipt of a Copy.
   _Hakob Anserian_ _____ _Hagop Anserian_ Date _09/18/2020_ Time _1:30_ ☐ AM ☒ PM
   _____ Date _____ Time _____ ☐ AM ☐ PM

8.
   **SELECTION OF ACCEPTED MULTIPLE COUNTER OFFER:** By signing below, Seller accepts this Multiple Counter Offer. **NOTE TO SELLER:** Do NOT sign in this box until after Buyer signs in paragraph 7. DO NOT sign in this box if this Seller Multiple Counter Offer is subject to an attached Counter Offer.
   _____ Date _____ Time _____ ☐ AM ☐ PM
   _____ Date _____ Time _____ ☐ AM ☐ PM

( _____ / _____ ) (Initials) Confirmation of Acceptance: A Copy of the Signed Seller Selection was personally received by Buyer or Buyer's authorized agent on (date) _____ at _____ ☐ AM ☐ PM. **A binding Agreement is created when a Copy of the Signed Seller Selection is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document.**

© 2015, California Association of REALTORS®, Inc.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

REBS  Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
*a subsidiary of the CALIFORNIA ASSOCIATION of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**SMCO REVISED 12/18 (PAGE 1 OF 1)**
### SELLER MULTIPLE COUNTER OFFER (SMCO PAGE 1 OF 1)



**CALIFORNIA ASSOCIATION OF REALTORS®**

**TEXT OVERFLOW ADDENDUM No.** _1_

(C.A.R. Form TOA, Revised 6/16)

This addendum is given in connection with the property known as _____ 13854 Albers Street, Sherman Oaks, CA 91401

_____ ("Property"),

in which _____ **Hagop Anserian** _____ is referred to as ("Buyer")

and _____ **LEV Investments LLC (Dmitri Lioudkovski)** _____ is referred to as ("Seller").

*1) SMCO, Paragraph 1C, Agent Other Terms:*

*1. This sale is subject to approval and order of the Bankruptcy Court.*

*2. Clean Title to be provided within seven (7) days of final Bankruptcy Court order approving the sale transaction.*

*3. Seller provides the option for Seller to Carry Buyer's Loan up to $1,000,000 at 8% interest for 1 year or less.*
*Buyer pays all loan fees, if any.*

*Seller's loan to be in First position for creditors.*

*4. Escrow to be with Glen Oaks Escrow (Escrow Officer: Kilita Smith).*

*5. Title to be with Fidelity National (Brandon Miller).*

*6. Representative Agent Clarifications:*

*Co-Listing Broker #1: Central Realty Advisors Inc, License Number 02068521*

*Co-Listing Agent #1: Ekaterina Nagornaya, License Number 01829504*

*Co-Listing Broker #2: Fair Realty, Inc, License Number 01896646*

*Co-Listing Agent #2: Ilya Tsipis, License Number 01865830*

*7. All other terms remain the same.*

The foregoing terms and conditions are hereby incorporated in and made a part of the paragraph(s) referred to in the document to which this TOA is attached. The undersigned acknowledge receipt of a copy of this TOA.

Buyer _Hakob Anserian_ _____ Date 09/18/2020
**Hagop Anserian**

Buyer _____ Date _____

Seller _____ Date 09/18/2020 08:08
**LEV Investments LLC (Dmitri Lioudkovski)**                AM PDT

Seller _____ Date _____

©2014, California Association of REALTORS®, Inc. United States Copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from C.A.R. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**TOA REVISED 6/16 (PAGE 1 OF 1)**

**TEXT OVERFLOW ADDENDUM (TOA PAGE 1 OF 1)**

CALIFORNIA
~~Case 2:20-bk-11006-VK~~ **CONTINGENCY REMOVAL No. _1_**
OF REALTORS®    Doc 226  (Filed 10/01/20, Revised Entered 10/01/20 16:31:49  Desc
Main Document    Page 43 of 102

In accordance with the terms and conditions of the: [X] Residential Purchase Agreement (C.A.R. Form RPA-CA), [ ] Request For Repair (C.A.R. Form RR), [ ] Response And Reply To Request For Repair (C.A.R. Form RRRR) or [ ] Other _____
("Agreement"),
dated _____, on property known as _____ *13854 Albers, Sherman Oaks, CA  91401* _____ ("Property"),
between _____ *Hagop Anserian* _____ ("Buyer")
and _____ *LEV Investments LLC (Dmitri Lioudkovski)* _____ ("Seller").

**I. BUYER REMOVAL OF BUYER CONTINGENCIES:**

1. With respect to any contingency and cancellation right that Buyer removes, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations and review of reports and other applicable information and disclosures; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility, and expense, **if any,** for Repairs, corrections, or for the inability to obtain financing. Waiver of statutory disclosures is prohibited by law.

2. Buyer removes those contingencies specified below.
   **A.** ONLY the following individually checked Buyer contingencies are removed:
   1. [ ] Loan (Paragraph 3J)
   2. [ ] Appraisal (Paragraph 3I)
   3. Buyer's Investigation Contingency (Paragraph 12)
      A. [ ] Only the physical inspection portion of Buyer's Investigation (Paragraph 12)
      B. [ ] All Buyer Investigations other than a physical inspection (Paragraph 12)
      C. [ ] Entire Buyer's Investigation Contingency (Paragraph 12)
   4. [ ] Condominium/Planned Development (HOA or OA) Disclosures (Paragraph 10F)
   5. [ ] Reports/Disclosures (Paragraphs 7 and 10)
   6. [ ] Title: Preliminary Report (Paragraph 13)
   7. [ ] Sale of Buyer's Property (Paragraph 4B)
   8. [ ] Review of documentation for leased or liened items (Paragraph 8B(5))
   9. [ ] Other: _____
   10. [ ] Other: _____
   **OR B.** [ ] ALL Buyer contingencies are removed, EXCEPT: [ ] Loan Contingency (Paragraph 3J); [ ] Appraisal Contingency (Paragraph 3I); [ ] Contingency for the Sale of Buyer's Property (Paragraph 4B); [ ] Condominium/Planned Development (HOA) Disclosures (Paragraph 10F); [ ] Other _____
   **OR C.** [X] BUYER HEREBY REMOVES ANY AND ALL BUYER CONTINGENCIES.

3. Once all contingencies are removed, whether or not Buyer has satisfied him/herself regarding all contingencies or received any information relating to those contingencies, Buyer may not be entitled to a return of Buyer's deposit if Buyer does not close escrow. This could happen even if, for example, Buyer does not approve of some aspect of the Property or lender does not approve Buyer's loan.

NOTE: Paragraph numbers refer to the California Residential Purchase Agreement (C.A.R. Form RPA-CA). Applicable paragraph numbers for each contingency or contractual action in other C.A.R. contracts are found in Contract Paragraph Matrix (C.A.R. Form CPM).

Buyer *Hagop Anserian* _____    Date 09/17/2020 01:21 AM GMT
*Hagop Anserian*

Buyer _____    Date _____

---

**II. SELLER REMOVAL OF SELLER CONTINGENCIES:** Seller hereby removes the following Seller contingencies: [ ] Finding of replacement property (C.A.R. Form SPRP); [ ] Closing on replacement property (C.A.R. Form SPRP); [ ] Other _____

Seller _____    Date _____

Seller _____    Date _____

---

( *I* / _____ ) (Initials) **CONFIRMATION OF RECEIPT:** A copy of this signed Contingency Removal was personally received by [ ] Buyer [X] Seller or authorized agent on *09/16/2020* (date), at *4:00* [ ] AM / [X] PM.

© 2019, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATON OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

CR REVISED 6/16 (PAGE 1 OF 1)

**CONTINGENCY REMOVAL (CR PAGE 1 OF 1)**



CALIFORNIA
ASSOCIATION
OF REALTORS®

# DISCLOSURE REGARDING
# REAL ESTATE AGENCY RELATIONSHIP
### (Buyer's Brokerage Firm to Buyer)
### (As required by the Civil Code)
### (C.A.R. Form AD, Revised 12/18)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(j), (k) and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

## SELLER'S AGENT

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
   (a)  Diligent exercise of reasonable skill and care in performance of the agent's duties.
   (b)  A duty of honest and fair dealing and good faith.
   (c)  A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

## BUYER'S AGENT

A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
   (a)  Diligent exercise of reasonable skill and care in performance of the agent's duties.
   (b)  A duty of honest and fair dealing and good faith.
   (c)  A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

## AGENT REPRESENTING BOTH SELLER AND BUYER

A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
   (a)  A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
   (b)  Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

## SELLER AND BUYER RESPONSIBILITIES

Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of the agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE).**

☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant _Hagop Anserian_ Date 09/17/2020 01:17 AM GMT
                           Hagop Anserian

☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____ Date _____

Agent **Luxury Homes Real Estate INC**          DRE Lic. # **01513453**
                Real Estate Broker (Firm)
By _Yeva Avetisyan_         DRE Lic. # **01897280**         Date 09/17/2020 01:08 AM GMT
    (Salesperson or Broker-Associate, if any) **Yeva Avetisyan**

© 1991-2018, California Association of REALTORS®, Inc.

**AD REVISED 12/18 (PAGE 1 OF 2)**

## DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)

2079.13. As used in Sections 2079.7 and 2079.14 to 2079.24, the following terms have the following meanings:

**(a)** "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions. **(b)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee of real property. **(c)** "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, (3) a mobilehome, as defined in Section 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in Section 799.29. **(d)** "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. **(e)** "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. **(f)** "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation.**(g)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. **(h)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(i)** "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(j)** "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in Section 18007 of the Health and Safety Code, or a mobilehome as defined in Section 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. **(k)** "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. **(l)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer, and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(m)** "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. **(n)** "Buyer's agent" means an agent who represents a buyer in a real property transaction.

**2079.14.** A seller's agent and buyer's agent shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and shall obtain a signed acknowledgment of receipt from that seller and buyer, except as provided in Section 2079.15, as follows: **(a)** The seller's agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. **(b)** The buyer's agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer.

**2079.15.** In any circumstance in which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to Section 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.

**2079.16** Reproduced on Page 1 of this AD form.

**2079.17(a)** As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller.
CONFIRMATION: The following agency relationships are confirmed for this transaction:

Seller's Brokerage Firm _____DO NOT COMPLETE. SAMPLE ONLY_____ License Number _____
Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent)
Seller's Agent _____DO NOT COMPLETE. SAMPLE ONLY_____ License Number _____
Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)
Buyer's Brokerage Firm _____DO NOT COMPLETE. SAMPLE ONLY_____ License Number _____
Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent)
Buyer's Agent _____DO NOT COMPLETE. SAMPLE ONLY_____ License Number _____
Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.
**2079.18** (Repealed pursuant to AB-1289)
**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.
**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.
**2079.21 (a)** A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. **(b)** A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. **(c)** "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. **(d)** This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.
**2079.22** Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.
**2079.23** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.
**2079.24** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

© 1991-2018, California Association of REALTORS®, Inc.

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.



Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**AD REVISED 12/18 (PAGE 2 OF 2)**
**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)**



# POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER
# OR SELLER - DISCLOSURE AND CONSENT

**(C.A.R. Form PRBS, Revised 12/18)**

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the buyer's or seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the seller's willingness to accept a price less than the listing price or the buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.**

Seller _____  LEV Investments LLC (Dmitri Lioudkovski) Date 09/18/2020 08:08 AM PDT

Seller _____  Date _____

Buyer _Hagop Anserian_  Hagop Anserian Date 09/17/2020 01:17 AM GMT

Buyer _____  Date _____

Buyer's Brokerage Firm _Luxury Homes Real Estate INC_  DRE Lic # _01513453_ Date _09/16/2020_

By _Yeva Avetisyan_  DRE Lic # _01897280_ Date _09/17/2020 01:08 AM GMT_

Yeva Avetisyan

Seller's Brokerage Firm _Central Realty Advisors Inc / Fair Realty, Inc_  DRE Lic # _01897085 / 01896646_ Date _09/16/2020_

By _Ekaterina Nagornaya_ AM PDT  DRE Lic # _01865830_ Date _9/17/2020_

_Ilya Tsipis Ekaterina Nagornaya / Ilya Tsipis_  01824504/

© 2018, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**PRBS REVISED 12/18 (PAGE 1 OF 1)**



## POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)

| | | | |
|---|---|---|---|
| Luxury Homes Real Estate INC, 138 N. Brand Blvd. #301 Glendale CA 91203 | Phone: 8184838008 | Fax: 8184838007 | Hagop Anserian |
| Yeva Avetisyan | Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com | | |



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

# WIRE FRAUD AND ELECTRONIC FUNDS
## TRANSFER ADVISORY
(C.A.R. Form WFA, Revised 12/17)

Property Address: **13854 Albers, Sherman Oaks, CA   91401** ("Property").

## WIRE FRAUD AND ELECTRONIC FUNDS TRANSFERS ADVISORY:

The ability to communicate and conduct business electronically is a convenience and reality in nearly all parts of our lives. At the same time, it has provided hackers and scammers new opportunities for their criminal activity. Many businesses have been victimized and the real estate business is no exception.

While wiring or electronically transferring funds is a welcome convenience, we all need to exercise extreme caution. Emails attempting to induce fraudulent wire transfers have been received and have appeared to be legitimate. Reports indicate that some hackers have been able to intercept emailed transfer instructions, obtain account information and, by altering some of the data, redirect the funds to a different account. It also appears that some hackers were able to provide false phone numbers for verifying the wiring or funds transfer instructions. In those cases, the victim called the number provided to confirm the instructions, and then unwittingly authorized a transfer to somewhere or someone other than the intended recipient.

## ACCORDINGLY, YOU ARE ADVISED:

1. **Obtain phone numbers and account numbers only from Escrow Officers, Property Managers, or Landlords at the beginning of the transaction.**
2. **DO NOT EVER WIRE OR ELECTRONICALLY TRANSFER FUNDS PRIOR TO CALLING TO CONFIRM THE TRANSFER INSTRUCTIONS. ONLY USE A PHONE NUMBER YOU WERE PROVIDED PREVIOUSLY. Do not use any different phone number or account number included in any emailed transfer instructions.**
3. **Orally confirm the transfer instruction is legitimate and confirm the bank routing number, account numbers and other codes before taking steps to transfer the funds.**
4. **Avoid sending personal information in emails or texts. Provide such information in person or over the telephone directly to the Escrow Officer, Property Manager, or Landlord.**
5. **Take steps to secure the system you are using with your email account. These steps include creating strong passwords, using secure WiFi, and not using free services.**

If you believe you have received questionable or suspicious wire or funds transfer instructions, immediately notify your bank, and the other party, and the Escrow Office, Landlord, or Property Manager. The sources below, as well as others, can also provide information:

Federal Bureau of Investigation: https://www.fbi.gov/; the FBI's IC3 at www.ic3.gov; or 310-477-6565

National White Collar Crime Center: http://www.nw3c.org/

On Guard Online: https://www.onguardonline.gov/

**NOTE: There are existing alternatives to electronic and wired fund transfers such as cashier's checks. By signing below, the undersigned acknowledge that each has read, understands and has received a copy of this Wire Fraud and Electronic Funds Transfer Advisory.**

Buyer/Tenant _*Hagop Anserian*_

_**Hagop Anserian**_ Date 09/17/2020 01:17 AM GMT

Buyer/Tenant _____ Date _____

Seller/Landlord  Date 09/18/2020 08:08 AM PDT

Seller/Landlord _____ Date _____

©2016-2017, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**WFA REVISED 12/17 (PAGE 1 OF 1)**



**WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY (WFA PAGE 1 OF 1)**



ASSOCIATION
OF REALTORS®

# CALIFORNIA
## RESIDENTIAL PURCHASE AGREEMENT
## AND JOINT ESCROW INSTRUCTIONS
(C.A.R. Form RPA-CA, Revised 12/18)

Date Prepared: _09/16/2020_
1. **OFFER:**
   A. **THIS IS AN OFFER FROM** _____ _Hagop Anserian_ _____ ("Buyer").
   B. **THE REAL PROPERTY** to be acquired is _____ _13854 Albers, Sherman Oaks, CA 91401_ ____ , situated in
      _Sherman Oaks_ (City), _____ (County), California, _91401_ (Zip Code), Assessor's Parcel No._____ ("Property").
   C. **THE PURCHASE PRICE** offered is _Two Million, Nine Hundred Fifty Thousand_ _____
      _____ Dollars $ _2,950,000.00_ .
   D. **CLOSE OF ESCROW** shall occur on |_____ (date)(or |X| _30_ Days After Acceptance).
   E. Buyer and Seller are referred to herein as the "Parties." Brokers are not Parties to this Agreement.
2. **AGENCY:**
   A. **DISCLOSURE:** The Parties each acknowledge receipt of a |X| "Disclosure Regarding Real Estate Agency Relationships" (C.A.R.
      Form AD).
   B. **CONFIRMATION:** The following agency relationships are confirmed for this transaction:
      **Seller's Brokerage Firm** _Central Realty Advisors Inc_ _____ License Number ___ _01897085_
      Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent)
      Seller's Agent _Ilya Tsipis_ _____ License Number ___ _01865830_
      Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)
      **Buyer's Brokerage Firm** _Luxury Homes Real Estate INC_ ____ License Number ___ _01513453_
      Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent)
      Buyer's Agent _Yeva Avetisyan_ _____ License Number ___ _01897280_
      Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)
   C. **POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a |X| "Possible
      Representation of More than One Buyer or Seller - Disclosure and Consent (C.A.R. Form PRBS).
3. **FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.
   A. **INITIAL DEPOSIT:** Deposit shall be in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____88,500.00_
      (1) Buyer Direct Deposit: Buyer shall deliver deposit directly to Escrow Holder by electronic funds
      transfer, ☐ cashier's check, ☐ personal check, ☐ other _____ within 3 business days
      after Acceptance (or _____ );
      OR (2) ☐ Buyer Deposit with Agent: Buyer has given the deposit by personal check (or _____ )
      to the agent submitting the offer (or to _____ )
      _____ . The deposit shall be held uncashed until Acceptance and then deposited
      with Escrow Holder within **3** business days after Acceptance (or _____ ).
      Deposit checks given to agent shall be an original signed check and not a copy.
      (Note: Initial and increased deposits checks received by agent shall be recorded in Broker's trust fund log.)
   B. **INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . . . . . . . . $ _____
      within _____ **Days** After Acceptance (or _____ ).
      If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased
      deposit into the liquidated damages amount in a separate liquidated damages clause (C.A.R. Form
      RID) at the time the increased deposit is delivered to Escrow Holder.
   C. ☐ **ALL CASH OFFER:** No loan is needed to purchase the Property. This offer is NOT contingent on Buyer
      obtaining a loan. Written verification of sufficient funds to close this transaction IS ATTACHED to this offer or
      ☐ Buyer shall, within 3 (or _____ ) Days After Acceptance, Deliver to Seller such verification.
   D. **LOAN(S):**
      (1) **FIRST LOAN:** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____1,160,000.00_
      This loan will be conventional financing **OR** ☐ FHA, ☐ VA, ☐ Seller financing (C.A.R. Form SFA),
      ☐ assumed financing (C.A.R. Form AFA), ☐ Other _____ . This loan shall be at a fixed
      rate not to exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %.
      Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
      (2) ☐ **SECOND LOAN** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
      This loan will be conventional financing **OR** ☐ Seller financing (C.A.R. Form SFA), ☐ assumed
      financing (C.A.R. Form AFA), ☐ Other _____ . This loan shall be at a fixed rate not to
      exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %.
      Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
      (3) **FHA/VA:** For any FHA or VA loan specified in 3D(1), Buyer has **17 (or _____ )** Days After Acceptance
      to Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that
      Buyer requests Seller to pay for or otherwise correct. Seller has no obligation to pay or satisfy lender
      requirements unless agreed in writing. A FHA/VA amendatory clause (C.A.R. Form FVAC) shall be a
      part of this Agreement.
   E. **ADDITIONAL FINANCING TERMS:** _Seller to carry $900,000 if needed with 8% for 1 year or less_
      _3% EMD non refundable upon acceptance of offer._
   F. **BALANCE OF DOWN PAYMENT OR PURCHASE PRICE** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . $ _____1,701,500.00_
      to be deposited with Escrow Holder pursuant to Escrow Holder instructions.
   G. **PURCHASE PRICE (TOTAL):** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____2,950,000.00_

Buyer's Initials ( _HA_ ) (_____)                              Seller's Initials ( _DL_ ) (_____)
© 1991-2018, California Association of REALTORS®, Inc.

**RPA-CA REVISED 12/18 (PAGE 1 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 10)**

Property Address: 20894 Alberca Way, Dawson, CA 91320 — Filed 10/01/20 Entered 10/01/20 16:31:49 Desc ... Date: September 18, 2020

Case 1:20-bk-11606-VK Main Document Page 49 of 102

**H. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** (or ☐) Buyer's lender or loan broker pursuant to paragraph 3J(1)) shall, within **3 (or _____ ) Days** After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs. (☐ Verification attached.)

**I. APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (or ☒ is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the purchase price. Buyer shall, as specified in paragraph 14B(3), in writing, remove the appraisal contingency or cancel this Agreement within **17 (or _____ ) Days** After Acceptance.

**J. LOAN TERMS:**
**(1) LOAN APPLICATIONS:** Within **3 (or _____ ) Days** After Acceptance, Buyer shall Deliver to Seller a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in paragraph 3D. If any loan specified in paragraph 3D is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate. (☐ Letter attached.)

**(2) LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Buyer's qualification for the loan(s) specified above **is a contingency** of this Agreement unless otherwise agreed in writing. If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan. Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement.

**(3) LOAN CONTINGENCY REMOVAL:**
Within **21 (or _____ ) Days** After Acceptance, Buyer shall, as specified in paragraph 14, in writing, remove the loan contingency or cancel this Agreement. If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.

**(4) ☒ NO LOAN CONTINGENCY:** Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

**(5) LENDER LIMITS ON BUYER CREDITS:** Any credit to Buyer, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then (i) the Contractual Credit shall be reduced to the Lender Allowable Credit, and (ii) in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

**K. BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price and to sell to Buyer in reliance on Buyer's covenant concerning financing. Buyer shall pursue the financing specified in this Agreement. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in the Agreement and the availability of any such alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**4. SALE OF BUYER'S PROPERTY:**
**A.** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer.
**OR B.** ☐ This Agreement and Buyer's ability to obtain financing are contingent upon the sale of property owned by Buyer as specified in the attached addendum (C.A.R. Form COP).

**5. ADDENDA AND ADVISORIES:**
**A. ADDENDA:**

| | |
|---|---|
| | ☐ Addendum # _____ (C.A.R. Form ADM) |
| ☐ Back Up Offer Addendum (C.A.R. Form BUO) | ☐ Court Confirmation Addendum (C.A.R. Form CCA) |
| ☐ Septic, Well and Property Monument Addendum (C.A.R. Form SWPI) | |
| ☐ Short Sale Addendum (C.A.R. Form SSA) | ☐ Other |

**B. BUYER AND SELLER ADVISORIES:**

| | |
|---|---|
| | ☒ Buyer's Inspection Advisory (C.A.R. Form BIA) |
| ☐ Probate Advisory (C.A.R. Form PA) | ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA) |
| ☐ Trust Advisory (C.A.R. Form TA) | ☐ REO Advisory (C.A.R. Form REO) |
| ☐ Short Sale Information and Advisory (C.A.R. Form SSIA) | ☐ Other |

**6. OTHER TERMS:** _____

**7. ALLOCATION OF COSTS**
**A. INSPECTIONS, REPORTS AND CERTIFICATES:** Unless otherwise agreed in writing, this paragraph only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; it **does not determine who is to pay for any work recommended or identified in the Report.**
**(1)** ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report, including tax ☐ environmental ☐ Other: _____ prepared by _____ .
**(2)** ☐ Buyer ☐ Seller shall pay for the following Report _____ . prepared by _____
**(3)** ☐ Buyer ☐ Seller shall pay for the following Report _____ . prepared by _____
**B. GOVERNMENT REQUIREMENTS AND RETROFIT:**
**(1)** ☐ Buyer ☒ Seller shall pay for smoke alarm and carbon monoxide device installation and water heater bracing, if required by Law. Prior to Close Of Escrow ("COE"), Seller shall provide Buyer written statement(s) of compliance in accordance with state and local Law, unless Seller is exempt.

Buyer's Initials ( _HA_ ) ( _____ )    Seller's Initials ( _DL_ ) ( _____ )

Property Address: _20484 Albeman Dr, #2A_    Date: _September 16, 2020_

(2) (i) ☐ Buyer ☒ Seller shall pay the cost of compliance with any other minimum mandatory government inspections and reports if required as a condition of closing escrow under any Law.

(ii) ☐ Buyer ☒ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards required as a condition of closing escrow under any Law, whether the work is required to be completed before or after COE.

(iii) Buyer shall be provided, within the time specified in paragraph 14A, a copy of any required government conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

**C. ESCROW AND TITLE:**
(1) (a) ☒ Buyer ☒ Seller shall pay escrow fee _50/50_ _____ .
    (b) Escrow Holder shall be _Seller's Choice_ _____ .
    (c) The Parties shall, within **5 (or ___ ) Days** After receipt, sign and return Escrow Holder's general provisions.
(2) (a) ☒ Buyer ☒ Seller shall pay for **owner's** title insurance policy specified in paragraph 13E _____
    (b) Owner's title policy to be issued by _Seller's Choice_ _____ .
    (Buyer shall pay for any title insurance policy insuring Buyer's **lender**, unless otherwise agreed in writing.)

**D. OTHER COSTS:**
(1) ☐ Buyer ☒ Seller shall pay County transfer tax or fee _____
(2) ☐ Buyer ☒ Seller shall pay City transfer tax or fee _____
(3) ☐ Buyer ☐ Seller shall pay Homeowners' Association ("HOA") transfer fee _____
(4) ☐ Seller shall pay HOA fees for preparing documents required to be delivered by Civil Code §4525.
(5) ☐ Buyer ☐ Seller shall pay HOA fees for preparing all documents other than those required by Civil Code §4525.
(6) Buyer to pay for any HOA certification fee.
(7) ☐ Buyer ☐ Seller shall pay for any private transfer fee _____
(8) ☐ Buyer ☐ Seller shall pay for _____
(9) ☐ Buyer ☐ Seller shall pay for _____
(10) ☐ Buyer ☐ Seller shall pay for the cost, not to exceed $ _____ , of a standard (or ☐ upgraded) one-year home warranty plan, issued by _____ , with the following optional coverages: ☒ Air Conditioner ☒ Pool/Spa ☒ Other: _All that applies_
   Buyer is informed that home warranty plans have many optional coverages in addition to those listed above. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.

OR ☐ **Buyer waives the purchase of a home warranty plan. Nothing in this paragraph precludes Buyer's purchasing a home warranty plan during the term of this Agreement.**

**8. ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**
**A. NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are **not** included in the purchase price or excluded from the sale unless specified in paragraph 8 B or C.

**B. ITEMS INCLUDED IN SALE:** Except as otherwise specified or disclosed,
(1) All EXISTING fixtures and fittings that are attached to the Property;
(2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water features and fountains, water softeners, water purifiers, security systems/alarms and the following if checked: ☐ all stove(s), except _____ ; ☐ all refrigerator(s) except _____ ; ☐ all washer(s) and dryer(s), except _____ ;
(3) The following additional items: _____ ;
(4) Existing integrated phone and home automation systems, including necessary components such as intranet and Internet-connected hardware or devices, control units (other than non-dedicated mobile devices, electronics and computers) and applicable software, permissions, passwords, codes and access information, are (☐ are NOT) included in the sale.
(5) **LEASED OR LIENED ITEMS AND SYSTEMS:** Seller shall, within the time specified in paragraph 14A, (i) disclose to Buyer if any item or system specified in paragraph 8B or otherwise included in the sale is leased, or not owned by Seller, or specifically subject to a lien or other encumbrance, and (ii) Deliver to Buyer all written materials (such as lease, warranty, etc.) concerning any such item. Buyer's ability to assume any such lease, or willingness to accept the Property subject to any such lien or encumbrance, is a contingency in favor of Buyer and Seller as specified in paragraph 14B and C.
(6) Seller represents that all items included in the purchase price, unless otherwise specified, (i) are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to 8B(5) and _____ , and (ii) are transferred without Seller warranty regardless of value.

**C. ITEMS EXCLUDED FROM SALE:** Unless otherwise specified, the following items are excluded from sale: (i) audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; (ii) furniture and other items secured to the Property for earthquake purposes; and (iii) _____

_____ . **Brackets attached to walls, floors or ceilings for any such component, furniture or item shall remain with the Property (or ☐ will be removed and holes or other damage shall be repaired, but not painted).**

**9. CLOSING AND POSSESSION:**
**A.** Buyer intends (or ☐ does not intend) to occupy the Property as Buyer's primary residence.
**B. Seller-occupied or vacant property:** Possession shall be delivered to Buyer: (i) at 6 PM or (____ ☐ AM/☐ PM) on the date of Close Of Escrow; (ii) ☐ no later than ___ calendar days after Close Of Escrow; or (iii) ☐ at ____ ☐ AM/☐ PM on _____ .

Buyer's Initials ( _HA_ ) ( _____ )    Seller's Initials ( _DL_ ) ( _____ )

**C. Seller remaining in possession After Close Of Escrow:** If Seller has the right to remain in possession after Close Of Escrow, (i) the Parties are advised to sign a separate occupancy agreement such as ☐ C.A.R. Form SIP, for Seller continued occupancy of less than 30 days, ☐ C.A.R. Form RLAS for Seller continued occupancy of 30 days or more; and (ii) the Parties are advised to consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and (iii) Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.

**D. Tenant-occupied property: Property shall be vacant** at least **5 (or ____ ) Days** Prior to Close Of Escrow, unless otherwise agreed in writing. **Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.**

**OR** ☐ **Tenant to remain in possession** (C.A.R. Form TIP).

**E.** At Close Of Escrow: Seller assigns to Buyer any assignable warranty rights for items included in the sale; and Seller shall Deliver to Buyer available Copies of any such warranties. Brokers cannot and will not determine the assignability of any warranties.

**F.** At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems and intranet and Internet-connected devices included in the purchase price, and garage door openers. If the Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

**10. STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**

**A. (1)** Seller shall, within the time specified in paragraph 14A, Deliver to Buyer: (i) if required by Law, a fully completed: Federal Lead-Based Paint Disclosures (C.A.R. Form FLD) and pamphlet ("Lead Disclosures"); and **(ii)** unless exempt, fully completed disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD).

**(2)** Any Statutory Disclosure required by this paragraph is considered fully completed if Seller has answered all questions and completed and signed the Seller section(s) and the Seller's Agent, if any, has completed and signed the Seller's Brokerage Firm section(s), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Nothing stated herein relieves a Buyer's Brokerage Firm, if any, from the obligation to (i) conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or (ii) complete any sections on all disclosures required to be completed by Buyer's Brokerage Firm.

**(3) Note to Buyer and Seller:** Waiver of Statutory and Lead Disclosures is prohibited by Law.

**(4)** Within the time specified in paragraph 14A, (i) Seller, unless exempt from the obligation to provide a TDS, shall, complete and provide Buyer with a Seller Property Questionnaire (C.A.R. Form SPQ); (ii) if Seller is not required to provide a TDS, Seller shall complete and provide Buyer with an Exempt Seller Disclosure (C.A.R. Form ESD).

**(5)** Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory, Lead and other disclosures to Seller.

**(6)** In the event Seller or Seller's Brokerage Firm, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies** of which Buyer is otherwise aware, or which are **disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.**

**(7)** If any disclosure or notice specified in paragraph 10A(1), or subsequent or amended disclosure or notice is Delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within **3 Days** After Delivery in person, or **5 Days** After Delivery by deposit in the mail, or by an electronic record satisfying the Uniform Electronic Transactions Act (UETA), by giving written notice of cancellation to Seller or Seller's agent.

**B. NATURAL AND ENVIRONMENTAL HAZARD DISCLOSURES AND OTHER BOOKLETS:** Within the time specified in paragraph 14A, Seller shall, if required by Law: **(i)** Deliver to Buyer earthquake guide(s) (and questionnaire), environmental hazards booklet, and home energy rating pamphlet; **(ii)** disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; and Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.

**C. WITHHOLDING TAXES:** Within the time specified in paragraph 14A, to avoid required withholding, Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law (C.A.R. Form AS or QS).

**D. MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov.** Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)

**E. NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/.** To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Web site.

**F. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**

**(1) SELLER HAS: 7 (or ____ ) Days** After Acceptance to disclose to Buyer if the Property is a condominium, or is located in a planned development or other common interest subdivision (C.A.R. Form SPQ or ESD).

Buyer's Initials ( _HA_ ) ( _____ )     Seller's Initials ( _DL_ ) ( _____ )

**RPA-CA REVISED 12/18 (PAGE 4 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 4 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          Hagop Anserian

(2) If the Property is a condominium or located in a planned development or other common interest subdivision, Seller has **3 (or ___ ) Days** After Acceptance to request from the HOA (C.A.R. Form HOA1): **(i)** Copies of any documents required by Law; **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; and **(v)** the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). **(vi)** private transfer fees; **(vii)** Pet fee restrictions; and **(viii)** smoking restrictions. Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3). The Party specified in paragraph 7, as directed by escrow, shall deposit funds into escrow or direct to HOA or management company to pay for any of the above.

**11. CONDITION OF PROPERTY:** Unless otherwise agreed in writing: **(i)** the Property is sold (a) "AS-IS" in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and **(iii)** all debris and personal property not included in the sale shall be removed by Close Of Escrow.

   **A.** Seller shall, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, and make any and all other disclosures required by law.

   **B.** Buyer has the right to conduct Buyer Investigations of the Property and, as specified in paragraph 14B, based upon information discovered in those investigations: (i) cancel this Agreement; or (ii) request that Seller make Repairs or take other action.

   **C. Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.**

**12. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

   **A.** Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to: **(i)** a general physical inspection; **(ii)** an inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2); **(iii)** inspect for lead-based paint and other lead-based paint hazards; **(iv)** satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA); **(v)** review the registered sex offender database; **(vi)** confirm the insurability of Buyer and the Property including the availability and cost of flood and fire insurance; and **(vii)** review and seek approval of leases that may need to be assumed by Buyer. Without Seller's prior written consent, Buyer shall neither make nor cause to be made: invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report; or inspections by any governmental building or zoning inspector or government employee, unless required by Law.

   **B.** Seller shall make the Property available for all Buyer Investigations. Buyer shall **(i)** as specified in paragraph 14B, complete Buyer Investigations and either remove the contingency or cancel this Agreement, and **(ii)** give Seller, at no cost, complete Copies of all such Investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.

   **C.** Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.

   **D. Buyer indemnity and seller protection for entry upon property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**13. TITLE AND VESTING:**

   **A.** Within the time specified in paragraph 14, Buyer shall be provided a current preliminary title report ("Preliminary Report"). The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the Preliminary Report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14B. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities. Seller shall within 7 Days After Acceptance, give Escrow Holder a completed Statement of Information.

   **B.** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: **(i)** monetary liens of record (which Seller is obligated to pay off) unless Buyer is assuming those obligations or taking the Property subject to those obligations; and **(ii)** those matters which Seller has agreed to remove in writing.

   **C.** Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

   **D.** At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

   **E.** Buyer shall receive a CLTA/ALTA "Homeowner's Policy of Title Insurance", if applicable to the type of property and buyer. If not, Escrow Holder shall notify Buyer. A title company can provide information about the availability, coverage, and cost of other title policies and endorsements. If the Homeowner's Policy is not available, Buyer shall choose another policy, instruct Escrow Holder in writing and shall pay any increase in cost.

Buyer's Initials ( _HA_ ) ( _____ )          Seller's Initials ( _DL_ ) ( _____ )

**RPA-CA REVISED 12/18 (PAGE 5 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 5 OF 10)**

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS:** The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).

**A. SELLER HAS: 7 (or ____ ) Days** After Acceptance to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 5, 6, 7, 8B(5), 10A, B, C, and F, 11A and 13A. If, by the time specified, Seller has not Delivered any such item, Buyer after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP) may cancel this Agreement.

**B. (1) BUYER HAS: 17 (or _0_ ) Days** After Acceptance, unless otherwise agreed in writing, to:
   **(i)** complete all Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to paragraph 8B(5), and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and **(ii)** Deliver to Seller Signed Copies of Statutory and Lead Disclosures and other disclosures Delivered by Seller in accordance with paragraph 10A.
   **(2)** Within the time specified in paragraph 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to (C.A.R. Form RRRR) Buyer's requests.
   **(3)** By the end of the time specified in paragraph 14B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller a removal of the applicable contingency or cancellation (C.A.R. Form CR or CC) of this Agreement. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in paragraph 14A, then Buyer has **5 (or ____ ) Days** After Delivery of any such items, or the time specified in paragraph 14B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.
   **(4) Continuation of Contingency:** Even after the end of the time specified in paragraph 14B(1) and before Seller cancels, if at all, pursuant to paragraph 14D, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to paragraph 14D(1).
   **(5) Access to Property:** Buyer shall have access to the Property to conduct inspections and investigations for **17 (or ____ ) Days** After Acceptance, whether or not any part of the Buyer's Investigation Contingency has been waived or removed.

**C.** ☒ **REMOVAL OF CONTINGENCIES WITH OFFER: Buyer removes the contingencies specified in the attached Contingency Removal form (C.A.R. Form CR). If Buyer removes any contingency without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Broker.**

**D. SELLER RIGHT TO CANCEL:**
   **(1) Seller right to Cancel; Buyer Contingencies:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.
   **(2) Seller right to Cancel; Buyer Contract Obligations:** Seller, after first delivering to Buyer a NBP, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): **(i)** Deposit funds as required by paragraph 3A, or 3B or if the funds deposited pursuant to paragraph 3A or 3B are not good when deposited; **(ii)** Deliver a notice of FHA or VA costs or terms as required by paragraph 3D(3) (C.A.R. Form FVA); **(iii)** Deliver a letter as required by paragraph 3J(1); **(iv)** Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by paragraph 3C or 3H; **(v)** In writing assume or accept leases or liens specified in 8B5; **(vi)** Return Statutory and Lead Disclosures as required by paragraph 10A(5); or **(vii)** Sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 3B and 21B; or **(viii)** Provide evidence of authority to sign in a representative capacity as specified in paragraph 19. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

**E. NOTICE TO BUYER OR SELLER TO PERFORM:** The NBP or NSP shall: **(i)** be in writing; **(ii)** be signed by the applicable Buyer or Seller; and **(iii)** give the other Party at least **2 (or ____ ) Days** After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP or NSP may not be Delivered any earlier than **2 Days** Prior to the expiration of the applicable time for the other Party to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 14.

**F. EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in this Agreement, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

**G. CLOSE OF ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow (C.A.R. Form DCE). The DCE shall: **(i)** be signed by the applicable Buyer or Seller; and **(ii)** give the other Party at least **3 (or ____ ) Days** After Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** Prior to the scheduled close of escrow.

**H. EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Except as specified below, **release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award.** If either Party fails to execute mutual instructions to cancel escrow, one Party may make a written demand to Escrow Holder for the deposit. (C.A.R. Form BDRD or SDRD). Escrow Holder, upon receipt, shall promptly deliver notice of the demand to the other Party. If, within 10 Days After Escrow Holder's notice, the other Party does not object to the demand, Escrow Holder shall disburse the deposit to the Party making the demand. If Escrow Holder complies with the preceding process, each Party shall be deemed to have released Escrow Holder from any and all claims or liability related to the disbursal of the deposit. Escrow Holder, at its discretion, may nonetheless require mutual cancellation instructions. **A Party may be subject to a civil penalty of up to $1,000 for refusal to Sign cancellation instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).**

Buyer's Initials ( _HA_ ) ( _____ )                    Seller's Initials ( _DL_ ) ( _____ )

**RPA-CA REVISED 12/18 (PAGE 6 OF 10)**



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 6 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          Hagop Anserian

**15. FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final inspection of the Property within **5 (or \_\_\_\_ ) Days** Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to paragraph 11; **(ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

**16. REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain invoices and paid receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

**17. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

**18. BROKERS:**

    **A. COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.

    **B. SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Broker: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**19. REPRESENTATIVE CAPACITY:** If one or more Parties is signing this Agreement in a representative capacity and not for him/herself as an individual then that Party shall so indicate in paragraph 31 or 32 and attach a Representative Capacity Signature Disclosure (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity (i) represents that the entity for which that party is acting already exists and (ii) shall Deliver to the other Party and Escrow Holder, within **3 Days** After Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code §18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

**20. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

    **A.** The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: paragraphs 1, 3, 4B, 5A, 6, 7, 10C, 13, 14G, 17, 18A, 19, 20, 26, 29, 30, 31, 32 and paragraph D of the section titled Real Estate Brokers on page 10. If a Copy of the separate compensation agreement(s) provided for in paragraph 18A, or paragraph D of the section titled Real Estate Brokers on page 10 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder and will execute such provisions within the time specified in paragraph 7C(1)(c). To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 (or \_\_\_\_ ) Days,** shall pay to Escrow Holder or HOA or HOA management company or others any fee required by paragraphs 7, 10 or elsewhere in this Agreement.

    **B.** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** After Acceptance (or _____). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under paragraph 10C, Escrow Holder shall deliver to Buyer a Qualified Substitute statement that complies with federal Law.

Buyer's Initials ( _HA_ ) ( )                                  Seller's Initials ( _DL_ ) ( )

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com    Hagop Anserian

**C.** Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraph 18A and paragraph D of the section titled Real Estate Brokers on page 10. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 18A, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

**D.** Upon receipt, Escrow Holder shall provide Seller and Seller's Broker verification of Buyer's deposit of funds pursuant to paragraph 3A and 3B. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify all Brokers: **(i)** if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or **(ii)** if Buyer and Seller instruct Escrow Holder to cancel escrow.

**E.** A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **3** Days after mutual execution of the amendment.

## 21. REMEDIES FOR BUYER'S BREACH OF CONTRACT:

**A.** Any clause added by the Parties specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase in violation of this Agreement shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.

**B.** **LIQUIDATED DAMAGES:** If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Except as provided in paragraph 14H, release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. **AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM RID).**

Buyer's Initials _HA_ / _____      Seller's Initials _DL_ / _____

## 22. DISPUTE RESOLUTION:

**A.** **MEDIATION:** The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action through the C.A.R. Real Estate Mediation Center for Consumers (**www.consumermediation.org**) or through any other mediation provider or service mutually agreed to by the Parties. The Parties **also agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker.** Mediation fees, if any, shall be divided equally among the Parties involved. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. **Exclusions from this mediation agreement are specified in paragraph 22C.**

**B.** **ARBITRATION OF DISPUTES:**

**The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The Parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 22C.**

**"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

**"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

Buyer's Initials _HA_ / _____      Seller's Initials _DL_ / _____

**C.** ADDITIONAL MEDIATION AND ARBITRATION TERMS:

**(1)** EXCLUSIONS: The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; and (iii) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court.

Buyer's Initials ( _HA_ ) ( _____ )      Seller's Initials ( _DL_ ) ( _____ )

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com        Hagop Anserian

(2) **PRESERVATION OF ACTIONS:** The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.

(3) **BROKERS:** Brokers shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.

23. **SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

24. **MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

25. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 22A.

26. **ASSIGNMENT:** Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless otherwise agreed in writing by Seller. (C.A.R. Form AOAA).

27. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

28. **TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all Parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

29. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

30. **DEFINITIONS:** As used in this Agreement:

A. **"Acceptance"** means the time the offer or final counter offer is accepted in writing by a Party and is delivered to and personally received by the other Party or that Party's authorized agent in accordance with the terms of this offer or a final counter offer.

B. **"Agreement"** means this document and any counter offers and any incorporated addenda, collectively forming the binding agreement between the Parties. Addenda are incorporated only when Signed by all Parties.

C. **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the parties.

D. **"Close Of Escrow"**, including "COE", means the date the grant deed, or other evidence of transfer of title, is recorded.

E. **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.

F. **"Days"** means calendar days. However, after Acceptance, the last **Day** for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.

G. **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.

H. **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.

I. **"Deliver", "Delivered"** or **"Delivery"**, unless otherwise specified in writing, means and shall be effective upon: personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in the section titled Real Estate Brokers on page 10, regardless of the method used (i.e., messenger, mail, email, fax, other).

J. **"Electronic Copy"** or **"Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.

K. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

L. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

M. **"Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.

31. **EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by _____ who is authorized to receive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or by ☐ _____ ☐ AM/☐ PM, on _____ (date)).

☐ One or more Buyers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-B) for additional terms.

Date 09/17/2020 01:17 AM GMT  BUYER *Hagop Anserian*

**(Print name)** *Hagop Anserian*

Date _____  BUYER _____

**(Print name)** _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

Seller's Initials ( DL ) ( _____ )

**RPA-CA REVISED 12/18 (PAGE 9 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 9 OF 10)**

**32. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

☑ (If checked) SELLER'S ACCEPTANCE IS **SUBJECT TO ATTACHED COUNTER OFFER** (C.A.R. Form SCO or SMCO) DATED:
09/17/2020

☐ One or more Sellers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S) for additional terms.

Date 08:08 AM PDT SELLER _____

(Print name) LEV Investments LLC (Dmitri Lioudkovski)

Date _____ SELLER _____

(Print name) _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

( _____ / _____ ) **(Do not initial if making a counter offer.) CONFIRMATION OF ACCEPTANCE:** A Copy of Signed Acceptance was
(Initials) personally received by Buyer or Buyer's authorized agent on (date) _____ at _____
☐ AM/ ☐ PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

---

**REAL ESTATE BROKERS:**
A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B. Agency relationships are confirmed as stated in paragraph 2.
C. If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
D. **COOPERATING (BUYER'S) BROKER COMPENSATION:** Seller's Broker agrees to pay Buyer's Broker and Buyer Broker agrees to accept, out of Seller's Broker's proceeds in escrow, the amount specified in the MLS, provided Buyer's Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Seller's Broker and Buyer's Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.
E. **PRESENTATION OF OFFER:** Pursuant to Standard of Practice 1-7, if Buyer's Broker makes a written request, Seller's Broker shall confirm in writing that this offer has been presented to Seller.

Buyer's Brokerage Firm *Luxury Homes Real Estate INC* DRE Lic. # 01513453
By *Yeva Avetisyan* Yeva Avetisyan DRE Lic. # 01897280 Date 09/17/2020 01:08 AM GMT
By _____ DRE Lic. # _____ Date _____
Address 138 N. Brand Blvd. #301 City Glendale State CA Zip 91203
Telephone (818)483-8008 Fax (818)483-8007 E-mail eva.avetisyan05@gmail.com
Seller's Brokerage Firm *Central Realty Advisors Inc* / *Fair Realty, Inc* DRE Lic. # 01897085 02063521 / 01896646
By _____ Ilya Tsipis DRE Lic. # 01865830 Date 09/18/2020 08:47 AM
By *Ekaterina Nagornaya* Ekaterina Nagornaya DRE Lic. # 01829504 Date PDT
Address 8060 Melrose Ave. 3rd Fln 17337 Ventura Blvd SH. 102 City Los Angeles Encino State CA Zip 90046 91316
Telephone (323)285-9002 818-625-4184 Fax _____ E-mail eva.avetisyan05@gmail.com ilyatsipis@mail.com

---

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked) ☐ a deposit in the amount of $ _____ ),
counter offer numbers _____ ☐ Seller's Statement of Information and _____
_____, and agrees to act as Escrow Holder subject to paragraph 20 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.
Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____
Escrow Holder _____ Escrow # _____
By _____ Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Business Oversight, ☐ Department of Insurance, ☐ Department of Real Estate.

---

**PRESENTATION OF OFFER:** ( IT ) Seller's Broker presented this offer to Seller on 09/16/2020 (date).
Broker or Designee Initials

**REJECTION OF OFFER:** ( _____ )( _____ ) No counter offer is being made. This offer was rejected by Seller on _____ (date).
Seller's Initials

---

©1991- 2018, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Buyer Acknowledges that page 10 is part of this Agreement ( HA )( _____ )
Buyer's Initials

**RPA-CA REVISED 12/18 (PAGE 10 of 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 10 OF 10)**



Property Address **13854 Albers, Sherman Oaks, CA  91401**

**1. IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

**2. BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as those listed below. If Broker gives you referrals to professionals, Broker does not guarantee their performance.

**3. YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO THE FOLLOWING. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**

    **A. GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof (condition, age, leaks, useful life), plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa (cracks, leaks, operation), other structural and nonstructural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property.

    **B. SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other barriers or markers do not necessarily identify true Property boundaries.

    **C. WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms.

    **D. SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage.

    **E. WATER AND UTILITIES; WELL SYSTEMS AND COMPONENTS; WASTE DISPOSAL:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components. The type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.

    **F. ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants).

    **G. EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood.

    **H. FIRE, HAZARD AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies.

    **I. BUILDING PERMITS, ZONING AND GOVERNMENTAL REQUIREMENTS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size.

    **J. RENTAL PROPERTY RESTRICTIONS:** Some cities and counties impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements.

    **K. SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property.

    **L. NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, law enforcement, crime statistics, registered felons or offenders, fire protection, other government services, availability, adequacy and cost of internet connections or other technology services and installations, commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

**By signing below, Buyers acknowledge that they have read, understand, accept and have received a Copy of this Advisory. Buyers are encouraged to read it carefully.**

Buyer _Hagop Anserian_   09/17/2020 01:17 AM GMT   Buyer _____
    **Hagop Anserian**

©1991-2004, California Association of REALTORS®, Inc. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**BIA REVISED 11/14 (PAGE 1 OF 1)**



**BUYER'S INSPECTION ADVISORY (BIA PAGE 1 OF 1)**

Luxury Homes Real Estate INC, 138 N. Brand Blvd. #301 Glendale CA 91203        Phone: 8184838008     Fax: 8184838007     Hagop Anserian
Yeva Avetisyan      Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

**CALIFORNIA ASSOCIATION OF REALTORS®**

## CALIFORNIA CONSUMER PRIVACY ACT ADVISORY
### (C.A.R. Form CCPA, 12/19)

As of January 1, 2020, the California Consumer Privacy Act (commencing with Civil Code § 1798.100) ("CCPA") grants to California residents certain rights in their private, personal information that is collected by companies with whom they do business. Under the CCPA, "personal information" is defined broadly to encompass non-public records information that could reasonably be linked directly or indirectly to you, including, potentially, photographs of or sales information about your property. Some of your personal information will be collected and likely shared with others during the process of buying and selling real estate. Depending on the situation, you may have the right to "opt out" or stop the transfer of your personal information to others and request that certain businesses delete your personal information altogether. Not all businesses you interact with are required to comply with the law, primarily just those who meet the criteria of a covered "Business" as set forth in Section 1798.140 (c)]. For more information, you may ask your Broker for a copy of the C.A.R. Legal Q&A on the subject.

A real estate broker is likely to submit personal information to a Multiple Listing Service ("MLS") in order to help find a buyer for a seller's property. Through the MLS, the information is made available to real estate brokers and salespeople, and others. Even after a sale is complete, the MLS distributes sales information to the real estate community. Brokers, agents and MLSs may also share your personal information with others who post the personal information on websites or elsewhere, or otherwise use it. Thus, there are various service providers and companies in a real estate transaction who may be engaged in using or sharing data involving your personal information.

If your broker is a covered Business, it should have a privacy policy explaining your rights on its website and giving you an opportunity to request that personal information not be shared, used and even deleted. Even if your real estate brokerage is a covered Business, it needs, and is allowed, to keep your information to effectuate a sale and, by law, is required to maintain such information for three years to comply with regulatory requirements. Not all brokers are covered Businesses, however, and those that are not, do not have to comply with the CCPA.

Similarly, most MLSs will not be considered a covered Business. Instead, the MLS may be considered a Third Party in the event a covered Business (ex: brokerages, real estate listing aggregation or advertising internet sites or other outlets who meet the criteria of covered Businesses) exchanges personal information with the MLS. You do not have the right under the CCPA to require a Third Party to delete your personal information. And like real estate brokerages, even if an MLS is a covered Business, MLSs are also required by law to retain and make accessible in its computer system any and all listing and other information for three years.

Whether an MLS is a covered Business or a Third Party, you have a right to be notified about the sharing of your personal information and your right to contact a covered Business to opt out of your personal information being used, or shared with Third Parties. Since the MLSs and/or other entities receiving your personal information do not have direct contact with buyers and sellers and also may not be aware of which entities exchanging personal information are covered Businesses, this form is being used to notify you of your rights under the CCPA and your ability to direct requests to covered Businesses not to share personal information with Third Parties. One way to limit access to your personal information, is to inform your broker or salesperson you want to opt-out of the MLS, and if so, you will be asked to sign a document (Form SELM) confirming your request to keep your listing off the MLS. However, if you do so, it may be more difficult to sell your property or obtain the highest price for it because your property will not be exposed to the greatest number of real estate licensees and others.

**I/we acknowledge receipt of a copy of this California Consumer Privacy Act Advisory.**

Buyer/Seller/Landlord/Tenant _Hagop Anserian_ Date 09/17/2020 01:17 AM GMT
Hagop Anserian

Buyer/Seller/Landlord/Tenant _____ Date 09/18/2020 08:08 AM PDT
LEV Investments LLC (Dmitri Lioudkovski)

© 2019, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**CCPA 12/19 (PAGE 1 OF 1)**

**CALIFORNIA CONSUMER PRIVACY ACT ADVISORY (CCPA PAGE 1 OF 1)**

# **EXHIBIT "2"**

[Property Tax Search Report]



**Los Angeles County**
## Treasurer and Tax Collector



Property Tax Payment Inquiry

**Last updated Tuesday September 29, 2020**

**Assessor ID Number:** 2247-013-001   **Year:** 20   **Seq. No.:** 000

**ELECTRONIC FUND TRANSFER (EFT) NUMBER**
**ID#:** 19 2247 013 001 0   **YEAR:** 20   **SEQUENCE:** 000 6

| Installment 1 | | Installment 2 | |
|---|---|---|---|
| Tax Amount | $18,456.75 | Tax Amount | $18,456.75 |
| Penalty Amount | $0.00 | Pen/Cost Amount | $0.00 |
| Total Due | $18,456.75 | Total Due | $18,456.75 |
| Paid Amount | $0.00 | Paid Amount | $0.00 |
| Balance Due | $18,456.75 | Balance Due | $18,456.75 |
| Delinquent If Not Paid By | 12/10/2020 | Delinquent If Not Paid By | 04/12/2021 |

**Message:**

# Defaulted Tax Roll

**Last updated Tuesday September 29, 2020**

| | | | |
|---|---|---|---|
| AIN Number | 2247-013-001 | 5-Pay Account Number | |
| Default Year | 2019 | 5-Pay Status | |
| Redemption Amount | $0.00 | 5-Pay Installment Amount Due | |
| Monthly Penalty Amount | $0.00 | 5-Pay Due Date | |
| Amount Paid | $60,286.01 | 5-Pay Installment Paid | |
| Last Payment Date | 08/18/2020 | | |

**Message:**
STATE LAW REQUIRES THAT WE APPLY PAYMENTS TO COSTS, PENALTIES AND THE BALANCE TO TAXES. IF YOU HAVE
QUESTIONS, PLEASE CALL US TOLL-FREE AT (888) 807-2111.

**Tax Status: CURRENT**

[ Select Another Account ]

For help or inquiries regarding online payments, contact us at **info@ttc.lacounty.gov**.
Our business hours are 8:00 a.m. to 5:00 p.m., Pacific Time, Monday through Friday, excluding **Los Angeles County holidays**.
Our office is located in the Kenneth Hahn Hall of Administration, 225 North Hill Street, First Floor Lobby, Los Angeles, CA 90012.

If you are having trouble using this site, it may be because you are using a slightly older internet browser or an unsupported internet browser.
See a **list of supported internet browsers**.

Terms of Use | Privacy & Security Policy

©2002-2020 Los Angeles County Treasurer and Tax Collector. All Rights Reserved.

# EXHIBIT "3"

[Preliminary Title Report]



Chicago Title - LA
500 N. Brand Blvd, Suite 200, Glendale, CA 91203

# Prelim Title Report

Title Officer: Mary Distin
Email: teamdistin@ctt.com
Phone No.: (818)548-0222
Fax No.: (818)550-3214
Title No.: 112021785-MD

Escrow Officer: Kilita Smith
Email: ksmith@glenoaksescrow.com
Fax No.: (424) 901-1398
Escrow No.: 130-4238-KS

Property Address: 13854 Albers Street, Los Angeles, CA

## Introducing





LiveLOOK title document delivery system is designed to provide 24/7 real-time access to all information related to a title insurance transaction.

Access title reports, exception documents, an easy-to-use summary page, and more, at your fingertips and your convenience.

To view your new Chicago Title PreVIEW powered by LiveLOOK report, Click Here



**Effortless, Efficient, Compliant, and Accessible**



# PRELIMINARY REPORT

**Order No.:**  112021785-MD
**Property:**  13854 Albers Street
Los Angeles, CA 91401

*In response to the application for a policy of title insurance referenced herein, **Chicago Title Company** hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a policy or policies of title insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an exception herein or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations or Conditions of said policy forms.*

*The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Attachment One.  The policy to be issued may contain an arbitration clause.  When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties.  Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Attachment One.  Copies of the policy forms should be read.  They are available from the office which issued this report.*

*This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby.  If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.*

*The policy(ies) of title insurance to be issued hereunder will be policy(ies) of Chicago Title Insurance Company, a Florida corporation.*

***Please read the exceptions shown or referred to herein and the exceptions and exclusions set forth in Attachment One of this report carefully.  The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.***

***It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects and encumbrances affecting title to the land.***

### Chicago Title Insurance Company

By:

Countersigned By:

_____

President

Attest:

_____
Authorized Officer or Agent

_____
Secretary

*Visit Us on our Website:* <u>*www.ctic.com*</u>



**CHICAGO TITLE COMPANY**

***ISSUING OFFICE:*** 500 N. Brand Blvd, Suite 200, Glendale, CA 91203

***FOR SETTLEMENT INQUIRIES, CONTACT:***
Glen Oaks Escrow
184-B N. Canon Drive • Beverly Hills, CA 90210
(310)550-3330 • FAX (424) 901-1398

## PRELIMINARY REPORT

| | |
|---|---|
| **Title Officer:** Mary Distin | **Escrow Officer:** Kilita Smith |
| **Email:** teamdistin@ctt.com | **Email:** ksmith@glenoaksescrow.com |
| **Phone No.:** (818)548-0222 | **Phone No.:** (310)550-3330 |
| **Fax No.:** (818)550-3214 | **Fax No.:** (424) 901-1398 |
| **Title No.:** 112021785-MD | **Escrow No.:** 130-4238-KS |

**PROPERTY ADDRESS(ES):** 13854 Albers Street, Los Angeles, CA

---

**EFFECTIVE DATE: September 3, 2020 at 07:30 AM**

The form of policy or policies of title insurance contemplated by this report is:

    ALTA Homeowner's Policy of Title Insurance 2013

    ALTA Loan Policy 2006

**1.** The estate or interest in the Land hereinafter described or referred to covered by this Report is:

    A Fee

**2.** Title to said estate or interest at the date hereof is vested in:

    Lev Investments, LLC, a California limited liability company, as to an undivided 50.00% Interest, Ruvin Feygenberg, an individual, as to an undivided 25.00% interest and Michael Leizerovitz, an individual, as to an undivided 25.00% interest, subject to item No. 10

**3.** The Land referred to in this Report is described as follows:

    SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

# EXHIBIT "A"
Legal Description

**For <u>APN/Parcel ID(s):  2247-013-001</u>**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

THE NORTH 190 FEET OF THE EAST 99 FEET OF THE WEST 110 FEET OF LOT 103 <u>TRACT NO. 1000</u>, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 19 PAGES 1 THROUGH 34 INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Title No.:  112021785-MD

**AT THE DATE HEREOF, EXCEPTIONS TO COVERAGE IN ADDITION TO THE PRINTED EXCEPTIONS AND EXCLUSIONS IN SAID POLICY FORM WOULD BE AS FOLLOWS:**

1.  Property taxes, which are a lien not yet due and payable, including any assessments collected with taxes to be levied for the fiscal year 2020-2021.

2.  Property taxes, including any personal property taxes and any assessments collected with taxes, are as follows:

    Tax Identification No.:      2247-013-001
    Fiscal Year:                 2019-2020
    1st Installment:             $15,959.47 paid.
    2nd Installment:             $15,959.45, Delinquent
    Penalty and Cost:            $1,605.94 (Due after April 10)
    Homeowners Exemption:        None
    Code Area:                   00013

3.  Supplemental taxes, including any personal property taxes and any assessments collected with taxes, assessed pursuant to the provisions of Chapter 3.5 (commencing with Section 75) of the Revenue and Taxation Code of the State of California, are as follows:

    Tax Identification No.:    2247-013-001
    Fiscal Year:               2018-2019
    1st Installment:           $467.75, Delinquent
    Penalty:                   $46.77
    Delinquent:                December 31, 2019
    2nd Installment:           $467.74, Delinquent
    Penalty:                   $56.77
    Delinquent:                April 30, 2020
    Code Area:                 00013
    Supplemental Bill No.:     18020

4.  Supplemental taxes, including any personal property taxes and any assessments collected with taxes, assessed pursuant to the provisions of Chapter 3.5 (commencing with Section 75) of the Revenue and Taxation Code of the State of California, are as follows:

    Tax Identification No.:    2247-013-001
    Fiscal Year:               2019-2020
    1st Installment:           $1,793.95, Delinquent
    Penalty:                   $179.39
    Delinquent:                December 31, 2019
    2nd Installment:           $1,793.94, Delinquent
    Penalty:                   $189.39
    Delinquent:                April 30, 2020
    Code Area:                 00013
    Supplemental Bill No.:     19020

5.  The lien of supplemental or escaped assessments of property taxes, if any, made pursuant to the provisions of Chapter 3.5 (commencing with Section 75) or Part 2, Chapter 3, Articles 3 and 4, respectively, of the Revenue and Taxation Code of the State of California as a result of the transfer of title to the vestee named in Schedule A or as a result of changes in ownership or new construction occurring prior to Date of Policy.

Title No.:  112021785-MD

**EXCEPTIONS**
(continued)

6.    Covenants, conditions and restrictions but omitting any covenants or restrictions, if any, including but not limited to those based upon race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, marital status, national origin, ancestry, familial status, source of income, disability, veteran or military status, genetic information, medical condition, citizenship, primary language, and immigration status, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law, as set forth in the document

Recording No.:        Book 4740, Page 97, of Deeds

Said covenants, conditions and restrictions provide that a violation thereof shall not defeat the lien of any mortgage or deed of trust made in good faith and for value.

and Recording No.:        Book 4627, Page 142, of Official Records

and Recording No.:        Book 4867, Page 32, of Official Records

7.    Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

Granted to:        Southern California Telephone Company
Purpose:        Pole lines, conduits
Recording Date:        February 20, 1946
Recording No.:        Book 22845, Page 140, Official Records
Affects:        Said land

8.    Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

Granted to:        City of Los Angeles
Purpose:        Pipe lines
Recording Date:        April 18, 1952
Recording No.:        Book 38739, Page 396, Official Records
Affects:        Said land

9.    A deed of trust to secure an indebtedness in the amount shown below,

Amount:        $1,257,675.00
Dated:        January 31, 2019
Trustor/Grantor        Lev Investments, LLC, a California limited liability company
Trustee:        Real Property Trustee, Inc., a Delaware Corporation
Beneficiary:        Ruvin Feygenberg, an individual, as to an undivided 50.00% interest, and Sensible Consulting and Management, Inc., a California corporation, as to an undivided 50.00% interest
Loan No.:        Not shown
Recording Date:        March 22, 2019
Recording No.:        20190258568, Official Records

## EXCEPTIONS
(continued)

This Company will require that the original note, the original deed of trust and a properly executed request for full reconveyance together with appropriate documentation (i.e., copy of trust, partnership agreement or corporate resolution) be in this office prior to the close of this transaction if the above-mentioned item is to be paid through this transaction or deleted from a policy of title insurance.

Any demands submitted to us for payoff must be signed by all beneficiaries as shown on said deed of trust, and/or any assignments thereto.  In the event said demand is submitted by an agent of the beneficiary(s), we will require the written approval of the demand by the beneficiary(s).  Servicing agreements do not constitute approval for the purposes of this requirement.

If no amounts remain due under the obligation a zero balance demand will be required along with the reconveyance documents.

In addition, we require the written approval of said demand by the trustor(s) on said deed of trust or the current owners if applicable.


An assignment of the beneficial interest under said deed of trust which names:

Assignee:            Sensible Consulting and Management, Inc., a California corporation
Loan No.:            Not shown
Recording Date:      April 2, 2019
Recording No.:       20190286165, of Official Records

A notice of default under the terms of said trust deed

Executed by:         Witkin and Associates, LLC
Recording Date:      January 22, 2020
Recording No:        20200084451, of Official Records

A substitution of trustee under said deed of trust which names, as the substituted trustee, the following

Trustee:             Witkin and Associates, LLC
Recording Date:      April 23, 2020
Recording No.:       20200449834, of Official Records

A notice of trustee's sale under said deed of trust

Executed by:         Witkin and Associates, LLC
Time and Place of Sale:  Behind the fountain located in Civic Center Plaza, 400 Civic Center Plaza, Pomona,
                         CA 91766, May 21, 2020 at 10:00 AM
Recording Date:      April 23, 2020
Recording No.:       20200449835, of Official Records

Title No.:  112021785-MD

**EXCEPTIONS**
(continued)

10.    The effect of a Deed as set forth below:

| | |
|---|---|
| Grantor: | Lev Investments, LLC, a California limited liability company, as to an undivided 50.00% Interest,Ruvin Feygenberg, an individual, as to an undivided 25.00% interest and Michael Leizerovitz, an individual, as to an undivided 25.00% interest |
| Grantee: | Lev Investments, LLC, a California limited liability company |
| Dated: | January 31, 2019 |
| Recording Date | March 22, 2019 |
| Recording No.: | 2019-258567, of Official Records |

The Company requires that an affidavit (attached) be completed and executed by the above grantor and that said affidavit be acknowledged before a notary who is an employee of the title or escrow Company and then submitted to the Title Officer for review.

The Company further requires a statement of information from the above grantors in order to complete this report, based on the effect of documents, proceedings, liens, decrees, or other matters which do not specifically describe said Land, but which if any do exist, may affect the title or impose liens or encumbrances thereon.

11.    A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | FR LLC |
| Defendant: | Lev Investments, LLC; Dmitri Ludkovski; Ruvin Feygenberg; Michael Leizerovitz; Sensible Consulting and Management, Inc |
| County: | Los Angeles |
| Court: | Superior Court of California |
| Case No.: | 19STCV45132 |
| Nature of Action: | All Affecting Real Property |
| Recording Date: | December 31, 2019 |
| Recording No.: | 20191465878, of Official Records |

Title No.:  112021785-MD

## EXCEPTIONS
(continued)

12.    The Company will require the following documents for review prior to the issuance of any title insurance predicated upon a conveyance or encumbrance from the entity named below.

Limited Liability Company:  Lev Investments, LLC, a California limited liability company

a.    A copy of its operating agreement, if any, and any and all amendments, supplements and/or modifications thereto, certified by the appropriate manager or member.

b.    If a domestic Limited Liability Company, a copy of its Articles of Organization and all amendment thereto with the appropriate filing stamps.

c.    If the Limited Liability Company is  member-managed a full and complete current list of members certified by the appropriate manager or member.

d.    A current dated certificate of good standing from the proper governmental authority of the state in which the entity was created

e.    If less than all members, or managers, as appropriate, will be executing the closing documents, furnish evidence of the authority of those signing.

f)    If Limited Liability Company is a Single Member Entity, a Statement of Information for the Single Member will be required.

g)    Each member and manager of the LLC without an Operating Agreement must execute in the presence of a notary public the Certificate of California LLC (Without an Operating Agreement) Status and Authority form

13.    In order to complete this report, the Company requires a Statement of Information to be completed by the following party(ies),

Party(ies):  All Parties

The Company reserves the right to add additional items or make further requirements after review of the requested Statement of Information.

NOTE:  The Statement of Information is necessary to complete the search and examination of title under this order.  Any title search includes matters that are indexed by name only, and having a completed Statement of Information assists the Company in the elimination of certain matters which appear to involve the parties but in fact affect another party with the same or similar name.  Be assured that the Statement of Information is essential and will be kept strictly confidential to this file.

## END OF EXCEPTIONS

Title No.:  112021785-MD

# NOTES

**Note 1.**     Notice: Please be aware that due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

**Note 2.**     Note:  The only conveyance(s) affecting said Land, which recorded within 24 months of the date of this report, are as follows:

| | |
|---|---|
| Grantor: | California TD Specialists |
| Grantee: | Lev Investments, LLC, a California limited liability company, as to an undivided 50.00% Interest, Ruvin Feygenberg, an individual, as to an undivided 25.00% interest and Michael Leizerovitz, and individual, as to an undivided 25.00% interest |
| Recording Date: | February 1, 2019 |
| Recording No.: | 2019-99571, of Official Records |

| | |
|---|---|
| Grantor: | Lev Investments, LLC, a California limited liability company, as to an undivided 50.00% Interest,  Ruvin Feygenberg, an individual, as to an undivided 25.00% interest and Michael Leizerovitz, and individual, as to an undivided 25.00% interest |
| Grantee: | Lev Investments, LLC, a California limited liability company |
| Recording Date: | March 22, 2019 |
| Recording No.: | 20190258567, of Official Records |

**Note 3.**     Note:  If a county recorder, title insurance company, escrow company, real estate broker, real estate agent or association provides a copy of a declaration, governing document or deed to any person, California law requires that the document provided shall include a statement regarding any unlawful restrictions.  Said statement is to be in at least 14-point bold face type and may be stamped on the first page of any document provided or included as a cover page attached to the requested document.  Should a party to this transaction request a copy of any document reported herein that fits this category, the statement is to be included in the manner described.

**Note 4.**     Note:  When this title order closes and if the Company if handling the loan proceeds through a sub-escrow, all title charges and expenses normally billed will be deducted from those loan proceeds.  Title charges and expenses would include Title Premiums, any Tax or Bond advances, Documentary Transfer Tax, Recording Fees, etc.

**Note 5.**     Note:  None of the items shown in this report will cause the Company to decline to attach CLTA Endorsement Form 100 to an Extended Coverage Loan Policy, when issued.

**Note 6.**     Note:  The Company is not aware of any matters which would cause it to decline to attach CLTA Endorsement Form 116 indicating that there is located on said Land a Single Family Residence, known as 13854 Albers Street (Sherman Oaks Area), in the City of Los Angeles, County of Los Angeles, State of California,  to an Extended Coverage Loan Policy.

**Note 7.**     Note:  The policy of title insurance will include an arbitration provision.  The Company or the insured may demand arbitration.  Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation.  Please ask your escrow or title officer for a sample copy of the policy to be issued if you wish to review the arbitration provisions and any other provisions pertaining to your Title Insurance coverage.

**Note 8.**     Note:  Any documents being executed in conjunction with this transaction must be signed in the presence of an authorized Company employee, an authorized employee of an agent, an authorized employee of the insured lender, or by using Bancserv or other approved third-party service.  If the above requirement cannot be met, please call the Company at the number provided in this report.

Title No.:  112021785-MD

**NOTES**
(continued)

**Note 9.**     A Preliminary Change of Ownership form is required upon a change in ownership of the Land. Section 480 of the Revenue and Taxation Code of the State of California requires that a grantee of real property complete a Preliminary Change of Ownership statement, which is to be filed at the time that a grant deed is recorded. In the event that the statement is not completed and presented at the time of the recording of the deed, the recorder will assess the grantee an additional charge to record the deed.

**Note 10.**    Note:  The Company and its policy issuing agents are required by Federal law to collect additional information about certain transactions in specified geographic areas in accordance with the Bank Secrecy Act.  If this transaction is required to be reported under a Geographic Targeting Order issued by FinCEN, the Company or its policy issuing agent must be supplied with a completed ALTA Information Collection Form ("ICF") prior to closing the transaction contemplated herein.

**Note 11.**    Note:  Pursuant to Government Code Section 27388.1, as amended and effective as of 1-1-2018, a Documentary Transfer Tax (DTT) Affidavit may be required to be completed and submitted with each document when DTT is being paid or when an exemption is being claimed from paying the tax.  If a governmental agency is a party to the document, the form will not be required. DTT Affidavits may be available at a Tax Assessor-County Clerk-Recorder.

**Note 12.**    Due to the special requirements of SB 50 (California Public Resources Code Section 8560 et seq.), any transaction that includes the conveyance of title by an agency of the United States must be approved in advance by the Company's State Counsel, Regional Counsel, or one of their designees.

**END OF NOTES**

 Inquire before you wire!

# WIRE FRAUD ALERT

This Notice is not intended to provide legal or professional advice.
If you have any questions, please consult with a lawyer.

All parties to a real estate transaction are targets for wire fraud and many have lost hundreds of thousands of dollars because they simply relied on the wire instructions received via email, without further verification. **If funds are to be wired in conjunction with this real estate transaction, we strongly recommend verbal verification of wire instructions through a known, trusted phone number prior to sending funds.**

In addition, the following non-exclusive self-protection strategies are recommended to minimize exposure to possible wire fraud.

- **NEVER RELY** on emails purporting to change wire instructions.  Parties to a transaction rarely change wire instructions in the course of a transaction.

- **ALWAYS VERIFY** wire instructions, specifically the ABA routing number and account number, by calling the party who sent the instructions to you.  DO NOT use the phone number provided in the email containing the instructions, use phone numbers you have called before or can otherwise verify.  **Obtain the number of relevant parties to the transaction as soon as an escrow account is opened.**  DO NOT send an email to verify as the email address may be incorrect or the email may be intercepted by the fraudster.

- **USE COMPLEX EMAIL PASSWORDS** that employ a combination of mixed case, numbers, and symbols.  Make your passwords greater than eight (8) characters.  Also, change your password often and do NOT reuse the same password for other online accounts.

- **USE MULTI-FACTOR AUTHENTICATION** for email accounts.  Your email provider or IT staff may have specific instructions on how to implement this feature.

For more information on wire-fraud scams or to report an incident, please refer to the following links:

*Federal Bureau of Investigation:*          *Internet Crime Complaint Center:*
*http://www.fbi.gov*                          *http://www.ic3.gov*

112021785Colobo - WIRE0016 (DSI Rev. 12/07/17)
*TM and © Fidelity National Financial, Inc. and/or an affiliate.  All rights reserved*

## FIDELITY NATIONAL FINANCIAL
## PRIVACY NOTICE

Effective April 9, 2020

Fidelity National Financial, Inc. and its majority-owned subsidiary companies (collectively, "FNF," "our," or "we") respect and are committed to protecting your privacy. This Privacy Notice explains how we collect, use, and protect personal information, when and to whom we disclose such information, and the choices you have about the use and disclosure of that information.

A limited number of FNF subsidiaries have their own privacy notices. If a subsidiary has its own privacy notice, the privacy notice will be available on the subsidiary's website and this Privacy Notice does not apply.

### Collection of Personal Information

FNF may collect the following categories of Personal Information:

- contact information (e.g., name, address, phone number, email address);
- demographic information (e.g., date of birth, gender, marital status);
- identity information (e.g. Social Security Number, driver's license, passport, or other government ID number);
- financial account information (e.g. loan or bank account information); and
- other personal information necessary to provide products or services to you.

We may collect Personal Information about you from:

- information we receive from you or your agent;
- information about your transactions with FNF, our affiliates, or others; and
- information we receive from consumer reporting agencies and/or governmental entities, either directly from these entities or through others.

### Collection of Browsing Information

FNF automatically collects the following types of Browsing Information when you access an FNF website, online service, or application (each an "FNF Website") from your Internet browser, computer, and/or device:

- Internet Protocol (IP) address and operating system;
- browser version, language, and type;
- domain name system requests; and
- browsing history on the FNF Website, such as date and time of your visit to the FNF Website and visits to the pages within the FNF Website.

Like most websites, our servers automatically log each visitor to the FNF Website and may collect the Browsing Information described above. We use Browsing Information for system administration, troubleshooting, fraud investigation, and to improve our websites. Browsing Information generally does not reveal anything personal about you, though if you have created a user account for an FNF Website and are logged into that account, the FNF Website may be able to link certain browsing activity to your user account.

### Other Online Specifics

Cookies. When you visit an FNF Website, a "cookie" may be sent to your computer. A cookie is a small piece of data that is sent to your Internet browser from a web server and stored on your computer's hard drive. Information gathered using cookies helps us improve your user experience. For example, a cookie can help the website load properly or can customize the display page based on your browser type and user preferences. You can choose whether or not to accept cookies by changing your Internet browser settings. Be aware that doing so may impair or limit some functionality of the FNF Website.

<u>Web Beacons</u>.  We use web beacons to determine when and how many times a page has been viewed.  This information is used to improve our websites.

<u>Do Not Track</u>.  Currently our FNF Websites do not respond to "Do Not Track" features enabled through your browser.

<u>Links to Other Sites</u>.  FNF Websites may contain links to unaffiliated third-party websites.  FNF is not responsible for the privacy practices or content of those websites.  We recommend that you read the privacy policy of every website you visit.

## Use of Personal Information

FNF uses Personal Information for three main purposes:

- To provide products and services to you or in connection with a transaction involving you.
- To improve our products and services.
- To communicate with you about our, our affiliates', and others' products and services, jointly or independently.

## When Information Is Disclosed

We may disclose your Personal Information and Browsing Information in the following circumstances:

- to enable us to detect or prevent criminal activity, fraud, material misrepresentation, or nondisclosure;
- to nonaffiliated service providers who provide or perform services or functions on our behalf and who agree to use the information only to provide such services or functions;
- to nonaffiliated third party service providers with whom we perform joint marketing, pursuant to an agreement with them to jointly market financial products or services to you;
- to law enforcement or authorities in connection with an investigation, or in response to a subpoena or court order; or
- in the good-faith belief that such disclosure is necessary to comply with legal process or applicable laws, or to protect the rights, property, or safety of FNF, its customers, or the public.

The law does not require your prior authorization and does not allow you to restrict the disclosures described above.  Additionally, we may disclose your information to third parties for whom you have given us authorization or consent to make such disclosure.  We do not otherwise share your Personal Information or Browsing Information with nonaffiliated third parties, except as required or permitted by law.  We may share your Personal Information with affiliates (other companies owned by FNF) to directly market to you.  Please see "Choices with Your Information" to learn how to restrict that sharing.

We reserve the right to transfer your Personal Information, Browsing Information, and any other information, in connection with the sale or other disposition of all or part of the FNF business and/or assets, or in the event of bankruptcy, reorganization, insolvency, receivership, or an assignment for the benefit of creditors.  By submitting Personal Information and/or Browsing Information to FNF, you expressly agree and consent to the use and/or transfer of the foregoing information in connection with any of the above described proceedings.

## Security of Your Information

We maintain physical, electronic, and procedural safeguards to protect your Personal Information.

## Choices With Your Information

If you do not want FNF to share your information among our affiliates to directly market to you, you may send an "opt out" request by email, phone, or physical mail as directed at the end of this Privacy Notice.  We do not share your Personal Information with nonaffiliates for their use to direct market to you without your consent.

Whether you submit Personal Information or Browsing Information to FNF is entirely up to you.  If you decide not to submit Personal Information or Browsing Information, FNF may not be able to provide certain services or products to you.

For California Residents: We will not share your Personal Information or Browsing Information with nonaffiliated third parties, except as permitted by California law. For additional information about your California privacy rights, please visit the "California Privacy" link on our website (https://fnf.com/pages/californiaprivacy.aspx) or call (888) 413-1748.

For Nevada Residents: You may be placed on our internal Do Not Call List by calling (888) 934-3354 or by contacting us via the information set forth at the end of this Privacy Notice. Nevada law requires that we also provide you with the following contact information: Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington St., Suite 3900, Las Vegas, NV 89101; Phone number: (702) 486-3132; email: BCPINFO@ag.state.nv.us.

For Oregon Residents: We will not share your Personal Information or Browsing Information with nonaffiliated third parties for marketing purposes, except after you have been informed by us of such sharing and had an opportunity to indicate that you do not want a disclosure made for marketing purposes.

For Vermont Residents: We will not disclose information about your creditworthiness to our affiliates and will not disclose your personal information, financial information, credit report, or health information to nonaffiliated third parties to market to you, other than as permitted by Vermont law, unless you authorize us to make those disclosures.

## Information From Children

The FNF Websites are not intended or designed to attract persons under the age of eighteen (18). We do not collect Personal Information from any person that we know to be under the age of thirteen (13) without permission from a parent or guardian.

## International Users

FNF's headquarters is located within the United States. If you reside outside the United States and choose to provide Personal Information or Browsing Information to us, please note that we may transfer that information outside of your country of residence. By providing FNF with your Personal Information and/or Browsing Information, you consent to our collection, transfer, and use of such information in accordance with this Privacy Notice.

## FNF Website Services for Mortgage Loans

Certain FNF companies provide services to mortgage loan servicers, including hosting websites that collect customer information on behalf of mortgage loan servicers (the "Service Websites"). The Service Websites may contain links to both this Privacy Notice and the mortgage loan servicer or lender's privacy notice. The sections of this Privacy Notice titled When Information is Disclosed, Choices with Your Information, and Accessing and Correcting Information do not apply to the Service Websites. The mortgage loan servicer or lender's privacy notice governs use, disclosure, and access to your Personal Information. FNF does not share Personal Information collected through the Service Websites, except as required or authorized by contract with the mortgage loan servicer or lender, or as required by law or in the good-faith belief that such disclosure is necessary: to comply with a legal process or applicable law, to enforce this Privacy Notice, or to protect the rights, property, or safety of FNF or the public.

## Your Consent To This Privacy Notice; Notice Changes; Use of Comments or Feedback

By submitting Personal Information and/or Browsing Information to FNF, you consent to the collection and use of the information in accordance with this Privacy Notice. We may change this Privacy Notice at any time. The Privacy Notice's effective date will show the last date changes were made. If you provide information to us following any change of the Privacy Notice, that signifies your assent to and acceptance of the changes to the Privacy Notice. We may use comments or feedback that you submit to us in any manner without notice or compensation to you.

**Accessing and Correcting Information; Contact Us**

If you have questions, would like to correct your Personal Information, or want to opt-out of information sharing for affiliate marketing, send your requests to privacy@fnf.com, by phone to (888) 934-3354, or by mail to:

Fidelity National Financial, Inc.
601 Riverside Avenue,
Jacksonville, Florida 32204
Attn:  Chief Privacy Officer

## ATTACHMENT ONE

### CALIFORNIA LAND TITLE ASSOCIATION
### STANDARD COVERAGE POLICY - 1990

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a)  Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

    (b)  Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2.  Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3.  Defects, liens, encumbrances, adverse claims or other matters:

    (a)  whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;

    (b)  not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

    (c)  resulting in no loss or damage to the insured claimant;

    (d)  attaching or created subsequent to Date of Policy; or

    (e)  resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4.  Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5.  Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6.  Any claim, which arises out of the transaction vesting in the insured the estate or interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.

    Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2.  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

3.  Easements, liens or encumbrances, or claims thereof, not shown by the public records.

4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6.  Any lien or right to a lien for services, labor or material not shown by the public records.

## ATTACHMENT ONE
### (CONTINUED)

### CLTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)
### ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE

## EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1. Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:
   a. building;
   b. zoning;
   c. land use;
   d. improvements on the Land;
   e. land division; and
   f. environmental protection.
   This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.

2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.

3. The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.

4. Risks:
   a. that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
   b. that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;
   c. that result in no loss to You; or
   d. that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.

5. Failure to pay value for Your Title.

6. Lack of a right:
   a. to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
   b. in streets, alleys, or waterways that touch the Land.
   This Exclusion does not limit the coverage described in Covered Risk 11 or 21.

7. The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.

8. Contamination, explosion, fire, flooding, vibration, fracturing, earthquake or subsidence.

9. Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:

- For Covered Risk 16, 18, 19 and 21, Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

| | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1.00% of Policy Amount Shown in Schedule A<br>or<br>$2,500.00<br>(whichever is less) | $ 10,000.00 |
| Covered Risk 18: | 1.00% of Policy Amount Shown in Schedule A<br>or<br>$5,000.00<br>(whichever is less) | $ 25,000.00 |
| Covered Risk 19: | 1.00% of Policy Amount Shown in Schedule A<br>or<br>$5,000.00<br>(whichever is less) | $ 25,000.00 |
| Covered Risk 21: | 1.00% of Policy Amount Shown in Schedule A<br>or<br>$2,500.00<br>(whichever is less) | $ 5,000.00 |

**ATTACHMENT ONE**
**(CONTINUED)**

### 2006 ALTA LOAN POLICY (06-17-06)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  (a)  Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

    (i)    the occupancy, use, or enjoyment of the Land;

    (ii)   the character, dimensions, or location of any improvement erected on the Land;

    (iii)  the subdivision of land; or

    (iv)   environmental protection;

    or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

    (b)  Any governmental police power.  This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2.  Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.  Defects, liens, encumbrances, adverse claims, or other matters

    (a)  created, suffered, assumed, or agreed to by the Insured Claimant;

    (b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

    (c)  resulting in no loss or damage to the Insured Claimant;

    (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or

    (e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.

5.  Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.

6.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is

    (a)  a fraudulent conveyance or fraudulent transfer, or

    (b)  a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.

7.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records.  This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

### EXCEPTIONS FROM COVERAGE

[Except as provided in Schedule B - Part II,[ t[or T]his policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees, or expenses that arise by reason of:

[**PART I**

[The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2.  Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6.  Any lien or right to a lien for services, labor or material not shown by the Public Records.]

**PART II**

In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:]

## ATTACHMENT ONE
### (CONTINUED)

### 2006 ALTA OWNER'S POLICY (06-17-06)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  (a)  Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

      (i)   the occupancy, use, or enjoyment of the Land;

      (ii)  the character, dimensions, or location of any improvement erected on the Land;

      (iii) the subdivision of land; or

      (iv)  environmental protection;

      or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

    (b)  Any governmental police power.  This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2.  Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.  Defects, liens, encumbrances, adverse claims, or other matters

    (a)  created, suffered, assumed, or agreed to by the Insured Claimant;

    (b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

    (c)  resulting in no loss or damage to the Insured Claimant;

    (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or

    (e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is

    (a)  a fraudulent conveyance or fraudulent transfer; or

    (b)  a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees, or expenses that arise by reason of:

[The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2.  Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6.  Any lien or right to a lien for services, labor or material not shown by the Public Records.]

7.  [Variable exceptions such as taxes, easements, CC&R's, etc., shown here.]

**ATTACHMENT ONE**
**(CONTINUED)**

**ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY - ASSESSMENTS PRIORITY (04-02-15)**

**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

   (i) the occupancy, use, or enjoyment of the Land;

   (ii) the character, dimensions, or location of any improvement erected on the Land;

   (iii) the subdivision of land; or

   (iv) environmental protection;

   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.

   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.

2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims, or other matters

   (a) created, suffered, assumed, or agreed to by the Insured Claimant;

   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

   (c) resulting in no loss or damage to the Insured Claimant;

   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or

   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.

5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, or any consumer credit protection or truth-in-lending law. This Exclusion does not modify or limit the coverage provided in Covered Risk 26.

6. Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.

7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.

8. The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes. This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.

9. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is

   (a) a fraudulent conveyance or fraudulent transfer, or

   (b) a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.

10. Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

11. Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

# Notice of Available Discounts

Pursuant to Section 2355.3 in Title 10 of the California Code of Regulations Fidelity National Financial, Inc. and its subsidiaries ("FNF") must deliver a notice of each discount available under our current rate filing along with the delivery of escrow instructions, a preliminary report or commitment.  Please be aware that the provision of this notice does not constitute a waiver of the consumer's right to be charged the filed rate.  As such, your transaction may not qualify for the below discounts.

You are encouraged to discuss the applicability of one or more of the below discounts with a Company representative.  These discounts are generally described below; consult the rate manual for a full description of the terms, conditions and requirements for such discount.  These discounts only apply to transactions involving services rendered by the FNF Family of Companies.  This notice only applies to transactions involving property improved with a one-to-four family residential dwelling.

Not all discounts are offered by every FNF Company.  The discount will only be applicable to the FNF Company as indicated by the named discount.

| **FNF Underwritten Title Companies** | **Underwritten by FNF Underwriters** |
|---|---|
| CTC - Chicago Title Company | CTIC - Chicago Title Insurance Company |
| CLTC - Commonwealth Land Title Company | CLTIC - Commonwealth Land Title Insurance Company |
| FNTC - Fidelity National Title Company of California | FNTIC - Fidelity National Title Insurance Company |
| FNTCCA - Fidelity National Title Company of California | FNTIC - Fidelity National Title Insurance Company |
| TICOR - Ticor Title Company of California | CTIC - Chicago Title Insurance Company |
| LTC - Lawyer's Title Company | CLTIC - Commonwealth Land Title Insurance Company |
| SLTC - ServiceLink Title Company | CTIC - Chicago Title Insurance Company |

## Available Discounts

**DISASTER LOANS (CTIC, CLTIC, FNTIC)**
The charge for a Lender's Policy (Standard or Extended coverage) covering the financing or refinancing by an owner of record, within twenty-four (24) months of the date of a declaration of a disaster area by the government of the United States or the State of California on any land located in said area, which was partially or totally destroyed in the disaster, will be fifty percent (50%) of the appropriate title insurance rate.

**CHURCHES OR CHARITABLE NON-PROFIT ORGANIZATIONS (CTIC, FNTIC)**
On properties used as a church or for charitable purposes within the scope of the normal activities of such entities, provided said charge is normally the church's obligation the charge for an owner's policy shall be fifty percent (50%) to seventy percent (70%) of the appropriate title insurance rate, depending on the type of coverage selected.  The charge for a lender's policy shall be forty percent (40%) to fifty percent (50%) of the appropriate title insurance rate, depending on the type of coverage selected.

# EXHIBIT A

**Order No.:**   112021785

**For APN/Parcel ID(s):   2247-013-001**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

THE NORTH 190 FEET OF THE EAST 99 FEET OF THE WEST 110 FEET OF LOT 103 TRACT NO. 1000, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 19 PAGES 1 THROUGH 34 INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.



This map/plat is being furnished as an aid in locating the herein described Land in relation to adjoining streets, natural boundaries and other land, and is not a survey of the land depicted. Except to the extent a policy of title insurance is expressly modified by endorsement, if any, the Company does not insure dimensions, distances, location of easements, acreage or other matters shown thereon.

# **EXHIBIT "4"**

[Ming Zhu Sale Stipulation]

1   DAVID B. GOLUBCHIK (SBN 185520)
    JULIET Y. OH (SBN 211414)
2   LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
    10250 Constellation Boulevard, Suite 1700
3   Los Angeles, California 90067
    Telephone: (310) 229-1234; Facsimile: (310) 229-1244
4   Email: DBG@LNBYB.com, JYO@LNBYB.com
5
    Attorneys for Chapter 11 Debtor and
6   Debtor in Possession
7
8                   UNITED STATES BANKRUPTCY COURT
9                   CENTRAL DISTRICT OF CALIFORNIA
10                        SAN FERNANDO DIVISION
11
12  In re:                              Case No.: 1:20-bk-11006-VK
13  LEV INVESTMENTS, LLC                Chapter 11 Case
14          Debtor and Debtor in Possession.   **STIPULATION RE: SECURED CLAIM
                                        AND RELATED RELIEF [MING ZHU,
15                                      LLC]**
16                                      [No hearing set]
17
18
19
20
21
22
23
24
25
26
27
28

4831-5985-1705.1                        1

1    **TO THE HONORABLE VICTORIA S. KAUFMAN, UNITED STATES**

2    **BANKRUPTCY JUDGE:**

3        Lev Investments, LLC, Chapter 11 debtor and debtor in possession herein ("Debtor") and

4    Ming Zhu, LLC ("Zhu"), through their respective counsel, hereby enter into this Stipulation Re:

5    Secured Claim and Related Relief (the "Stipulation"), with respect to the following:

6                              **RECITALS**

7        A.      Debtor commenced this bankruptcy case by the filing of a voluntary bankruptcy

8    petition under Chapter 11 of the Bankruptcy Code (11 U.S.C. § 101 et seq.) on June 1, 2020 (the

9    "Petition Date").

10        B.      On the Petition Date, the Debtor held a 100% fee simple interest in that certain

11    real property located at 13854 Albers Street, Sherman Oaks, California 91401 (the "Property").

12        C.      On March 14, 2013, Zhu obtained a state court judgment as against Ruvin

13    Feygenberg ("Feygenberg") in the sum of $169,885.38, bearing interest at 10% per annum until

14    paid ("Judgment").  On April 22, 2013, Zhu recorded an Abstract of Judgment with the Los

15    Angeles County Recorder's Office. On July 3, 2020, Zhu filed a Proof of Claim in the above

16    captioned bankruptcy of Debtor in the amount of $286,291.67 and claiming to be a secured

17    creditor ("Secured Claim").  On September 3, 2020, Zhu filed a Notice of Lien in the Debtor's

18    bankruptcy case.

19        D.      On January 30, 2019, a foreclosure sale of the Property was held.  On February 1,

20    2019, a Trustee's Deed Upon Sale was recorded with respect to the Property, conveying, among

21    other things, a 25% interest in the Property to Feygenberg.  Zhu asserts that, upon such

22    recording, the Abstract of Judgment attached to Feygenberg's interest in the Property.

23        E.      On March 22, 2019, among other things, Feygenberg transferred his interest in

24    the Property to the Debtor.  Zhu asserts that its security interest remains with, and encumbers,

25    the Property notwithstanding the subsequent transfer of Feygenberg's interest in the Property to

26    the Debtor.

27        F.      Debtor has advised Zhu that Debtor intends to commence an action for

28    reformation to effectuate the true intent of the parties in connection with the foreclosure process

1  for the Property, specifically, that the Trustee's Deed Upon Sale for the Property should have

2  conveyed a 100% interest in the Property to the Debtor only, without reference to Feygenberg.

3       G.    On or about March 22, 2019, a deed of trust (the "Deed of Trust") which secured

4  the indebtedness of a promissory note in the asserted sum of $1,257,675.00 ("Promissory Note")

5  was recorded against the Property for the benefit of, among others, Feygenberg and his partner,

6  Michael Leizerovitz.

7       H.    On April 2, 2019, Feygenberg and Leizerovitz transferred all of their interests in

8  the Deed of Trust to Sensible Consulting & Management, Inc. ("Sensible").

9       I.    On July 20, 2020, Zhu commenced a state court action against Sensible and

10  Leizerovitz for, among other things, fraudulent conveyance (the "Fraudulent Conveyance

11  Action"). Zhu asserts, among other things, that it is entitled to 25% of the original principal

12  amount of the Promissory Note, up to the amount of the Judgment, and that any payments to be

13  made by Debtor to Sensible pursuant to the Promissory Note (which is secured by the Deed of

14  Trust) must either be paid to Zhu, up to the amount of the Judgment, or segregated and

15  protected by the Debtor pending further order of the state court in the Fraudulent Conveyance

16  Action.

17       J.    Zhu has been advised and understands that the Debtor is seeking to sell the

18  Property as part of the Debtor's reorganization strategy in the Debtor's chapter 11 case.

19       K.    The Debtor and Zhu have agreed to enter into this Stipulation to facilitate a sale

20  of the Property pursuant to the terms and conditions set forth herein.

21                 **STIPULATION**

22      **WHEREFORE**, subject to approval of the Bankruptcy Court, the Parties stipulate and

23  agree as follows:

24      1.    To the extent that the Debtor seeks to sell the Property for a purchase price which

25  exceeds the aggregate amount of all secured claims against the Property, including Zhu's

26  asserted Secured Claim, Zhu is deemed to consent to the Debtor's sale of the Property free and

27  clear of any and all liens, claims and interests of Zhu.

28      2.    The proceeds of the sale of the Property (net of taxes, brokers' commissions,

3

4831-5985-1705.1

escrow costs and other customary sale expenses) shall be deposited into a segregated bank account maintained by counsel for the Debtor (the "Segregated Account"), and any liens, claims and interests held by Zhu against the Property and/or the Promissory Note secured by the Deed of Trust ("Zhu's Interests") shall attach to the proceeds of the sale of the Property with the same validity, extent and priority as Zhu was entitled to on account of Zhu's Interests immediately prior to the sale of the Property, pending further order of the Bankruptcy Court.

3.       Unless otherwise agreed to by the parties to this Stipulation, in the event that the Debtor seeks to distribute proceeds of the sale of the Property after the closing of such sale, 25% of the net sale proceeds (based on Feygenberg's prior interest), up to the amount of the Judgment, shall remain in the Segregated Account, subject to Zhu's Interests, and shall not be disbursed or withdrawn without further order of the Bankruptcy Court.

4.       In the event that Zhu obtains a writ of attachment, writ of execution or similar order of the state court in the Fraudulent Conveyance Litigation which authorizes a Sheriff or Marshal to attach Feygenberg's 25% interest in the Promissory Note, up to the amount of the Judgment, secured by the Deed of Trust and/or any other state court order which requires or directs the Debtor to pay or transfer to the Sheriff or Marshal (pursuant to a writ of attachment or other state court order) any sale proceeds that were owed to Sensible (from Debtor)  to Zhu (the "State Court Order")  at the time of the sale closing, the Debtor shall cooperate with, and comply with, such order(s), but the Debtor shall be entitled, if the Debtor deems it necessary or appropriate to do so in its sole discretion, to request a separate order from the Bankruptcy Court authorizing such payment of sale proceeds to Zhu. If Debtor deems it necessary to request a separate order from the Bankruptcy Court, then it shall file a motion for an order within two weeks of the date of the state court order and/or writ of attachment and, if Debtor fails to do so, it shall be deemed to have waived its right to obtain such an order.

5.       In the event that payment is made by Debtor to Zhu up to the amount of the Judgment from the proceeds of the sale of the Property in lieu of and in (partial) satisfaction of Sensible's claim(s) against the Debtor pursuant to an order of a court of competent jurisdiction, Zhu covenants and agrees that its Secured Claim against the Property and in the Debtor's

4

1 │ bankruptcy case shall be deemed fully satisfied and waived and will be of no force or effect.

2 │      6.     In the event that Zhu does not obtain a writ of attachment or an order from a court

3 │ of competent jurisdiction directing the Debtor to make payment to Zhu on account of the

4 │ Judgment and does not receive payment thereon, Zhu's Secured Claim against the Property shall

5 │ not be deemed satisfied, waived or released absent further order of the Court.

6 │      7.     Notwithstanding the foregoing, the parties agree that all rights with respect to the

7 │ Judgment, Zhu's Interests, as well as the Debtor's right to seek reformation or other relief are

8 │ expressly reserved without prejudice to the parties enforcing their respective rights.

9 │      8.     Nothing set forth herein shall be deemed a waiver, admission or consent as to any

10 │ matters or facts in dispute between the parties hereto.

11 │ Dated: September **10**, 2020           LEV INVESTMENTS, LLC

12 │                          By: _____

13 │                             DAVID B. GOLUBCHIK
 │                             JULIET Y. OH

14 │                             LEVENE, NEALE, BENDER, YOO
 │                              & BRILL L.L.P.

15 │                             Attorneys for Debtor and
 │                             Debtor in Possession

16 │

17 │ Dated: September **8**, 2020            MING ZHU, LLC

18 │                          By: _____

19 │                             TIMOTHY KRANTZ
 │                             LAW OFFICE OF TIMOTHY KRANTZ

20 │                             Attorneys for Ming Zhu, LLC

21 │

22 │

23 │

24 │

25 │

26 │

27 │

28 │

4831-5985-1705.1

# **<u>EXHIBIT "5"</u>**

[FR LLC Sale Stipulation]

DAVID B. GOLUBCHIK (SBN 185520)
JULIET Y. OH (SBN 211414)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
Email: DBG@LNBYB.com, JYO@LNBYB.com

Proposed Attorneys for Chapter 11 Debtor and
Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re: | Case No.: 1:20-bk-11006-VK |
| LEV INVESTMENTS, LLC | Chapter 11 Case |
| Debtor and Debtor in Possession. | **STIPULATION CONSENTING TO SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES AND RELATED RELIEF [FR LLC]** |
| | [No hearing set] |

1     **TO THE HONORABLE VICTORIA S. KAUFMAN, UNITED STATES**
2     **BANKRUPTCY JUDGE:**

3        Lev Investments, LLC, Chapter 11 debtor and debtor in possession herein ("Debtor") and
4     FR LLC ("FR"), through their respective counsel, hereby enter into this Stipulation Consenting
5     To Sale Of Real Property Free And Clear Of Liens, Claims And Encumbrances And Related
6     Relief (the "Stipulation"), with respect to the following:

7                                    **RECITALS**

8        A.    Debtor commenced this bankruptcy case by the filing of a voluntary bankruptcy
9     petition under Chapter 11 of the Bankruptcy Code (11 U.S.C. § 101 et set.) on June 1, 2020 (the
10    "Petition Date").

11       B.    On the Petition Date, the Debtor held a 100% fee simple interest in that certain
12    real property located at 13854 Albers Street, Sherman Oaks, California 91401 (the "Property").

13       C.    Among others, FR asserts an interest in the Property or proceeds therefrom based
14    on a pre-petition extension for financing for the acquisition of the Property which, FR asserts,
15    creates a lien or other interest in the Property in the amount of not less than $119,000.

16       D.    The Debtor seeks to sell the Property to the highest bidder free and clear of any
17    and all liens, claims and interests.

18       E.    The Debtor and FR have agreed to enter into this Stipulation to effectuate the
19    foregoing.

20                                   **STIPULATION**

21       **WHEREFORE**, subject to approval of the Bankruptcy Court, the Parties stipulate and
22    agree as follows:

23       1.    FR consents to the Debtor's sale of the Property free and clear of liens, claims
24    and interests of FR, including, without limitation, any Notice of Pendency or *Lis Pendens*
25    (collectively, the "FR Interests"), upon the terms and conditions set forth hereinbelow.

26       2.    The proceeds of the sale shall be deposited into a segregated bank account and
27    the FR Interests shall attach to the proceeds of the sale with the same validity, extent and priority
28    as FR was entitled to immediately prior to the sale of the Property.

4831-5985-1705.1

3.     The sale proceeds shall remain in the segregated account, subject to the FR Interests, and shall not be disbursed or withdrawn without further order of the Court.

4.     The Debtor and FR shall work cooperatively and use best reasonable efforts to effectuate the foregoing.

5.     This Stipulation is intended solely to effectuate a sale of the Property and, therefore, nothing set forth herein shall be deemed a waiver, admission or consent as to any matters or facts in dispute between the parties hereto.

Dated:  June 9, 2020               LEV INVESTMENTS, LLC

                                   By: _____
                                        DAVID B. GOLUBCHIK
                                        JULIET Y. OH
                                        LEVENE, NEALE, BENDER, YOO
                                            & BRILL L.L.P.
                                        Proposed Attorneys for Debtor and
                                        Debtor in Possession

Dated:  June __, 2020              FR LLC

                                   By: _____
                                        MICHAEL SHEMTOUB
                                        LAW OFFICE OF MICHAEL
                                        SHEMTOUB
                                        Attorneys for FR LLC

3

4831-5985-1705.1

1      3.      The sale proceeds shall remain in the segregated account, subject to the FR

2 Interests, and shall not be disbursed or withdrawn without further order of the Court.

3      4.      The Debtor and FR hereby agree, and stipulate that the demand of FR on the

4 Estate is one that is consensual lien on Property.

5      5.      The Debtor and FR hereby agree and stipulate that 11 USCA § 1129(b)(2)(A)(i),

6 shall govern the renumeration of what FR is owed and if the Property is sold.

7      6.      That FR rightful compensation be pursuant to 11 USCA § 1129(b)(2)(A)(ii), at

8 the rate of 10% per annuum on its principal investment of $119,000.00 beginning on December

9 28, 2018, plus reasonable attorneys fees and costs to be determined by the Court, of the Property

10 is sold to a BFP.

11      7.      The Debtor and FR agree that FR's right to payment shall be that treated as a

12 secured priority claim.

13      8.      The Debtor and FR shall work cooperatively and use best reasonable efforts to

14 effectuate the foregoing.

15      9.      This Stipulation is intended solely to effectuate a sale of the Property and,

16 therefore, nothing set forth herein shall be deemed a waiver, admission or consent as to any

17 matters or facts in dispute between the parties hereto.

18 Dated: June __, 2020          LEV INVESTMENTS, LLC

19                        By: _____

20                              DAVID B. GOLUBCHIK
                              JULIET Y. OH

21                              LEVENE, NEALE, BENDER, YOO
                                  & BRILL L.L.P.

22                              Proposed Attorneys for Debtor and
                              Debtor in Possession

23

24 Dated: June 9, 2020          FR LLC

25                        By: _____

26                              MICHAEL SHEMTOUB
                              LAW OFFICE OF MICHAEL

27                              SHEMTOUB
                              Attorneys for FR LLC

28

4831-5985-1705.1

# **<u>EXHIBIT "6"</u>**

[Property Expenses]

### List of Property Expenses Paid by LDI Ventures, LLC

| | |
|---|---:|
| Staging for the Property | $6,800.00 |
| Professional photography for the Property | $500.00 |
| Deep cleaning for the Property (twice, $800.00 per) | $1,600.00 |
| Gardener (4 months, $300 per month) | $1,200.00 |
| Pool cleaning (4 months, $200 per month) | $800.00 |
| Pool filters replacement | $1,200.00 |
| Handyman for painting, touch ups, materials | $2,890.00 |
| Target purchases (accessories and supplies) | $168.00 |
| Insurance premium for Property (annual) | $5,444.00 |
| Spectrum internet, telephone, etc. (4 months) | $915.00 |
| TOTAL: | $21,517.00 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **DEBTOR'S MOTION FOR ENTRY OF AN ORDER: (A) AUTHORIZING SALE OF DEBTOR'S REAL PROPERTY LOCATED AT 13854 ALBERS STREET, SHERMAN OAKS, CALIFORNIA 91401 [APN 2247- 013-001], FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (B) APPROVING OVERBID PROCEDURES; AND (C) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF DMITRI LIOUDKOUSKI AND ILYA TSIPIS IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **October 1, 2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Lisa D Angelo     langelo@murchisonlaw.com, cthomas@murchisonlaw.com
- Richard T Baum    rickbaum@hotmail.com, rickbaum@ecf.inforuptcy.com
- Katherine Bunker    kate.bunker@usdoj.gov
- John Burgee    jburgee@bandalaw.net
- Caroline Renee Djang (TR)    caroline.djang@bbklaw.com, C190@ecfcbis.com;sansanee.wells@bbklaw.com;lesley.vaquerano@bbklaw.com;wilma.escalante@bbklaw.com
- James R Felton    jfelton@gblawllp.com, pstruntz@gblawllp.com
- David B Golubchik    dbg@lnbyb.com, stephanie@lnbyb.com
- Timothy Krantz    krantzlaw@pacbell.net
- Juliet Y Oh    jyo@lnbrb.com, jyo@lnbrb.com
- Thomas D Sands    thomas@thesandslawgroup.com, thomas@thesandslawgroup.com
- Michael Shemtoub    michael@lexingtonlg.com
- David A Tilem    davidtilem@tilemlaw.com, DavidTilem@ecf.inforuptcy.com;joanfidelson@tilemlaw.com;JoanFidelson@ecf.inforuptcy.com; DianaChau@tilemlaw.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov

**2.  SERVED BY UNITED STATES MAIL**: On **October 1, 2020**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ *Service information continued on attached page*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                          **F 9013-3.1.PROOF.SERVICE**

3.  **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **October 1, 2020**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

*None.*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| October 1, 2020 | Stephanie Reichert | /s/ Stephanie Reichert |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

Caroline Renee Djang (TR)
18101 Von Karman Ave., Suite 1000
Irvine, CA 92612-0164

U.S. Trustee
915 Wilshire Blvd.
Suite 1850
Los Angeles, CA 90017-3560

Ruvin Feygenberg
17777 Ventura Blvd, Suite 210
Encino, CA 91316-3748

Sensible Consulting & Mgmt Inc
c/o John Burgee Esq.
20501 Ventura Boulevard, Suite 262
Woodland Hills, CA 91364-6410

Michael Leizerovitz
15 Via Monarca St.
Dana Point, CA 92629-4082

Ming Zhu, LLC
c/o Timothy Krantz, Esq.
2082 Michelson Drive, #212
Irvine, CA 92612-1213

SBK Holdings USA
c/o Matthew Hoelsy
Geragos & Geragos, APC
644 S Figueroa St
Los Angeles, CA 90017-3411

Los Angeles County Tax Collector
Attn: Bankruptcy Unit
P.O. Box 54110
Los Angeles, CA 90054-0110