1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



**FILED & ENTERED**

**JUL 26 2022**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY egonzale DEPUTY CLERK**

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br><br>Lev Investments, LLC<br><br><br><br><br><br>Debtor(s). | Case No.: 1:20-bk-11006-VK<br><br>CHAPTER 11<br><br>**MEMORANDUM OF THE COURT ON LEGAL ISSUES RAISED IN OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION ON DEBTOR'S MOTION TO DISALLOW CLAIM NO. 5 [dkt. 614, 624]**<br><br>Date:        July 26, 2022<br>Time:        10:00 AM<br>Courtroom: 302 |

The Court prepared the following as its tentative ruling on the legal issues raised in opposition to the motion for summary judgment as to claim #5.  The Court now adopts these as its memorandum of law and rulings on the issues raised herein.

RES JUDICATA OR ISSUE PRECLUSION

Without taking a great deal of discussion, the basic issue is whether Judge Kaufman's dismissal of the Second Amended Complaint in FR v. Lev is deemed to be a final determination of the issues raised in this objection to claim #5.  It is not.  The

-1-

1 | critical issue in the determination by Judge Kaufman was that the allegations and prayer

2 | for a resulting trust do not support that theory.  She did not make specific findings as to

3 | whether FR's money was used to purchase the Albers property.  She did determine that

4 | FR does not have a lien or secured interest in the Albers property and notes that the

5 | proper remedy to be sought would be an unsecured claim in the bankruptcy case.  That

6 | is precisely what the claimant under the FR claim, which is now held by Moda and Reid,

7 | is asserting.

8 |       Judge Kaufman also ruled that FR had no rights under the DPA.  The issue of

9 | the alleged note from Dmitri to FR was never raised and not ruled on.

10 |       While it would have been possible for the SAC to include a lot of other theories,

11 | they were not required.  The issue of a resulting trust is compact and separate from the

12 | remedy sought here.  Judge Kaufman noted the difference between a complaint for

13 | declaratory relief and one for a monetary remedy. This is clearly and action seeking a

14 | monetary remedy.

15 |

16 | SUMMARY JUDGMENT VERSUS PARTIAL SUMMARY ADJUDICATION

17 |       Lev is correct that the Court cannot award summary judgment at this time.  There

18 | are clearly material facts with genuine issues of dispute.  But there are other facts that

19 | can be resolved and the Court is making its rulings on those.

20 |

21 | ATTORNEY-CLIENT PRIVILEGE

22 |       The Court notes that some of the asserted findings are blocked by the claim of

23 | attorney-client privilege and this appears to be at least partially correct.  The current

24 | version of the Federal Rules of Evidence 501 provides that, with certain exceptions,

25 | common law governs a claim of privilege or state law if it supplies the specific rule of

26 | decision.  However, in 2007 the rules were amended to include section 502, which limits

27 | state or common law rules on attorney- client privilege under certain circumstances.

28 | FRE 502 begins: "The following provisions apply, in the circumstances set out, to

disclosure of a communication or information covered by the attorney-client privilege or work-product protection."  It then goes on to list a series of instances of waiver and how they apply.  Subsection (a) states:

(a) Disclosure Made in a Federal Proceeding or to a Federal Office or Agency; Scope of a Waiver. When the disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if:

(1) the waiver is intentional;

(2) the disclosed and undisclosed communications or information concern the same subject matter; and

(3) they ought in fairness to be considered together.

The advisory committee notes that there are two major purposes to the rule: (1) to resolve disputes as to inadvertent disclosure and subject matter waiver and (2) to limit the costs involved in disputes about electronic disclosure.  The Advisory Committee goes on to state:

The rule makes no attempt to alter federal or state law on whether a communication or information is protected under the attorney-client privilege or work-product immunity as an initial matter. Moreover, while establishing some exceptions to waiver, the rule does not purport to supplant applicable waiver doctrine generally.

The rule governs only certain waivers by disclosure. Other common-law waiver doctrines may result in a finding of waiver even where there is no disclosure of privileged information or work product. See, e.g., Nguyen v. Excel Corp., 197 F.3d 200 (5th Cir. 1999) (reliance on an advice of counsel defense waives the privilege with respect to attorney-client communications pertinent to that defense); Ryers v. Burleson, 100 F.R.D. 436 (D.D.C. 1983) (allegation of

lawyer malpractice constituted a waiver of confidential communications under the circumstances). The rule is not intended to displace or modify federal common law concerning waiver of privilege or work product where no disclosure has been made.

The issue of waiver when the client sues the attorney for malpractice is not contained in FRE 502 and the Court could find no reported cases on this although the Advisory Comments do cite two cases under Federal common law. However, it is specifically included in the Cal. Evid. Code §§ 958 and 962:

Cal. Evid. Code §958:
There is no privilege under this article as to a communication relevant to an issue of breach, by the lawyer or by the client, of a duty arising out of the lawyer-client relationship.

Cal. Evid. Code §962:
Where two or more clients have retained or consulted a lawyer upon a matter of common interest, none of them, nor the successor in interest of any of them, may claim a privilege under this article as to a communication made in the course of that relationship when such communication is offered in a civil proceeding between one of such clients (or his successor in interest) and another of such clients (or his successor in interest).

So, the question is how does that apply to this case?  First of all, the purpose of the waiver is so that the attorney can protect themself from a claim of malpractice brought by their prior client.  This is a matter of fairness.  In this case, the Debtor filed an adversary proceedings against Gina, against Ruvin, and against Michael. In the adversary proceeding against Gina [adv. 1:20-ap-01117] Lev includes in ¶34-36

allegations concerning the Moda $119,000.  While the issue as to the claims of Michael

and of Ruvin do not mention the Moda money, they do include allegations that the

refunds that Gina made to Michael and Ruvin were "secret refunds" and that Michael

and Ruvin contributed only $1,022.500 toward the purchase of the note. [adv. 1:21-ap-

01020; ¶ 32]

The case of *Anten v. Superior Court*, 233 Cal. App. 4th 1254 (2015) may limit

waiver to the actions between the Debtor within those adversary proceedings and not

extend it to claim #5.  Further, the settlement of the adversary proceedings may block

the issue of waiver under *Anten*.  The Court does not have an answer to this and would

appreciate a further briefing. For purposes of the tentative ruling, I am allowing the

assertion of privilege as to direct communications between Dmitri and Gina.  Because of

the settlement, it does not appear that she is in any danger of further litigation by Dmitri.


THE NEXT STEP

It is time to go to trial.  This motion has not gotten us much further than the initial

MSJ did.  We still have issues of mathematics – money is fungible and that will come

into the final determination and tracing.

We need to determine whether the Note to FR is genuine or not.  If so, the

objection to the claim would be overruled and the claim would appear to include

attorney's fees and interest because this is a solvent estate.  If it is not genuine, claim

#5 would depend on tracing the Moda money and the maximum recovery would be the

$119,000, but it also might include some amount of interest pro rata with all other

unsecured claims.

The evidentiary issues of privilege must be resolved if either party wishes to

provide more law or argument.  Otherwise, my tentative ruling on this will stand.

I believe that discovery is complete.  Let's set a date for trial.  I believe that it will

only be a one day trial, two at the most.  It will be in the courtroom unless some witness

is physically unable to appear. In that case, that person can be examined by the use of

1  zoom.  We also need to deal with the issue of the use of masks.  My suggestion is that

2  people spread out sufficiently to be protected and/or they wear clear masks so that their

3  mouths are visible.  This will make it easier to "hear" each other.

4

5  ###

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Date: July 26, 2022

25

Geraldine Mund
United States Bankruptcy Judge

26

27

28